IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| INSTANT BRANDS ACQUISITION HOLDINGS INC., *et al.*, | § § § § | Case No. 23-90716 (DRJ) |
| Debtors.[1] | § § § | (Joint Administration Requested) |
| | § | (Docket No. 24) |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY PREPETITION CRITICAL VENDOR CLAIMS, FOREIGN VENDOR CLAIMS, AND 503(B)(9) CLAIMS IN THE ORDINARY COURSE OF BUSINESS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO DEBTORS' UNDISPUTED OBLIGATIONS TO VENDORS ARISING FROM THE POST-PETITION DELIVERY OF GOODS ORDERED PREPETITION AND AUTHORIZING DEBTORS TO PAY THOSE OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS, (III) AUTHORIZING DEBTORS TO RETURN GOODS, (IV) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF LIEN CLAIMANTS, AND (V) AUTHORIZING FINANCIAL INSTITUTIONS TO <u>HONOR AND PROCESS RELATED CHECKS AND TRANSFERS</u>**

Upon the emergency motion (the "**Motion**")[2] of Instant Brands Acquisition Holdings Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for entry of interim and final orders, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (a) establishing procedures pursuant to which the Debtors may engage in discussions with counterparties that may qualify as Critical Vendors or Foreign Vendors regarding the validity and amount of their

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers or registration numbers in the applicable jurisdictions, are as follows: Instant Brands (Texas) Inc. (2526); Instant Brands Acquisition Holdings Inc. (9089); Instant Brands Acquisition Intermediate Holdings Inc. (3303); Instant Brands Holdings Inc. (3318); URS-1 (Charleroi) LLC (7347); Instant Brands LLC (0566); URS-2 (Corning) LLC (8085); Corelle Brands (Latin America) LLC (8862); EKCO Group, LLC (7167); EKCO Housewares, Inc. (0216); EKCO Manufacturing of Ohio, Inc. (7300); Corelle Brands (Canada) Inc. (5817); Instant Brands (Canada) Holding Inc. (4481); Instant Brands Inc. (8272); and Corelle Brands (GHC) LLC (9722). The address of the debtors' corporate headquarters is 3025 Highland Parkway, Suite 700, Downers Grove, IL 60515.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

respective claims and to determine, in the Debtors' reasonable discretion (with the consent of the Term DIP Agent (acting at the direction of the requisite Term DIP Lenders) and consent of the ABL DIP Agent (acting at the direction of the requisite ABL DIP Lenders)), whether such parties so qualify for the relief requested in the Motion, (b) authorizing, but not directing, the Debtors to pay in the ordinary course of business, in their reasonable discretion (with the consent of the Term DIP Agent (acting at the direction of the requisite Term DIP Lenders) and consent of the ABL DIP Agent (acting at the direction of the requisite ABL DIP Lenders)) and business judgment, prepetition obligations related to Critical Vendors and Foreign Vendors, as well as valid claims of Vendors under section 503(b)(9) of the Bankruptcy Code, (c) granting Prepetition Order Vendors administrative priority status under sections 503(b) and 507(a)(2) of the Bankruptcy Code for undisputed obligations arising from the Prepetition Orders for certain Goods received and accepted by the Debtors on or after the Petition Date, and authorizing, but not directing, the Debtors to pay such obligations in the ordinary course of business, in their reasonable discretion (with the consent of the Term DIP Agent (acting at the direction of the requisite Term DIP Lenders) and consent of the ABL DIP Agent (acting at the direction of the requisite ABL DIP Lenders)), under section 363 of the Bankruptcy Code, (d) authorizing the Debtors, in their sole discretion, under section 546(h) of the Bankruptcy Code, to return Goods purchased from Vendors by the Debtors prior to the Petition Date for credit against such Vendors' prepetition claims, (e) authorizing, but not directing, the Debtors to pay, in their reasonable discretion (with the consent of the Term DIP Agent (acting at the direction of the requisite Term DIP Lenders) and consent of the ABL DIP Agent (acting at the direction of the requisite ABL DIP Lenders)), all or a portion of the Lienholder Claims, and (f) authorizing the applicable financial institutions to receive, process, honor, and pay all checks or wire transfers used by the Debtors to pay the foregoing, as more fully described in the Motion;

and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.); and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of the Chapter 11 Cases and related proceedings being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the Hollerbach Declaration; and the Court having held a hearing, if necessary, to consider the relief requested in the Motion on a final basis (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and the Hollerbach Declaration and at the Hearing, if any, establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The Debtors' Prepetition Order Vendors shall be granted administrative expense claims with priority status, pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, with respect to those obligations of the Debtors for Goods delivered to and accepted by the Debtors on

or after the Petition Date under Prepetition Orders that the Debtors determine are valid claims against the Debtors' estates.

