## Exhibit A

**Bojmel Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **INSTANT BRANDS ACQUISITION** | § | **Case No. 23-90716 (DRJ)** |
| **HOLDINGS INC.,** *et al.*, | § | |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

**DECLARATION OF RONEN BOJMEL IN SUPPORT OF DEBTORS' EMERGENCY
MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES
FOR SALE OF DEBTORS' ASSETS, (B) AUTHORIZING POTENTIAL SELECTION
OF STALKING HORSE BIDDER(S), (C) APPROVING BID PROTECTIONS,
(D) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE, SALE OF
DEBTORS' ASSETS, (E) APPROVING FORM AND MANNER OF NOTICES OF SALE,
AUCTION, AND SALE HEARING, AND (F) APPROVING ASSUMPTION AND
ASSIGNMENT PROCEDURES, (II)(A) APPROVING SALE OF DEBTORS' ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES AND
(B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

I, Ronen Bojmel, declare as follows:

1.      I am a Senior Managing Director of Guggenheim Securities, LLC ("**Guggenheim

Securities**"), an investment banking firm with principal offices located at 330 Madison Avenue, New

York, New York, 10017.  Guggenheim Securities is the proposed investment banker for the debtors

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers or registration numbers in the applicable jurisdictions, are as follows: Instant Brands (Texas) Inc. (2526); Instant Brands Acquisition Holdings Inc. (9089); Instant Brands Acquisition Intermediate Holdings Inc. (3303); Instant Brands Holdings Inc. (3318); URS-1 (Charleroi) LLC (7347); Instant Brands LLC (0566); URS-2 (Corning) LLC (8085); Corelle Brands (Latin America) LLC (8862); EKCO Group, LLC (7167); EKCO Housewares, Inc. (0216); EKCO Manufacturing of Ohio, Inc. (7300); Corelle Brands (Canada) Inc. (5817); Instant Brands (Canada) Holding Inc. (4481); Instant Brands Inc. (8272); and Corelle Brands (GHC) LLC (9722).  The address of the debtors' corporate headquarters is 3025 Highland Parkway, Suite 700, Downers Grove, IL 60515.

and debtors-in-possession (collectively, the "**Debtors**")[2] in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").[3]

2.     I submit this declaration (this "**Declaration**") in support of the *Debtors' Emergency Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Authorizing Potential Selection of Stalking Horse Bidder(s), (C) Approving Bid Protections, (D) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (E) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (F) Approving Assumption and Assignment Procedures, (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (the "**Motion**").[4]

3.     Although Guggenheim Securities is expected to be compensated for its work as the Debtors' proposed investment banker in the Chapter 11 Cases, I am not compensated separately for this Declaration or testimony.  Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, the information provided to me by Guggenheim Securities professionals involved in advising the Debtors in the Chapter 11 Cases, or information provided to me by the Debtors.  If called upon to testify, I could and would testify to the facts set forth herein on that basis.  I am over the age of 18 years and am authorized to submit this Declaration.

---

[2]  The Debtors and their direct and indirect non-Debtor subsidiaries are collectively referred to herein as "**Instant Brands**" or the "**Company**."

[3]  The Debtors have filed an application to retain Guggenheim Securities as their investment banker, effective as of the commencement of the Chapter 11 Cases [Docket No. 166].

[4]  Capitalized terms used but not defined otherwise herein shall have the meanings ascribed to them in the Motion.

## Qualifications

4.        I have more than 25 years of experience, including restructuring-related investment banking experience, handling complex financial and other restructuring matters for a variety of companies (distressed or otherwise, both in and out of court), in a wide spectrum of industries. My areas of expertise include, among other things, (a) advising on financial restructuring execution and strategies, (b) analyzing business plans and related financial projections, (c) developing views on valuations based on practices widely used in the investment banking industry, (d) sizing, structuring, raising, and executing all aspects of financing transactions, including debtor-in-possession and exit financings, and (e) M&A and sale marketing processes.

5.        I co-head Guggenheim Securities' investment banking restructuring practice and have been employed at Guggenheim Securities since October 2012.  Before joining Guggenheim Securities, I was a managing director at Miller Buckfire & Co. for six years and, prior to joining Miller Buckfire & Co., I was a vice president in the financial restructuring group at Dresdner Kleinwort Wasserstein and its predecessor, Wasserstein Perella.

## The Retention of Guggenheim Securities

6.        Guggenheim Securities has been engaged as investment banker to the Debtors, and members of my team and I have been working closely with the Debtors, since January 2023.  Since being engaged by the Debtors, Guggenheim Securities has rendered investment banking advisory services to the Debtors in connection with the Debtors' evaluation of financing and strategic alternatives in light of their financial position.  Additionally, Guggenheim Securities has worked with the Debtors' management team and other professionals retained by the Debtors and has become familiar with the Debtors' capital structure, financial condition, liquidity needs, and business operations.

**The Marketing and Sale Process**

7.      As noted in the Motion, after considering a wide range of potential strategic alternatives and negotiating with relevant stakeholders and counterparties, the Debtors have determined that a sale of all, substantially all, or a portion of the Debtors' assets is a potential path to maximizing and preserving value for the benefit of the Debtors' stakeholders.