2. The Debtors are authorized, but not directed, to pay all or part of, in their reasonable discretion (with the consent of the Term DIP Agent (acting at the direction of the requisite Term DIP Lenders) and consent of the ABL DIP Agent (acting at the direction of the requisite ABL DIP Lenders) pursuant to the terms of this Order), the Critical Vendor Claims, the Foreign Vendor Claims, and the Prepetition Order Claims in the ordinary course of business.

3. The Debtors are authorized, but not directed, to pay all or part of, in their reasonable discretion (with the consent of the Term DIP Agent (acting at the direction of the requisite Term DIP Lenders) and consent of the ABL DIP Agent (acting at the direction of the requisite ABL DIP Lenders) pursuant to the terms of this Order), the 503(b)(9) Claims in the ordinary course of business.

4. The Debtors are authorized, but not directed, to pay all or part of, in their reasonable discretion (with the consent of the Term DIP Agent (acting at the direction of the requisite Term DIP Lenders) and consent of the ABL DIP Agent (acting at the direction of the requisite ABL DIP Lenders) pursuant to the terms of this Order), the Lienholder Claims in the ordinary course of business.

5. The Debtors, in their sole discretion, may condition payment of any Critical Vendor Claim, Foreign Vendor Claim, Prepetition Order Claim, 503(b)(9) Claim, or Lienholder Claim upon agreement by such creditor to continue to supply Goods or Services to the Debtors on such creditor's Customary Trade Terms during the pendency of the Chapter 11 Cases or on such other terms and conditions as are acceptable to the Debtors.

6. As a further condition of receiving payment on a Critical Vendor Claim, Foreign Vendor Claim, Prepetition Order Claim, 503(b)(9) Claim, or Lienholder Claim, the Debtors are authorized, in their sole discretion, to require that such Critical Vendor, Foreign Vendor, Prepetition Order Vendor, holder of a 503(b)(9) Claim, or Lien Claimant agree to take whatever action is necessary to remove any existing Liens or Interests at such Vendor's or Lien Claimant's sole cost and expense and waive any right to assert a Lien or Interest on account of the paid Critical Vendor Claim, Foreign Vendor Claim, Prepetition Order Claim, 503(b)(9) Claim, or Lienholder Claim.

7. Following the entry of this Order, on the first business day of each week subsequent thereto, the Debtors by and through their advisors shall (a) deliver to Ankura Consulting Group, LLC ("**Ankura**"), in its role as financial advisor to the Term DIP Lenders, and to FTI Consulting, Inc. ("**FTI**"), in its role as financial advisor to the ABL DIP Agent, a schedule of the proposed recipients and amounts of all Critical Vendor Claims, Foreign Vendor Claims, Prepetition Order Claims, 503(b)(9) Claims, and Lienholder Claims that the Debtors propose to pay that forthcoming week (collectively, such claims the "**Weekly Vendor Schedule**") and (b) arrange a call among Ankura, FTI, the Debtors' financial advisors, and, as needed, appropriate members of the Debtors' management team to discuss the Weekly Vendor Schedule. Notwithstanding anything to the contrary herein, no payments may be made by the Debtors on account of Critical Vendor Claims, Foreign Vendor Claims, Prepetition Order Claims, 503(b)(9) Claims, or Lienholder Claims unless such claims are included in the Weekly Vendor Schedule presented to Ankura and FTI, and each of Ankura and FTI consents to such payments (such approved payments, the "**Approved Weekly Vendor Payments**"), which consent shall not be unreasonably withheld; *provided*, *however*, that the payments actually made by the Debtors on account of Critical Vendor Claims, Foreign Vendor

Claims, Prepetition Order Claims, 503(b)(9) Claims, and Lienholder Claims within a given week may exceed the Approved Weekly Vendor Payments by up to 10%.

8. Any party that accepts payment from the Debtors on account of a Critical Vendor Claim, Foreign Vendor Claim, Prepetition Order Claim, 503(b)(9) Claim, or Lienholder Claim shall be deemed to have agreed to the terms and provisions of this Order.