8.      Accordingly, upon the filing of the Chapter 11 Cases, the Debtors, with the assistance of Guggenheim Securities, commenced efforts to prepare for and conduct a marketing and sale process for the Bid Assets.  Specifically, the Debtors, with the assistance of Guggenheim Securities, have prepared marketing materials, including a confidential information memorandum, populated a data room with financial and historical diligence materials, identified (and have begun reaching out to) potentially interested bidders, and formulated the proposed Bidding Procedures described in the Motion.

9.      Following the approval of the proposed Bidding Procedures, the Debtors, with the assistance of Guggenheim Securities, expect to continue marketing the Bid Assets to potential buyers, including by (a) engaging potential parties that may have an interest in bidding for the Bid Assets or a portion thereof, (b) providing access to the data room (to those parties executing a confidentiality agreement with the Debtors), and/or (c) providing information packets to potential purchasers, as appropriate.

**The Bidding Procedures and Selection of a Stalking Horse Bidder**

10.     As noted in the Motion, the Debtors seek approval of the Bidding Procedures to facilitate a value-maximizing sale of the Bid Assets in a timely and efficient manner. As more fully described in the Motion, the Bidding Procedures contain provisions relating to, among other things, (a) the Bid Assets available for sale, (b) the manner in which bids and bidders become

"qualified," (c) the provision of diligence by the Debtors to bidders, (d) the receipt and negotiation of bids received, (e) the conduct of any Auction, (f) the selection and approval of the Successful Bidder(s) and Alternate Bidder(s), and (g) the designation and approval of any Stalking Horse Bidder, Stalking Horse APA, and Bid Protections, if a Stalking Horse Bidder is designated in consultation with the Consultation Parties.

11.     In addition, as noted in the Motion, the Bidding Procedures contain the following proposed dates and deadlines:

| July 12, 2023 at 3:30 p.m. (prevailing Central Time) | Hearing to consider approval of the Bidding Procedures and for entry of the Bidding Procedures Order |
|---|---|
| July 21, 2023 | Target date for the Debtors to file Potential Assumed Contracts Schedule |
| July 19, 2023 at 3:00 p.m. (prevailing Central Time) | Indication of Interest Deadline |
| August 11, 2023 at 4:00 p.m. (prevailing Central Time) | Cure Objection Deadline |
| August 21, 2023 at 3:00 p.m. (prevailing Central Time) | Bid Deadline |
| August 24, 2023 at 10:00 a.m. (prevailing Eastern Time) | Auction (if any) to be held at the New York offices of Davis Polk & Wardwell LLP |
| August 25, 2023 | Target date for the Debtors to file with the Court the Notice of Auction Results |
| August 28, 2023 at 4:00 p.m. (prevailing Central Time) | Deadline to object to the Sale Transaction to the Successful Bidder; and the Assumption and Assignment Objection Deadline |
| August [30], 2023 at [●].m. (prevailing Central Time)[5] | Hearing to consider approval of the Sale Transaction(s) and for entry of the Sale Order(s) |

---

[5] This date remains subject to Bankruptcy Court approval.

12.     Additionally, as noted in the Motion, the proposed Bidding Procedures also contemplate, but do not require, the Debtors' selection (in consultation with the Consultation Parties) of a Stalking Horse Bidder and the granting of certain Bid Protections.  I further understand that the Bid Protections (subject to the terms and conditions of the definitive agreement(s) reached between the Debtors and such Stalking Horse Bidder(s)) could include (a) the payment of a break-up fee in an amount not to exceed three percent of the cash portion of the purchase price set forth in the Stalking Horse Bid and (b) the reimbursement of the reasonable and documented fees and out-of-pocket expenses of the Stalking Horse Bidder in an amount up to $500,000.

13.     Based on my experience, I believe that the proposed Bidding Procedures have been designed with the intent to maximize the value received for the Bid Assets by facilitating an open and competitive bidding process in which potential bidders are encouraged to participate and submit competing bids within the specified time frame (as required by the milestones set forth in the DIP Credit Agreements).   Additionally, given the post-petition marketing process contemplated to be undertaken (as described above), including, without limitation, the number of parties that I understand the Debtors have contacted and expect to contact and the amount of diligence materials anticipated to be made available to such potential bidders, it is my view (based on my experience as a restructuring investment banker) that the proposed Bidding Procedures are reasonable under the circumstances of the Chapter 11 Cases.

14.     With respect to the Bid Protections, in my experience, stalking horse bidders typically require bid protections similar to the type of Bid Protections set forth in the proposed Bidding Procedures (including both the Break-Up Fee and Expense Reimbursement) and that such terms are customary and usual under the circumstances.

15.     Finally, the timeline proposed by the Debtors in the Bidding Procedures provides approximately ten weeks between the Petition Date and the Bid Deadline.   Under the circumstances described herein and in the Motion, I believe that, based on my experience as a restructuring investment banker, this timeline provides the Debtors with a reasonable amount of time to conduct a marketing process for the Bid Assets and to solicit and potentially select the highest or otherwise best potential offer for the Bid Assets that is reasonably available under the circumstances.  Additionally, at the Auction, as set forth in the proposed Bidding Procedures, the Debtors would have an opportunity to consider all potential competing offers and select (in consultation with the Consultation Parties) the offer for the Bid Assets that they deem to be the highest or otherwise best such offer.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 30, 2023

                                                      */s/ Ronen Bojmel*
                                                      Ronen Bojmel
                                                      Senior Managing Director
                                                      Guggenheim Securities, LLC

7