9. The Debtors may, in their sole discretion, enter into, and may cause Critical Vendors, Foreign Vendors, Prepetition Order Vendors, holders of 503(b)(9) Claims, or Lien Claimants to enter into, a letter or contract substantially in the form of the letter attached to the Motion as Exhibit A (the "**Vendor Agreement**"), as a condition to paying a Critical Vendor Claim, Foreign Vendor Claim, Prepetition Order Claim, 503(b)(9) Claim, or Lienholder Claim; *provided*, *however*, that the Debtors' inability to enter into a Vendor Agreement shall not preclude them from paying a Critical Vendor Claim, Foreign Vendor Claim, Prepetition Order Claim, 503(b)(9) Claim, or Lienholder Claim, when, in their reasonable discretion (with the consent of the Term DIP Agent (acting at the direction of the requisite Term DIP Lenders) and consent of the ABL DIP Agent (acting at the direction of the requisite ABL DIP Lenders) pursuant to the terms of this Order), such payment is necessary to the Debtors' operations.

10. If the Debtors determine that, in their sole discretion, a Critical Vendor, Foreign Vendor, Prepetition Order Vendor, holder of a 503(b)(9) Claim, or Lien Claimant has not complied with the terms and provisions of a Vendor Agreement or this Order, or has failed to continue to provide Customary Trade Terms following the receipt of payment on account of its Critical Vendor Claim, Foreign Vendor Claim, Prepetition Order Claim, 503(b)(9) Claim, or Lienholder Claim in accordance with a Vendor Agreement or this Order, or on such terms as were individually agreed to between the Debtors and such creditor, the Debtors may terminate such a Vendor Agreement,

together with the other benefits to the Critical Vendors, Foreign Vendors, Prepetition Order Vendors, holders of 503(b)(9) Claims, and Lien Claimants as contained in this Order; *provided*, *however*, that the Vendor Agreement may be reinstated if (a) such determination is subsequently reversed by the Court for good cause after it is shown that the determination was materially incorrect after notice and a hearing upon a motion from the creditor, (b) the underlying default under the Vendor Agreement is fully cured by the creditor not later than five business days after the date the initial default occurred, or (c) the Debtors, in their reasonable discretion (with the consent of the Term DIP Agent (acting at the direction of the requisite Term DIP Lenders) and consent of the ABL DIP Agent (acting at the direction of the requisite ABL DIP Lenders) pursuant to the terms of this Order), reach a subsequent agreement with the creditor.

11. If a Critical Vendor, Foreign Vendor, Prepetition Order Vendor, holder of a 503(b)(9) Claim, or Lien Claimant that has received payment on account of a Critical Vendor Claim, Foreign Vendor Claim, Prepetition Order Claim, 503(b)(9) Claim, or Lienholder Claim (as applicable) and, thereafter, refuses to continue to supply Goods or Services for the applicable period in compliance with the Vendor Agreement or this Order, then the Debtors may, in their sole discretion, and without further order of the Court (a) declare that the payment of such Critical Vendor Claim, Foreign Vendor Claim, Prepetition Order Claim, 503(b)(9) Claim, or Lienholder Claim is a voidable post-petition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover from such Critical Vendor, Foreign Vendor, Prepetition Order Vendor, holder of a 503(b)(9) Claim, or Lien Claimant in cash or in goods (including by setoff against post-petition obligations) and (b) demand that the creditor immediately return such payments in respect of its Critical Vendor Claim, Foreign Vendor Claim, Prepetition Order Claim, 503(b)(9) Claim, or Lienholder Claim to the extent that the aggregate amount of such payments exceeds the post-

petition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever. Upon recovery of such payment by the Debtors, such creditor's Critical Vendor Claim, Foreign Vendor Claim, Prepetition Order Claim, 503(b)(9) Claim, or Lienholder Claim shall be reinstated in such an amount as to restore the Debtors and the applicable Critical Vendor, Foreign Vendor, Prepetition Order Vendor, holder of a 503(b)(9) Claim, or Lien Claimant to their original positions, as if the agreement had never been entered into and the payment of the creditor's Critical Vendor Claim, Foreign Vendor Claim, Prepetition Order Claim, 503(b)(9) Claim, or Lienholder Claim had not been made.

12. Payment of a Critical Vendor Claim, Foreign Vendor Claim, Prepetition Order Claim, 503(b)(9) Claim, and Lienholder Claim must include a communication of the following statement:

> By accepting this payment, the payee agrees to the terms of the Order of the United States Bankruptcy Court for the Southern District of Texas, dated [●], 2023, in the jointly administered chapter 11 cases of Instant Brands Acquisition Holdings Inc., *et al.* (Case No. 23-90716), entitled "*Final Order (I) Authorizing Debtors To Pay Prepetition Critical Vendor Claims, Foreign Vendor Claims, and 503(b)(9) Claims in the Ordinary Course of Business, (II) Granting Administrative Expense Status to Debtors' Undisputed Obligations to Vendors Arising From the Post-Petition Delivery of Goods Ordered Prepetition and Authorizing Debtors To Pay Those Obligations in the Ordinary Course of Business, (III) Authorizing Debtors To Return Goods, (IV) Authorizing Debtors To Pay Certain Prepetition Claims of Lien Claimants, and (V) Authorizing Financial Institutions To Honor and Process Related Checks and Transfers,*" a copy of which can be found at https://dm.epiq11.com/InstantBrands, and submits to the jurisdiction of that Court for enforcement thereof.

13. All Vendor Agreements shall be deemed to have terminated, together with the other benefits to the Critical Vendors, Foreign Vendors, Prepetition Order Vendors, holders of 503(b)(9)

Claims, and Lien Claimants as contained in this Order, upon entry of an order converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

14. The Debtors are authorized, but not directed, to return (in their sole discretion) Goods that were delivered before the Petition Date for an offset of the purchase price of such Goods against such Vendors' prepetition claims, subject to the limitations imposed by any orders of the Court and the prior rights of holders of security interests in such Goods or the proceeds of such Goods, to the extent of such interests.

15. All applicable banks and other financial institutions are hereby authorized to receive, process, honor, and pay any and all checks, drafts, wires, check transfer requests, or automated clearinghouse transfers evidencing amounts paid by the Debtors under this Order whether presented prior to, on, or after the Petition Date. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

16. The Debtors are authorized, but not required, to issue, in their sole discretion, new post-petition checks, or effect new fund transfers, for the Critical Vendor Claims, Foreign Vendor Claims, Prepetition Order Claims, 503(b)(9) Claims, and Lienholder Claims to replace any prepetition checks or fund transfer requests that may be dishonored or rejected and to reimburse the applicable Critical Vendors, Foreign Vendors, Prepetition Order Vendors, holders of 503(b)(9) Claims, and Lien Claimants or other applicable payees, as the case may be, for any fees or costs incurred by them in connection with a dishonored or voided check or funds transfer.

17. Notwithstanding anything to the contrary in this Order, in the event of any conflict or inconsistency between the terms of this Order and the terms of any order of the Court approving

any post-petition debtor-in-possession financing facility or authorizing the use of cash collateral (a "**DIP Order**"), including any budget or cash flow forecast in connection therewith, the terms of the DIP Order shall govern.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of any DIP Order.

18.     The Debtors shall maintain a matrix/schedule of payments made on account of prepetition obligations in accordance with this Order, including the following information:  (a) the name of each payee; (b) the amount of each payment; (c) the category or type of payment; (d) the Debtor or Debtors that made the payment; and (e) the payment date.  The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee and counsel to any statutory committee appointed in the Chapter 11 Cases each month concurrently with the date that they file their monthly operating reports.  The Debtors shall also provide a copy of such matrix/schedule to the DIP Agents (as defined in the DIP Order) each month for the first two months concurrently with the date that they file their monthly operating reports.

19.     Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

20.     For the avoidance of doubt, this Order does not authorize payments to insiders (as such term is defined in section 101(31) of the Bankruptcy Code) or affiliates of an insider, of the Debtors.  Nothing herein shall impair or prejudice the rights of the U.S. Trustee or any other party in interest to object to and seek the return of any payment made pursuant to this Interim Order to an insider of the Debtors, and all rights of the Debtors and the relevant insider are reserved to respond to any such objection.

21. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

22. Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the amount, priority, character, or validity of any claim against the Debtors on any grounds, (b) a grant of third-party beneficiary status or bestowal of any additional rights on any third party, (c) a waiver or impairment of any rights, claims, or defenses of the Debtors' rights to dispute the amount, priority, character, or validity of any claim on any grounds, whether under bankruptcy or non-bankruptcy law, (d) a promise by the Debtors to pay any claim, or (e) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

23. Any Bankruptcy Rule (including Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

24. The Debtors are authorized to take any action necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Order without seeking further order of the Court.

25. The Court shall retain exclusive jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this Order.

**Signed: June 13, 2023.**

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE