United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 12, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | **Chapter 11** |
| **INSTANT BRANDS ACQUISITION HOLDINGS INC.**, *et al.*, | § § § | **Case No. 23-90716 (DRJ)** |
| Debtors.[1] | § § § | **(Jointly Administered)** |
|  | § | (Docket No. 199) |

### ORDER (I) APPROVING BIDDING PROCEDURES FOR SALE OF DEBTORS' ASSETS, (II) AUTHORIZING POTENTIAL SELECTION OF STALKING HORSE BIDDER(S), (III) APPROVING BID PROTECTIONS, (IV) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE, SALE OF DEBTORS' ASSETS, (V) APPROVING FORM AND MANNER OF NOTICES OF SALE, AUCTION, AND SALE HEARING, (VI) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (VII) GRANTING RELATED RELIEF

Upon the emergency motion (the "**Motion**")[2] of Instant Brands Acquisition Holdings Inc.

and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in

possession in the Chapter 11 Cases, for entry of orders, pursuant to sections 105(a), 363, 365, 503,

and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9007,

(a)(i) approving Bidding Procedures for the sale of the Debtors' assets and Chapter 11 Plan Bids,

(ii) authorizing the potential selection of Stalking Horse Bidder(s), (iii) approving Bid Protections,

(iv) scheduling an Auction for, and a hearing to approve, the sale of the Debtors' assets,

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers or registration numbers in the applicable jurisdictions, are as follows: Instant Brands (Texas) Inc. (2526); Instant Brands Acquisition Holdings Inc. (9089); Instant Brands Acquisition Intermediate Holdings Inc. (3303); URS-1 (Charleroi) LLC (7347); Instant Brands LLC (0566); URS-2 (Corning) LLC (8085); Corelle Brands (Latin America) LLC (8862); EKCO Group, LLC (7167); EKCO Housewares, Inc. (0216); EKCO Manufacturing of Ohio, Inc. (7300); Corelle Brands (Canada) Inc. (5817); Instant Brands (Canada) Holding Inc. (4481); Instant Brands Inc. (8272); and Corelle Brands (GHC) LLC (9722). The address of the debtors' corporate headquarters is 3025 Highland Parkway, Suite 700, Downers Grove, IL 60515.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

(v) approving the Noticing Procedures, and (vi) approving the Assumption and Assignment Procedures, (b)(i) approving the sale of the Debtors' assets free and clear of liens, claims, interests, and encumbrances and (ii) authorizing the assumption and assignment of certain Contracts and Leases, and (c) granting related relief, in each case, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.); and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the Declarations; and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and the Declarations and at the Hearing establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Debtors' proposed notice of the Motion, the Bidding Procedures, the Bidding Procedures Hearing, and the proposed entry of the Bidding Procedures Order is (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Complex Procedures, and (iii) adequate and sufficient under the circumstances of the Chapter 11 Cases, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Bidding Procedures and Bid Protections) has been afforded to all interested persons and entities, including, but not limited to, the Notice Parties.

C.      The Bidding Procedures in the form attached hereto as **Exhibit 1** are fair, reasonable, and appropriate, are designed to maximize recoveries from a sale of the Bid Assets or an investment in the form of a Chapter 11 Plan Transaction, and permit the Debtors to comply with their obligations under the DIP Credit Agreements and DIP Order (as each is defined in the Motion).

D.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Bidding Procedures Order and, thereby, (i) approve the Bidding Procedures, including insofar as they contemplate Chapter 11 Plan Bids and a Chapter 11 Plan Transaction, (ii) authorize, but not direct, the Debtors to select a Stalking Horse Bidder (if any) under the terms

and conditions of the Bidding Procedures, (iii) authorize the Bid Protections under the terms and conditions set forth in the Bidding Procedures, (iv) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing, and other deadlines set forth in the Bidding Procedures, (v) approve the Noticing Procedures and the forms of notice, and (vi) approve the Assumption and Assignment Procedures and the forms of relevant notice.  Such compelling and sound business justification, which was set forth in the Motion and the Bojmel Declaration and on the record at the Hearing, are incorporated herein by reference and, among other things, forms the basis for the findings of fact and conclusions of law set forth herein.

E.     The Bid Protections, as approved by this Bidding Procedures Order, are fair and reasonable and provide a benefit to the Debtors' estates and stakeholders.

F.     The payment of Bid Protections, if triggered in accordance with this Bidding Procedures Order and the Bidding Procedures, (i) would constitute actual and necessary costs of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code and (ii) are reasonably tailored to facilitate, rather than hinder, bidding for the Bid Assets by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and encouraging the participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors would receive the best possible price for the Bid Assets. The Bid Protections are, accordingly, (i) of substantial benefit to the Debtors' estates, their stakeholders, and all parties in interest, (ii) reasonable and appropriate, (iii) a material inducement for, and condition necessary to, the successful designation of a Stalking Horse Bidder, and (iv) reasonable in relation to the magnitude of effort that would be required of such Stalking Horse Bidder, the magnitude and complexity of the Sale Transaction, and the loss of opportunities such Stalking Horse Bidder would suffer as a result of the time spent pursuing a Sale Transaction.

Without the Bid Protections, no Qualified Bidder would agree to become a Stalking Horse Bidder and remain obligated to consummate the Sale Transaction (including, without limitation, the obligation to maintain its committed offer while such offer is subject to higher or better offers, as contemplated by the Bidding Procedures).

G.       The process for filing the Stalking Horse Notice and granting any Bid Protections is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of (i) the identity of the Stalking Horse Bidder, (ii) the amount of the Stalking Horse Bid and what portion of the Stalking Horse Bid (if any) would be in the form of cash, (iii) identifies the Bid Assets (or lot thereof) to be purchased and the contracts and leases to be assumed, (iv) whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid, (v) any proposed Bid Protections, (vi) the Stalking Horse APA, including all exhibits, schedules, and attachments thereto, and (vii) the Stalking Horse Objection Deadline.

H.       The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest herein.

I.       The form and manner of notice to be delivered pursuant to the Noticing Procedures and the Assumption and Assignment Procedures (including the Sale Notice attached hereto as **Exhibit 2**, the Potential Assumption and Assignment Notice attached hereto as **Exhibit 3**, and the Proposed Assumption and Assignment Notice attached hereto as **Exhibit 4**) are reasonably calculated to provide each Counterparty to the Potential Assumed Contracts and the Proposed Assumed Contracts with proper notice of (i) the potential assumption and assignment of such Potential Assumed Contracts and Proposed Assumed Contracts by the Successful Bidder(s)

(including the Stalking Horse Bidder, if any) or any of their known proposed assignees (if different from the applicable Successful Bidder) and (ii) the requirement that each such Counterparty assert any objection to the proposed Cure Costs by the Cure Objection Deadline or otherwise be barred from asserting claims arising from events occurring prior to the effective date of the assumption and assignment of such Proposed Assumed Contracts or any later applicable effective date following assumption and assignment of such Proposed Assumed Contracts.

ORDERED, ADJUDGED, AND DECREED THAT:

1.      Any objections to or reservations of rights regarding the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

2.      The Bidding Procedures, in substantially the form attached hereto as **Exhibit 1**, including insofar as they contemplate Chapter 11 Plan Bids and a Chapter 11 Plan Transaction, are approved and fully incorporated into this Bidding Procedures Order; the Debtors are authorized, but not directed, to act in accordance therewith.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision.

3.      Nothing herein shall prejudice the rights of the Debtors to seek, by separate motion, in the exercise of their sound business judgment and fiduciary duties, the authority to sell assets of the Debtors' estates (that do not constitute all or substantially all of the Debtors' assets) pursuant to section 363 of the Bankruptcy Code.

4.      The Debtors are authorized, but not obligated, in an exercise of their business judgment and in consultation with the Consultation Parties, to (a) agree with any Qualified Bidder(s) that such Qualified Bidder(s) shall be the Stalking Horse Bidder(s) and (b) enter into a

definitive agreement with such Stalking Horse Bidder(s) in accordance with the terms and conditions set forth in the Bidding Procedures.

5.      Bid Deadline.  As further described in the Bidding Procedures, the Bid Deadline shall be at **3:00 p.m. (prevailing Central Time) on September 7, 2023**.

6.      Auction.  In the event that the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids (whether or not the Debtors have designated a Stalking Horse Bid), an Auction shall be conducted at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 at **10:00 a.m. (prevailing Eastern Time) on September 11, 2023** or such later time on such day or such other place as the Debtors (after consultation with the Consultation Parties) shall notify all Participating Parties.  The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.

7.      If (a) no more than one Qualified Bid is submitted by the Bid Deadline (whether an Approved Stalking Horse Bid or otherwise) or (b) multiple Partial Bids are submitted by the Bid Deadline for non-overlapping lots of Bid Assets, the Debtors may, in their discretion and in consultation with the Consultation Parties, elect to cancel the Auction and seek approval of the transactions contemplated in such Approved Stalking Horse Bid, Qualified Bid that is not an Approved Stalking Horse Bid, or Partial Bid(s) at the Sale Hearing.

8.      The form of Sale Notice attached hereto as **Exhibit 2** is hereby approved.

9.      As soon as reasonably practicable after entry of this Bidding Procedures Order, the Debtors shall cause the Sale Notice to be served (by email if available or otherwise by first class mail) upon the following:  (a) the U.S. Trustee; (b) Ropes & Gray LLP, as counsel to the Term DIP Secured Parties (as defined in the DIP Order); (c) Skadden, Arps, Slate, Meagher & Flom LLP, as counsel to the ABL DIP Agent (as defined in the DIP Order); (d) DLA Piper LLP (US),

as counsel to the Committee; (e) Counterparties to Contracts and Leases; (f) the Securities and Exchange Commission; (g) the Internal Revenue Service; (h) the United States Attorney's Office for the Southern District of Texas; (i) the state attorneys general for states in which the Debtors conduct business; (j) all other parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (k) all potential buyers previously identified or solicited by the Debtors or their advisors and any additional parties who have previously expressed an interest to the Debtors or their advisors in potentially acquiring the Debtors' assets; (l) all other known parties with any interest in the Bid Assets; and (m) any party that, as of the filing of this Motion, has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Sale Notice Parties**"); *provided* that the Debtors need not serve the Sale Notice on any party for whom the Debtors are unable to obtain, after reasonable diligence, an email or physical address as of the entry of the Bidding Procedures Order; *provided*, *further*, that the Debtors shall not be obligated to provide supplemental service of the Sale Notice with respect to any Sale Notice that is returned as undeliverable so long as the Debtors have confirmed that any such Sale Notice was sent to the applicable email or physical address on file in the Debtors' books and records and no other email or physical address could be obtained after reasonable diligence.  The Debtors will also cause the Sale Notice to be published once in the national edition of *USA Today* or another publication with similar national circulation as soon as practicable following entry of this Bidding Procedures Order.

10.     Service of the Sale Notice on the Sale Notice Parties in the manner described in this Bidding Procedures Order constitutes good and sufficient notice of the Auction and the Sale Hearing.  No other or further notice is required.

11.    Promptly after the conclusion of the Auction (if any) and the selection of the Successful Bid(s) and Alternate Bid(s), the Debtors shall file with the Court and post on the Case Information Website a notice identifying such Successful Bid(s) and Alternate Bid(s).

12.    <u>Sale Objections</u>.  Objections to the relief sought through the Sale Order must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and Complex Procedures, (c) state, with specificity, the legal and factual bases thereof, (d) be filed with the Court no later than **4:00 p.m. (prevailing Central Time) on September 13, 2023** and (e) be served on (i) proposed counsel to the Debtors, (y) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Brian M. Resnick, Steven Z. Szanzer, and Joanna McDonald and (z) Haynes & Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, Texas 77010, Attn: Charles A. Beckham, Jr., Arsalan Muhammad, and David A. Trausch, (ii) counsel to the Term DIP Secured Parties, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Attn: Ryan Preston Dahl, Matthew M. Roose, Daniel Gwen, Lindsay C. Barca, and Eric P. Schriesheim, (iii) counsel to the ABL DIP Agent, Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, Illinois 60606, Attn: James J. Mazza, Jr. and Robert E. Fitzgerald, (iv) counsel to the Committee, DLA Piper LLP (US), 1251 Avenue of the Americas, 27th Floor, New York, New York 10020, Attn: Dennis O'Donnell and Oksana Lashko, and (v) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Vianey Garza (collectively, the "**Objection Notice Parties**").

13.    <u>Sale Hearing</u>.  The Sale Hearing shall be held in the United States Bankruptcy Court for the Southern District of Texas, Houston, Texas 77002, on **September 14, 2023 at 9:00 a.m. (prevailing Central Time)**[3] or such other date and time that the Court may later direct; *provided*

---

[3]  This date remains subject to Court approval.

that the Sale Hearing may be adjourned by the Debtors (in consultation with the Consultation Parties) by announcement of the adjournment in open court or on the Court's docket.

14.     As soon as reasonably practicable after the completion of the Auction (if any), the Debtors shall file a final form of order (the "**Sale Order**") approving the Sale Transaction(s) as agreed upon between the Debtors (in consultation with the Consultation Parties) and the Successful Bidder(s).  If a Successful Bid is a Chapter 11 Plan Bid, the Sale Order shall, among other things, set proposed dates for (a) the filing of a chapter 11 plan (the "**Plan**") propounded by the Debtors in consultation with the Successful Bidder and the Consultation Parties, (b) a hearing to consider the disclosure statement with respect to the Plan, and (c) a confirmation hearing with respect to the Plan.

15.     <u>Bid Protections</u>.  In accordance with the Bidding Procedures, the Debtors may, in consultation with the Consultation Parties, designate a Qualified Bid as a Stalking Horse Bid and, in accordance therewith, offer to pay the Break-Up Fee and Expense Reimbursement to one or more Stalking Horse Bidders (if any), subject to the terms of the Bidding Procedures and this Bidding Procedures Order.

16.     In the event that the Debtors designate a Stalking Horse Bidder and enter into a Stalking Horse APA, the Debtors may file a notice (the "**Stalking Horse Notice**") with the Court that (a) sets forth the identity of the Stalking Horse Bidder, (b) sets forth the amount of the Stalking Horse Bid and what portion of the Stalking Horse Bid (if any) would be in the form of cash, (c) identifies the Bid Assets (or lot thereof) to be purchased and the contracts and leases to be assumed, (d) states whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid, (e) specifies any proposed Bid Protections, and (f) attaches the Stalking Horse APA, including all exhibits, schedules, and attachments thereto and

serve such Stalking Horse Notice on the U.S. Trustee, counsel to each of the Consultation Parties, and those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases (the "**Stalking Horse Notice Parties**"), with no further notice being required.

17.     The Stalking Horse Notice shall also specify the deadline to file objections ("**Stalking Horse Objections**") to the designation of the Stalking Horse Bidder, the terms of the Stalking Horse Bid, or the Bid Protections set forth therein, which deadline (the "**Stalking Horse Objection Deadline**") shall be no later than three business days after service of the Stalking Horse Notice on the Stalking Horse Notice Parties.  Stalking Horse Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and Complex Procedures, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Bankruptcy Court and served on the Debtors and the Stalking Horse Notice Parties by the Stalking Horse Objection Deadline.

18.     If a timely Stalking Horse Objection is filed and served, to the extent not resolved consensually, the Debtors may schedule a hearing before the Court on an expedited basis (on not less than three-days' notice) seeking authorization to enter into the Stalking Horse APA (including any Bid Protections contained therein).  If no Stalking Horse Objection is timely and properly filed and served, the Debtors shall file with the Bankruptcy Court a certificate of no objection with the Court and, upon such filing, (a) the Debtors' designation of the Stalking Horse Bidder and agreement respecting Bid Protections shall be deemed approved and (b) the Debtors may enter into the Stalking Horse APA, in each case without further notice or opportunity to be heard.

19.     <u>Assumption and Assignment Procedures</u>.  The assumption and assignment procedures set forth in the Motion (the "**Assumption and Assignment Procedures**") are hereby

approved.  If a Successful Bid is a Chapter 11 Plan Bid, the Plan may contain a set of assumption and assignment procedures that have been amended to reflect the Plan context and timeline.

20.     As soon as reasonably practicable following entry of this Bidding Procedures Order, the Debtors shall file with the Court, and cause to be published on the Case Information Website, the Potential Assumption and Assignment Notice and a list of the Potential Assumed Contracts (the "**Potential Assumed Contracts Schedule**") that specifies (a) each of the Contracts and Leases that potentially could be assumed and assigned in connection with the sale of the Bid Assets, including the name of each Counterparty, and (b) the proposed Cure Cost with respect to each Potential Assumed Contract.

21.     <u>Potential Assumption and Assignment Notice</u>. The Debtors shall, as soon as reasonably practicable after entry of this Bidding Procedures Order (but in any event, so as to provide sufficient notice such that any required responses from any Counterparties are due prior to the scheduled date of the Auction as specified in the Bidding Procedures), file, cause to be published on the Case Information Website, and serve on each relevant Counterparty the Potential Assumption and Assignment Notice, which shall (a) include the Potential Assumed Contracts Schedule, (b) list the Debtors' good faith calculation of the Cure Costs with respect to the Potential Assumed Contracts identified on the Potential Assumed Contracts Schedule, (c) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to Court approval, (d) prominently display the deadline to file an Assumption and Assignment Objection (as defined herein), and (e) prominently display the date, time, and location of the Sale Hearing.

22.     <u>Proposed Assumption and Assignment Notice</u>. The Debtors shall, in conjunction with the filing of the Notice of Auction Results, file, cause to be published on the Case Information

Website, and serve on each relevant Counterparty the Proposed Assumption and Assignment Notice, which shall (a) include a schedule of the Proposed Assumed Contracts (the "**Proposed Assumed Contracts Schedule**") as agreed between the Debtors and the Successful Bidder, (b) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to Court approval, (c) prominently display the deadline to file an Assumption and Assignment Objection, and (d) prominently display the date, time, and location of the Sale Hearing.

23.     <u>Objection Deadlines</u>.  Any Counterparty may object to the potential or proposed assumption or assignment of its Assumed Contract or Assumed Lease, the Debtors' proposed Cure Costs, if any, or the ability of a Successful Bidder to provide adequate assurance of future performance (an "**Assumption and Assignment Objection**").  All Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and Complex Procedures, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs the Counterparty believes are required to cure any alleged defaults under the relevant Assumed Contract or Assumed Lease, (d) (1) for objections relating to proposed Cure Costs, be filed with the Court no later than **August 25, 2023 at 4:00 p.m. (prevailing Central Time)** (the "**Cure Objection Deadline**") and (2) for all other objections, **September 13, 2023 at 4:00 p.m. (prevailing Central Time)** (the "**Assumption and Assignment Objection Deadline**"), and (e) be served on the Objection Notice Parties.

24.     <u>Resolution of Assumption and Assignment Objections</u>. If a Counterparty files a timely Assumption and Assignment Objection, such objection shall be heard at the Sale Hearing or such later date that the Debtors determine, in their discretion and in consultation with the Successful Bidder and the Consultation Parties (subject to the Court's calendar).  If such objection

has not been resolved prior to the closing of the Sale Transaction (whether by an order of the Court or by agreement with the Counterparty), each Successful Bidder may elect, in its sole and absolute discretion, one of the following options:  (a) treat such Counterparty's contract or lease as property excluded from the Bid Assets (an "**Excluded Contract**" or "**Excluded Lease**," respectively) or (b) temporarily treat the Proposed Assumed Contract as an Excluded Contract or Excluded Lease, as applicable (a "**Designated Agreement**"), proceed to the closing of the Sale Transaction with respect to all other Bid Assets, and determine whether to treat the Designated Agreement as an Assumed Contract or Assumed Lease, as applicable, or an Excluded Contract or Excluded Lease, as applicable, within ten business days after resolution of such objection (whether by order of the Court or by agreement of the applicable Successful Bidder, the Counterparty, and the Debtors).

25.     <u>Failure To File Timely Assumption and Assignment Objection</u>.  If a Counterparty fails to timely and properly file with the Court and serve on the Objection Notice Parties a timely Assumption and Assignment Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Assumed Contract or Assumed Lease.  Notwithstanding anything to the contrary in the Assumed Contract or Assumed Lease, or any other document, the Cure Costs set forth in the Potential Assumed Contracts Schedule or the Supplemental Assumed Contracts Schedule (as defined below) shall be controlling and shall be the only amount necessary to cure any alleged outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment shall become effective, whether known or unknown, due or to become due, accrued, absolute, contingent, or otherwise, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with

respect to such Assumed Contract or Assumed Lease against the Debtors, the Successful Bidder, or the property of any of them.

26.    <u>Modification of Potential Assumed Contracts Schedule or Proposed Assumed Contracts Schedule</u>.  In addition to a Successful Bidder's rights described above with respect to an Assumption and Assignment Objection, at or prior to the closing of the Sale Transaction, each Successful Bidder may elect, in its sole and absolute discretion, to (a) exclude any contract or lease on the Potential Assumed Contracts Schedule as an Assumed Contract or Assumed Lease, as applicable (in which case it shall become an Excluded Contract or Excluded Lease, as applicable), or (b) include on the Proposed Assumed Contracts Schedule any contract or lease listed on the Potential Assumed Contracts Schedule, by providing to the Debtors written notice of its election to exclude or include such contract or lease, as applicable.

27.    If the Debtors or any Successful Bidder identifies during the pendency of the Chapter 11 Cases (before or after the closing of the applicable Sale Transaction) any contract or lease that is not listed on the Proposed Assumed Contracts Schedule, and such contract or lease has not been rejected by the Debtors, such Successful Bidder may, in its sole and absolute discretion, elect by written notice to the Debtors to treat such contract or lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures.

28.    Following the conclusion of the Auction, if any, and the selection of the Successful Bidder(s), the Debtors reserve the right, at any time before the closing of the Sale Transaction(s), to modify the previously-stated Cure Costs associated with any Proposed Assumed Contract, subject to notice requirements in the Assumption and Assignment Procedures.

29.     In the event that any contract or lease is added to the Potential Assumed Contracts Schedule or Proposed Assumed Contracts Schedule or previously-stated Cure Costs are modified, in accordance with the Assumption and Assignment Procedures, the Debtors will promptly file, cause to be published on the Case Information Website, and serve a supplemental assumption and assignment notice, by email or ECF where available, or otherwise by first class mail, on the applicable Counterparty (each, a "**Supplemental Assumption and Assignment Notice**").  Each Supplemental Assumption and Assignment Notice shall (a) include a schedule of the modified Potential Assumed Contracts Schedule or Proposed Assumed Contracts Schedule (the "**Supplemental Assumed Contracts Schedule**"), (b) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to Court approval, (c) prominently display the deadline to file a Supplemental Assumption and Assignment Objection (as defined herein), and (d) prominently display the date, time, and location of the Sale Hearing.

30.     Any Counterparty listed on a Supplemental Assumed Contracts Schedule whose contract or lease is proposed to be assumed and assigned may object to the proposed assumption or assignment of its Assumed Contract or Assumed Lease, the Debtors' proposed Cure Costs (to the extent modified from the previously-stated amount), or the ability of a Successful Bidder to provide adequate assurance of future performance (a "**Supplemental Assumption and Assignment Objection**").  All Supplemental Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and Complex Procedures, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs the Counterparty believes are required to cure any alleged defaults under the relevant Assumed Contract or Assumed Lease, (d) no later than **14 days from the date of service**

16

**of such Supplemental Assumption and Assignment Notice**, (i) be filed with the Court and (ii) be served on the Objection Notice Parties.  Each Supplemental Assumption and Assignment Objection, if any, shall be resolved in the same manner as an Assumption and Assignment Objection.

31.      <u>Reservation of Rights</u>.  The inclusion of an Assumed Contract, an Assumed Lease, or, in each case, Cure Costs with respect thereto on a Potential Assumption and Assignment Notice, Proposed Assumption and Assignment Notice, Potential Assumed Contracts Schedule, Proposed Assumed Contracts Schedule, Supplemental Assumption and Assignment Notice, or Supplemental Assumed Contracts Schedule shall not constitute, nor be deemed, a determination or admission by the Debtors, the Successful Bidder(s), or any other party in interest that such contract or lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code.  The Debtors reserve all of their rights, claims, and causes of action with respect to each Assumed Contract and Assumed Lease listed on a Potential Assumption and Assignment Notice, Proposed Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, Potential Assumed Contracts Schedule, Proposed Assumed Contracts Schedule, or Supplemental Assumed Contracts Schedule.  The Debtors' inclusion of any Assumed Contract or Assumed Lease on a Potential Assumption and Assignment Notice, Proposed Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, Potential Assumed Contracts Schedule, Proposed Assumed Contracts Schedule, and/or Supplemental Assumed Contracts Schedule shall not be a guarantee that such Assumed Contract or Assumed Lease ultimately will be assumed or assumed and assigned.

32.      Notwithstanding anything to the contrary contained in this Bidding Procedures Order or otherwise, (a) any right of the DIP Agents to consent to the sale of any portion of DIP

Collateral as set forth in the DIP Credit Agreements are hereby expressly reserved and not modified, waived, or impaired in any way by this Bidding Procedures Order and (b)(i) all cash proceeds generated from the sale of any DIP Collateral shall be applied in accordance with the terms and conditions of the DIP Order, the DIP Documents, and any other order of the Bankruptcy Court, as applicable and (ii) nothing in this Bidding Procedures Order shall amend, modify, or impair any provision of the DIP Order or the rights of the Debtors, the DIP Agents, or the DIP Lender thereunder or under any of the DIP Documents, including with respect to allocation of the sale proceeds of any DIP Collateral.

33.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Bidding Procedures Order.

34.     This Bidding Procedures Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

35.     Any Bankruptcy Rule (including Bankruptcy Rules 6004(a), 6004(h), 6006(d), and 9014) or Local Rule that might otherwise delay the effectiveness of this Bidding Procedures Order is hereby waived, and the terms and conditions of this Bidding Procedures Order shall be effective and enforceable immediately upon its entry.

36.     All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

37.     To the extent any provisions of this Bidding Procedures Order shall be inconsistent with the Motion, the terms of this Bidding Procedures Order shall control.

38.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or relating to the implementation, interpretation, or enforcement of this Bidding Procedures Order.

**Signed:  July 12, 2023.**

---

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**<u>Exhibit 1</u>**

**Proposed Bidding Procedures**

## BIDDING PROCEDURES

The bidding procedures set forth below (these "**Bidding Procedures**") detail the process by which Instant Brands Acquisition Holdings Inc. and certain of its affiliates (collectively, the "**Debtors**") are authorized by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") to conduct a sale (such sale, the "**Sale Transaction**") of all, substantially all, or any combination of the Debtors' assets in one or more lots (collectively, the "**Bid Assets**").[1]  A party may participate in the bidding process by submitting a bid for (a) all or substantially all of the Bid Assets and/or (b) one or more, or any combination of, Bid Assets as that party may desire.  These Bidding Procedures also provide that the Debtors, in consultation with the Consultation Parties (as defined herein), may consider competing bids (each, a "**Chapter 11 Plan Bid**") in the form of a chapter 11 plan of reorganization (a "**Chapter 11 Plan Transaction**"), subject to the requirements set forth herein.

**Any interested bidder should contact, as soon as practicable:**

**GUGGENHEIM SECURITIES, LLC**[2]
330 Madison Avenue
New York, New York 10017
Attn: Jonathan Wober (jonathan.wober@guggenheimpartners.com; (tel.) + 1 (212) 823-6780)
Robert Ramirez (robert.ramirez@guggenheimpartners.com; (tel.) + 1 (212) 823-6688)
Drew Heimlich (drew.heimlich@guggenheimpartners.com; (tel.) + 1 (212) 699-2078)
Denys Levin (denys.levin@guggenheimpartners.com; (tel.) + 1 (212) 823-6792)
Andrew Herrera (andrew.p.herrera@guggenheimpartners.com; (tel.) + 1 (212) 801-8960)

These Bidding Procedures describe, among other things, (a) the Bid Assets offered for sale, (b) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, both as to bids for the Bid Assets and Chapter 11 Plan Bids, (c) the conduct of the Auction (as defined below), if necessary, (d) the selection of the Successful Bidder(s) (as defined below), (e) the process for designating a Stalking Horse Bidder and offering

---

[1] These bidding procedures were approved by the Bankruptcy Court on [●], 2023 [Docket No. [●]] (the "**Bidding Procedures Order**").  Unless indicated otherwise, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in (a) the *Debtors' Emergency Motion For Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Authorizing Potential Selection of Stalking Horse Bidder(s), (C) Approving Bid Protections, (D) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (E) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (F) Approving Assumption and Assignment Procedures, (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 199] or (b) the *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Post-Petition Financing and (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Providing Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 96] (together with any supplemental and/or final order(s) entered in connection therewith, the "**DIP Order**"), as applicable.

[2] Guggenheim Securities, LLC, in its capacity as the Debtors' proposed investment banker, is referred to herein as "**Guggenheim Securities**."

Bid Protections (if any, each as defined below), and (f) the approval by the Bankruptcy Court of the sale of the Bid Assets to the Successful Bidder(s).

Throughout the sale process, the Debtors, with the assistance of their advisors, will regularly and timely consult with the following parties (collectively, the "**Consultation Parties**"): (a) the Committee, (b) the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, (c) the ABL DIP Agent, and (d) the Term DIP Agent (acting at the direction of the requisite Term DIP Lenders) and the Prepetition Term Agent (acting at the direction of the requisite Prepetition Term Lenders) (the Term DIP Agent and the Prepetition Term Agent, together, the "**Term Agents**"), including in each case the legal and financial advisors thereto.[3]  The Debtors will provide updates as reasonably appropriate to the Consultation Parties as to the status of the Sale Process.

The Debtors shall not consult with or provide copies of bids regarding any assets to any insider or affiliate of the Debtors pursuant to the terms of these Bidding Procedures if such party has a bid for the Bid Assets pending or has expressed any interest (written or verbal) in bidding for any of the Debtors' assets; *provided* that, if such insider or affiliate of the Debtors chooses not to submit any bid, and so informs the Debtors and the Consultation Parties in writing on or before the Bid Deadline, then such party may receive copies of all bids following expiration of the latest possible Bid Deadline (as defined below) (as such Bid Deadline may be extended hereunder).

1.      **PARTICIPATION REQUIREMENTS**

        (a)      **Interested Parties**

        Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the bidding process described herein (the "**Bidding Process**"), each interested person or entity (each, an "**Interested Party**") must deliver the following items (unless previously delivered) to Guggenheim Securities:

                i.   an executed confidentiality agreement in form and substance satisfactory to the Debtors, in consultation with the Consultation Parties;

                ii.  a statement and other factual support demonstrating, to the Debtors' satisfaction, in consultation with the Consultation

---

[3]   The ABL DIP Agent and the Term Agents shall be Consultation Parties unless and until the ABL DIP Agent and Term Agent, as applicable, has indicated to the Debtors and the other Consultation Parties (including their advisors) in writing (which may be by email) that it intends, on behalf of its respective requisite lenders, to submit a bid in the Bidding Process (as defined herein), at which point such ABL DIP Agent or Term Agent, as applicable, shall not be a Consultation Party with respect to (a) any review of competing bids (including Qualified Bids), (b) any determination regarding which bids constitute Qualified Bids, (c) the designation of any bid as a Stalking Horse Bid, or (d) the selection of a Successful Bidder or an Alternate Bidder (as defined below), unless and until such agent(s) indicates in writing that it no longer intends to submit a bid.  In the event that any Prepetition Term Lender, Term DIP Lender, or ABL DIP Lender, or (in each case) any affiliate thereof, becomes a Potential Bidder (as defined below) (such bidder, a "**Bidding Lender**"), the ABL DIP Agent or Term Agents, as applicable, shall not provide any information that they receive in their role as Consultation Parties to such Bidding Lender.

Parties, that the Interested Party has a *bona fide* interest in purchasing some or all of the Bid Assets;

iii. a description of the nature and extent of any due diligence the Interested Party wishes to conduct and the date in advance of the Bid Deadline (as defined below) by which such due diligence will be completed; and

iv. sufficient information, as defined by the Debtors, in consultation with the Consultation Parties, to allow the Debtors, in consultation with the Consultation Parties, to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal, or other authorizations to close a sale transaction pursuant to these Bidding Procedures, which may include, but is not limited to, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in consultation with the Consultation Parties) or, if the Interested Party is an entity formed for the purpose of acquiring some or all of the Bid Assets, (A) current audited financial statements of the equity holder(s) (the "**Sponsor(s)**") of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in consultation with the Consultation Parties) and (B) a written commitment acceptable to the Debtors, in consultation with the Consultation Parties, that the Sponsor(s) are responsible for the Interested Party's obligations in connection with the Bidding Process.

If the Debtors determine (in consultation with the Consultation Parties), after receipt of the items identified above, that an Interested Party has a *bona fide* interest in purchasing some or all of the Bid Assets, such Interested Party will be deemed a "**Potential Bidder**" and the Debtors will provide such Potential Bidder with access to the Debtors' confidential electronic data room concerning the Bid Assets (the "**Data Room**"). Each of the ABL DIP Agent and Term Agents shall automatically be deemed a Potential Bidder and shall not be required to submit any of the foregoing information.

**(b)**     **Due Diligence**

Until the Bid Deadline, in addition to granting access to the Data Room, the Debtors will provide Potential Bidders with due diligence access and additional information as may be requested by a Potential Bidder, to the extent that the Debtors determine, in consultation with the Consultation Parties, that such requests are reasonable and appropriate under the circumstances. All due diligence requests shall be directed to Guggenheim Securities. The Debtors, with the assistance of Guggenheim Securities, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.

For any Potential Bidder that is a competitor of the Debtors (or an affiliate thereof), the Debtors reserve the right to withhold any diligence materials that the Debtors determine are

commercially sensitive or otherwise not appropriate for disclosure to such Potential Bidder, or to require that the Potential Bidder enter into a "clean team" or similar arrangement acceptable to the Debtors in order to receive such diligence materials.

Unless otherwise determined by the Debtors, the availability of due diligence to a Potential Bidder will cease if (i) the Potential Bidder does not become a Qualified Bidder or (ii) the Bidding Process is terminated in accordance with its terms.

**(c)**      **Non-Binding Indications of Interest**

Any Potential Bidder interested in purchasing the Bid Assets or making a Chapter 11 Plan Bid must submit a non-binding indication of interest (an "**Indication of Interest**") to Guggenheim Securities so as to be received no later than **3:00 p.m. (prevailing Central Time) on July 21, 2023** (the "**Indication of Interest Deadline**").  The Indication of Interest must (i) set forth a proposed purchase price or investment amount for the proposed Sale Transaction or Chapter 11 Plan Transaction, including by identifying separately any cash and non-cash components of the proposed transaction consideration, which non-cash components shall be limited only to assumption of liabilities of any of the Debtors, and (ii) identify any proposed conditions to closing the transaction.  Promptly upon receiving the Indications of Interest, the Debtors shall provide the Indications of Interests to the Consultation Parties.

Each Potential Bidder will be deemed to consent to the Debtors' sharing its Indication of Interest and any subsequent bid to purchase the Bid Assets (together with any supporting materials submitted in connection therewith) with the Consultation Parties, subject to the terms and conditions hereof.  Submitting an Indication of Interest does not (i) obligate the submitting party to submit a formal bid or participate in the sale process and (ii) exempt the submitting party from also having to submit a Qualified Bid by the Bid Deadline to participate in the Auction.  Any Potential Bidder that fails to submit an Indication of Interest by the Indication of Interest Deadline may not be deemed a Qualified Bidder pursuant to section 2 below unless such condition is waived by the Debtors, in consultation with the Consultation Parties.  For the avoidance of doubt, neither the ABL DIP Agent nor any Term Agent, on behalf of the DIP Secured Parties or the Prepetition Secured Parties (as applicable), need to submit an Indication of Interest to be deemed a Qualified Bidder.

**2.**      **QUALIFIED BIDS**

Each offer, solicitation, or proposal by a Potential Bidder must satisfy each of the following conditions in order for such offer, solicitation, or proposal to be deemed a "**Qualified Bid**" and for such Potential Bidder to be deemed a "**Qualified Bidder**," unless any such conditions that are not satisfied are waived by the Debtors, in consultation with the Consultation Parties:

**(a)**      **Bid Deadline**

A Potential Bidder who desires to be deemed a Qualified Bidder must deliver to Guggenheim Securities, with copies to Davis Polk & Wardwell LLP ("**Davis Polk**"), 450 Lexington Avenue, New York, New York 10017 (Attn: Brian M. Resnick, Steven Z. Szanzer, and Joanna McDonald), the Required Bid Documents (as defined below), so as to be received no later than **3:00 p.m. (prevailing Central Time) on September 7, 2023** (the "**Bid Deadline**").  The

Debtors, in consultation with the Consultation Parties, and without the need for further Bankruptcy Court approval, may extend the Bid Deadline by a reasonable period of time if the Debtors, in consultation with the Consultation Parties, believe that such extension would further the goal of attaining the highest or otherwise best offer for the Bid Assets.  If the Debtors extend the Bid Deadline, the Debtors will promptly notify all Potential Bidders of such extension.

    **(b)**    **Bid Requirements**

All bids must include the following items (collectively, the "**Required Bid Documents**"):

- a letter stating that the bidder's offer is irrevocable until consummation of a transaction involving the Bid Assets (or lot thereof) identified in such offer;

- other than for any Chapter 11 Plan Bid, a duly authorized and executed purchase agreement based on the form purchase agreement provided by the Debtors (through their advisors), marked to show any revisions, including, among other things, the purchase price for the Bid Assets (or lot thereof, as applicable), together with all exhibits and schedules thereto (including, among other things, a proposed form of order approving the transaction(s) contemplated in such purchase agreement).  For the avoidance of doubt, a "conceptual" or "issues list"-style markup of the form asset purchase agreement would not satisfy this requirement;

- each Chapter 11 Plan Bid must be accompanied by an executed investment agreement, signed by an authorized representative of such bidder, pursuant to which the bidder proposes to effectuate the Chapter 11 Plan Transaction, in the form of a non-taxable recapitalization transaction effectuated pursuant to a chapter 11 plan of reorganization, and must provide for a fully-committed investment of capital in exchange for substantially all of the equity of the reorganized Debtors;

- written evidence acceptable to the Debtors, in their discretion and in consultation with the Consultation Parties, demonstrating financial wherewithal, operational ability, and corporate authorization to consummate the proposed transaction;

- a written acknowledgment that the bidder (i) has had an opportunity to conduct any and all due diligence regarding the Bid Assets, the Sale Transaction, and/or a Chapter 11 Plan Transaction, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any

documents and any other information in making the bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, by the Debtors or any of their advisors (including Guggenheim Securities, AlixPartners, LLP, and Davis Polk) or other representatives regarding the bid, the Bid Assets (or lot thereof), the Sale Transaction, the Chapter 11 Plan Transaction, or the completeness or accuracy of any information provided in connection therewith or with the Auction, except as expressly stated in these Bidding Procedures, and (iv) the bidder did not engage in any collusive conduct and acted in good faith in submitting its bid; and

- written evidence of a firm commitment for financing to consummate the proposed transaction, or other evidence of ability to consummate the proposed transaction without financing, in either case which is satisfactory to the Debtors in their discretion, in consultation with the Consultation Parties.

A bid will be considered only if the bid:

- identifies the legal name of the purchaser or investor (including any Sponsor(s), if the purchaser is an entity formed for the purpose of consummating the proposed transaction);

- other than for a Chapter 11 Plan Bid, identifies the Bid Assets (or lot thereof) to be purchased and the contracts and leases to be assumed;

- other than for a Chapter 11 Plan Bid, identifies the liabilities of the Debtors or the Bid Assets (or lot thereof) to be assumed;

- includes a statement of proposed terms for the treatment of employees, including with respect to the Debtors' collective bargaining agreements, retiree benefits, and pension plans (*e.g.*, whether the bid contemplates the assumption of such agreements, benefits, or plans);

- other than for a Chapter 11 Plan Bid, sets forth the consideration, including the form thereof, for the Bid Assets (or lot thereof) to be purchased and the Contracts and Leases to be assumed (the "**Bid Consideration**"); *provided* that, if

there is an Approved Stalking Horse Bid (as defined herein), the consideration must be at least equal to the following: (i) the consideration set forth in the Approved Stalking Horse Bid; *plus* (ii) the aggregate amount of any Approved Bid Protections (as defined herein); *plus* (iii) two percent of the consideration set forth in the Approved Stalking Horse Bid (the "**Minimum Overbid**");

- other than for a Chapter 11 Plan Bid, allocates the Bid Consideration among the Bid Assets and Contracts and Leases to be assumed (per lot of Bid Assets);

- is not conditioned on (i) obtaining financing or (ii) the outcome of unperformed due diligence;

- includes a description of all governmental, licensing, regulatory, or other approvals or consents that are required to consummate the proposed transaction (including any antitrust approval related to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended), together with evidence satisfactory to the Debtors, in consultation with the Consultation Parties, of the ability to obtain such approvals or consents as soon as reasonably practicable, and in no event later than September 20, 2023, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such approvals or consents;

- expressly states that the bidder agrees to serve as an Alternate Bidder (as defined herein) if such bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid (as defined below) with respect to the applicable Bid Assets;

- is accompanied by a cash deposit by wire transfer to an escrow agent selected by the Debtors (the "**Deposit Agent**") in an amount equal to ten percent of the consideration set forth in connection with such bid (any such deposit, a "**Good Faith Deposit**");

- sets forth the representatives that are authorized to appear and act on behalf of the bidder in connection with the proposed transaction;

- indicates that the bidder will not seek any transaction or break-up fee, expense reimbursement, or similar type of

payment (other than if such bid is selected to be a Stalking Horse Bid and subject to the provisions of Section 4 below) and that it waives any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code;

- includes evidence of the bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Debtors and assigned to the bidder, in a form that will permit the Debtors to disseminate immediately such evidence to the non-Debtor counterparties to such contracts and leases;

- indicates whether or not the bidder will assume all cure costs associated with any Contracts and Leases it intends to assume; and

- is received on or before the Bid Deadline (as such deadline may be extended in accordance with these Bidding Procedures).

A bid received from a Potential Bidder will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above requirements (other than a credit bid described in Section 3 below), including, in the case of a Chapter 11 Plan Transaction, the structure, confirmability, and feasibility of any proposed chapter 11 plan (including the proposed time and costs estimated to be necessary to negotiate, document, and obtain confirmation of such proposed chapter 11 plan), as determined by the Debtors in consultation with the Consultation Parties. The Debtors, in consultation with the Consultation Parties, shall have the right to deem a bid a Qualified Bid even if such bid does not conform to one or more of the requirements above or does not include one or more Required Bid Documents. The Debtors will be authorized to approve joint bids in their reasonable discretion, in consultation with the Consultation Parties, on a case-by-case basis.

If the Debtors receive a bid prior to the Bid Deadline that is not a Qualified Bid, the Debtors may provide the bidder with the opportunity to remedy any deficiencies through and, in consultation with the Consultation Parties, after the Bid Deadline. If any bid is determined by the Debtors, in consultation with the Consultation Parties, not to be a Qualified Bid, and the applicable bidder fails to remedy such bid in accordance with these Bidding Procedures, the Debtors, to the extent applicable, shall promptly instruct the Deposit Agent to return such bidder's Good Faith Deposit.

Notwithstanding any other provision of these Bidding Procedures, the Debtors may, in their discretion and in consultation with the Consultation Parties, evaluate bids on any grounds, including, but not limited to, (i) the amount of the purchase price, including non-cash consideration, set forth in the bid, (ii) the value to be provided to the Debtors under the bid,

including the net economic effect upon the Debtors' estates, (iii) any benefit to the Debtors' estates from any assumption of liabilities or waiver of liabilities, including the release or replacement of letters of credit, (iv) the transaction structure and execution risk, including conditions to and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approvals, (v) the anticipated timing to closing and whether such timing is consistent with the Debtors' adherence to the Approved Budget, (vi) the impact on employees and employee claims against the Debtors, (vii) the presence of any governmental, licensing, regulatory, or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, (viii) the impact on trade and other unsecured, priority, and administrative claim creditors, (ix) whether the aggregate amount of Bid Consideration is sufficient to satisfy in full all DIP Obligations outstanding at the closing of the Sale Transaction(s), (x) in the case of a Chapter 11 Plan Transaction, the structure, confirmability, and feasibility of any proposed chapter 11 plan (including the proposed time and costs estimated to be necessary to negotiate, document, and obtain confirmation of such proposed chapter 11 plan), (xi) the impact on employees, the number or percentage of employees to be retained post-closing, employee claims against the Debtors, and the Debtors' collective bargaining agreements, retiree benefits, and pension plans, and (xii) any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties.   For the avoidance of doubt, the presence of any governmental, licensing, regulatory, or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, may be grounds for the Debtors in their discretion, in consultation with the Consultation Parties, to determine that such bid (i) is not a Qualified Bid or (ii) is not higher or otherwise better than any other Qualified Bid.

By submission of its bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (i) has reviewed, understands, and accepts these Bidding Procedures, (ii) has consented to the jurisdiction of the Bankruptcy Court, and (iii) intends to consummate its Qualified Bid if it is selected as the Successful Bidder.   Without the written consent of the Debtors, in consultation with the Consultation Parties, a Qualified Bidder may not amend, modify, or withdraw its Qualified Bid, except for proposed amendments to increase the amount or otherwise improve the terms of its Qualified Bid, during the period that such Qualified Bid is required to remain irrevocable.

## 3.    <u>CREDIT BID</u>

Pursuant to section 363(k) of the Bankruptcy Code and subject to the terms and conditions set forth in the DIP Order, the DIP Documents, and the Prepetition Credit Documents, the DIP Secured Parties and the Prepetition Secured Parties, to the extent such parties have a valid and perfected lien on any assets of the Debtors' estates, shall have the right to credit bid up to the full amount of the applicable outstanding DIP Obligations and Prepetition Obligations, as the case may be, in any bulk or piecemeal sale of all, substantially all, or any portion of the Bid Assets constituting DIP Collateral or Prepetition Collateral, as applicable; *provided* that any such credit bid must be submitted on or before the Bid Deadline and include cash consideration sufficient to satisfy the Carve Out and any senior liens on the collateral that is subject to the credit bid, except to the extent otherwise agreed by the holders of such senior liens in their sole and absolute discretion.   If the DIP Secured Parties or the Prepetition Secured Parties submit a credit bid in accordance with the foregoing, and such bid is received by the Bid Deadline, such bidder shall be

deemed to be a Qualified Bidder and any such credit bid shall be deemed to be a Qualified Bid (without the need for any Good Faith Deposit).

**4.       STALKING HORSE BIDDER AND BID PROTECTIONS**

The Debtors are authorized, but not obligated, to exercise their business judgment (in consultation with the Consultation Parties) to agree with any Qualified Bidder that (a) such Qualified Bidder's Qualified Bid shall serve as the minimum bid for the Bid Assets or any lot thereof (such Qualified Bidder, a "**Stalking Horse Bidder**" and, such Qualified Bid, a "**Stalking Horse Bid**") and (b) the Debtors will enter into the transaction(s) contemplated in such Stalking Horse Bid unless a higher or otherwise better Qualified Bid is submitted with respect to such Bid Assets or lot thereof, as determined by the Debtors (in consultation with the Consultation Parties) in accordance with the Bidding Procedures.  In order to incentivize prospective purchasers to agree to become a Stalking Horse Bidder, the Debtors are authorized, but not obligated, to exercise their business judgment (in consultation with the Consultation Parties) to offer the following bid protections to such Stalking Horse Bidder(s), payable if the Debtors consummate a sale pursuant to a Qualified Bid other than the Stalking Horse Bid (if the assets subject to such sale include those to which such Stalking Horse Bid relates):  (y) payment of a break-up fee in an amount not to exceed three percent of the cash portion of the purchase price set forth in the Stalking Horse Bid (the "**Break-Up Fee**") and (z) reimbursement of the reasonable and documented fees and out-of-pocket expenses actually incurred by the Stalking Horse Bidder (the "**Expense Reimbursement**" and, together with the Break-Up Fee, the "**Bid Protections**") in an amount up to $500,000; *provided* that (i) the payment of any Bid Protections shall be subject to the terms and conditions of the definitive agreement(s) executed between the Debtors and such Stalking Horse Bidder(s), (ii) any Bid Protections will not be binding on the Debtors until the approval of such Bid Protections in accordance with these Bidding Procedures, and (iii) no Break-Up Fee shall be paid to an insider of the Debtors.  For the avoidance of doubt, the Debtors will provide Expense Reimbursement only to the Stalking Horse Bidder(s) and such expenses must be reasonable, documented, and subject to review by the Debtors.  To the extent payable, any Bid Protections would be paid out of the proceeds of the sale to which they relate.

In the event that the Debtors, in consultation with the Consultation Parties, desire to designate a Qualified Bid as a Stalking Horse Bid and enter into an asset purchase agreement (the "**Stalking Horse APA**") with a Stalking Horse Bidder that provides for Bid Protections (subject to the limits on those Bid Protections set forth herein), the Debtors may file a notice with the Bankruptcy Court (the "**Stalking Horse Notice**") that (a) sets forth the identity of the Stalking Horse Bidder, (b) sets forth the amount of the Stalking Horse Bid and what portion of the Stalking Horse Bid (if any) would be in the form of cash, (c) identifies the Bid Assets (or lot thereof) to be purchased and the contracts and leases to be assumed, (d) states whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid, (e) specifies any proposed Bid Protections, and (f) attaches the Stalking Horse APA, including all exhibits, schedules, and attachments thereto and serve such Stalking Horse Notice on the U.S. Trustee, counsel to each of the Consultation Parties, and those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases (collectively, the "**Stalking Horse Notice Parties**"), with no further notice being required.

The Stalking Horse Notice shall also specify the deadline to file objections ("**Stalking Horse Objections**") to the designation of the Stalking Horse Bidder, the terms of the Stalking Horse Bid, or the Bid Protections set forth therein, which deadline (the "**Stalking Horse Objection Deadline**") shall be no earlier than three business days after service of the Stalking Horse Notice on the Stalking Horse Notice Parties. Stalking Horse Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and Complex Procedures, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Bankruptcy Court and served on the Debtors and the Stalking Horse Notice Parties by the Stalking Horse Objection Deadline.

If a timely Stalking Horse Objection is filed and served, to the extent not resolved consensually, the Debtors may schedule a hearing before the Bankruptcy Court to be held on an expedited basis (on not less than three-days' notice) seeking authorization to enter into the Stalking Horse APA (including the Bid Protections contained therein) (a "**Stalking Horse Hearing**"). If no timely Stalking Horse Objection is filed and served, upon the expiration of the Stalking Horse Objection Deadline, the Debtors shall file with the Bankruptcy Court a certificate of no objection (a "**CNO**") and, upon such filing, (a) the Debtors' designation of the Stalking Horse Bidder and agreement respecting Bid Protections shall be deemed approved and (b) the Debtors may enter into the Stalking Horse APA, in each case without further notice or opportunity to be heard. Upon the approval by the Bankruptcy Court at a Stalking Horse Hearing for the Debtors to enter into the Stalking Horse APA (including the Bid Protections contained therein), or upon the Debtors' filing a CNO, the Stalking Horse Bidder shall be the "**Approved Stalking Horse Bidder**," its Stalking Horse Bid shall be the "**Approved Stalking Horse Bid**," and the Bid Protections contained therein (if any) shall be the "**Approved Bid Protections**."

5.    **<u>AUCTION</u>**

In the event that the Debtors timely receive more than one Qualified Bid, the Debtors shall conduct an auction (the "**Auction**") for the applicable Bid Assets and/or Chapter 11 Plan Transaction. The Auction shall be conducted in accordance with these Bidding Procedures and upon notice to all Qualified Bidders that have submitted Qualified Bids. The Auction shall be conducted at the offices of Davis Polk, 450 Lexington Avenue, New York, New York 10017 on **September 11, 2023 at 10:00 a.m. (prevailing Eastern Time),** or such later time on such day or such other place as the Debtors (in consultation with the Consultation Parties) shall notify all Participating Parties (as defined below). If (a) no more than one Qualified Bid is submitted by the Bid Deadline (whether an Approved Stalking Horse Bid or otherwise) or (b) multiple Partial Bids (as defined below) are submitted by the Bid Deadline for non-overlapping lots of the Bid Assets, the Debtors may, in their discretion and in consultation with the Consultation Parties, elect to cancel the Auction and seek approval of the transactions contemplated in such Approved Stalking Horse Bid, Qualified Bid that is not an Approved Stalking Horse Bid, Partial Bids, or Chapter 11 Plan Bid, as applicable, at the Sale Hearing (as defined below).

If any of the Qualified Bids submitted by the Bid Deadline are structured as a purchase of less than all or substantially all of the Debtors' assets (each such bid, a "**Partial Bid**"), the Debtors (in consultation with the Consultation Parties) may conduct separate auctions at the Auction for each lot of assets (each, an "**Auction Lot**") subject to a Partial Bid. The Debtors may, in consultation with the Consultation Parties, combine multiple Partial Bids into an Auction Lot to

compete against an Approved Stalking Horse Bid.  The Debtors may designate each Auction Lot at any time prior to the Auction.

Only representatives or agents of the Debtors, the Consultation Parties, and the Qualified Bidders (including the Approved Stalking Horse Bidder, if any), and the legal and financial advisors to each of the foregoing (collectively, the "**Participating Parties**"), will be entitled to attend the Auction, and only Qualified Bidders will be entitled to make any Subsequent Bids (as defined herein) at the Auction.

Prior to the Auction, the Debtors will (a) notify each Qualified Bidder that has timely submitted a Qualified Bid that its bid is a Qualified Bid and (b) provide all Qualified Bidders with (i) copies of the Qualified Bid or combination of Qualified Bids that the Debtors believe, in consultation with the Consultation Parties, is the highest or otherwise best offer (the "**Starting Bid**"), (ii) an explanation of how the Debtors value the Starting Bid, and (iii) a list identifying all of the Qualified Bidders.  For the avoidance of doubt, the Starting Bid may be comprised of multiple Qualified Bids if the aggregate consideration of such Qualified Bids is higher and better than an Approved Stalking Horse Bid, if any.  The Debtors shall also provide copies of such Starting Bid (if applicable, marked against an Approved Stalking Horse Bid) to all of the Qualified Bidders (including the Approved Stalking Horse Bidder) and the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules for conducting the Auction (*e.g.*, the amount of time allotted to submit Subsequent Bids); *provided* that such rules shall (a) not be inconsistent with the Bankruptcy Code, the Bidding Procedures Order, or any other order of the Bankruptcy Court entered in connection herewith and (b) be disclosed to all Qualified Bidders.

Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding in the presence of all parties at the Auction, so long as during each round at least one subsequent bid (a "**Subsequent Bid**") is submitted by a Qualified Bidder that (a) improves upon such Qualified Bidder's immediately prior Qualified Bid and (b) the Debtors, in their discretion and in consultation with the Consultation Parties, determine that such Subsequent Bid is (i) with respect to the first round, a higher or otherwise better offer than the Starting Bid and (ii) with respect to subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below), in each case taking into account other Qualified Bids for other Bid Assets; *provided* that, with respect to the first round, if there is an Approved Stalking Horse Bidder, any Qualified Bid must provide incremental consideration at least equal to the Minimum Overbid.  In each subsequent round after the first round, the Debtors, in their discretion and in consultation with the Consultation Parties, may determine appropriate minimum bid increments or requirements for each round of bidding.

In the case of Chapter 11 Bids, the Debtors, in consultation with the Consultation Parties, shall seek to ascertain whether the plan investment consideration offered by any Chapter 11 Bid matches or exceeds the value provided to the Debtors' estates and their creditors, in the aggregate, of any other Qualified Bids or Partial Bids for Bid Assets then under consideration.

After the first round of bidding and between each subsequent round of bidding, as applicable, the Debtors, in their discretion and in consultation with the Consultation Parties, will determine and announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (the "**Leading Bid**").  Additional consideration in excess of the amount set forth in the Starting Bid may include cash and/or non-cash consideration; *provided* that the value for such non-cash consideration shall be determined by the Debtors, in their discretion and in consultation with the Consultation Parties.

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid.

For the purpose of evaluating Subsequent Bids, the Debtors may require a Qualified Bidder submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement acceptable to the Debtors in their discretion, in consultation with the Consultation Parties) demonstrating such Qualified Bidder's ability to close the proposed transaction.

The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Starting Bid(s), all Subsequent Bid(s), the Leading Bid(s), the Alternative Bid(s) (as defined below), and the Successful Bid(s).

If a Qualified Bidder increases its bid at the Auction and is the Successful Bidder or Alternate Bidder, such bidder must increase its Good Faith Deposit to an amount equal to ten percent of the proposed purchase price submitted at the Auction within two days after the Auction.

## 6.      SELECTION OF SUCCESSFUL BID(S) AND ALTERNATE BID(S)

Prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, shall (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale transaction and, in the case of a Chapter 11 Plan Transaction, the structure, confirmability, and feasibility of any proposed chapter 11 plan (including the proposed time and costs estimated to be necessary to negotiate, document, and obtain confirmation of such proposed chapter 11 plan), (b) determine and identify the highest or otherwise best offer or collection of offers (the "**Successful Bid(s)**"), (c) determine and identify the next highest or otherwise best offer or collection of offers (the "**Alternate Bid(s)**"), and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of (i) the identity of the party or parties that submitted the Successful Bid(s) (the "**Successful Bidder(s)**"), (ii) the amount and other material terms of the Successful Bid(s), (iii) the identity of the party or parties that submitted the Alternate Bid(s) (the "**Alternate Bidder(s)**"), and (iv) the amount and other material terms of the Alternate Bid(s).  Each Qualified Bidder shall agree and be deemed to agree to be the Alternate Bidder if so designated.  Notwithstanding anything in these Bidding Procedures to the contrary, any Qualified Bid submitted by a DIP Agent or the Prepetition Term Agent shall not be required to serve as an Alternate Bid absent such DIP Agent's or Prepetition Term Agent's consent.  As soon as reasonably practicable after the completion of the Auction, the Successful Bidder(s) and the applicable Debtors shall complete and execute all agreements,

instruments, and other documents necessary to consummate the applicable sale or other transaction(s) contemplated by the applicable Successful Bid(s). Promptly following the selection of the Successful Bid(s) and Alternate Bid(s), the Debtors shall file a notice of the Successful Bid(s) and Alternate Bid(s) with the Bankruptcy Court, together with a proposed order approving the transaction(s) contemplated therein (the "**Sale Order**"). If a Successful Bid is a Chapter 11 Plan Bid, the Sale Order shall, among other things, set proposed dates for (a) the filing of a chapter 11 plan (the "**Plan**") propounded by the Debtors in consultation with the Successful Bidder and the Consultation Parties, (b) a hearing to consider the disclosure statement with respect to the Plan, and (c) a confirmation hearing with respect to the Plan.

## 7.    THE SALE HEARING

The hearing to consider the proposed Sale Order (the "**Sale Hearing**") will be held on **September [14], 2023 at [●].m. (prevailing Central time)**[4] before the Honorable Judge David R. Jones, in the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002, or by such other virtual or electronic means as may be determined by the Bankruptcy Court. The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties, by an announcement of the adjourned date at a hearing before the Bankruptcy Court or by filing a notice on the Bankruptcy Court's docket. At the Sale Hearing, the Debtors will seek the Bankruptcy Court's approval of the Successful Bid(s) and, at the Debtors' election, the Alternate Bid(s).

The Debtors' presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Debtors' acceptance of such bid(s), which acceptance will only occur upon approval of such bid(s) by the Bankruptcy Court. Following the Bankruptcy Court's entry of the Sale Order, the Debtors and the Successful Bidder(s) shall proceed to consummate the transaction(s) contemplated by the Successful Bid(s). If the Debtors and the Successful Bidder(s) fail to consummate the proposed transaction(s), then the Debtors shall file a notice with the Bankruptcy Court advising of such failure. Upon the filing of such notice with the Bankruptcy Court, the Alternate Bid(s) will be deemed to be the Successful Bid(s) and the Debtors will be authorized, but not directed, to effectuate the transaction(s) with the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Bankruptcy Court. If the failure to consummate the transaction(s) contemplated by the Successful Bid(s) is the result of a breach by the Successful Bidder(s) (the "**Breaching Bidder(s)**") of its (their) asset purchase agreement(s), the Debtors reserve the right to seek all available remedies from such Breaching Bidder(s), subject to the terms of the applicable asset purchase agreement. For the avoidance of doubt, if the Successful Bid contemplates a Chapter 11 Plan Transaction, the Alternate Bid may contemplate a Sale Transaction, and vice versa.

## 8.    RETURN OF GOOD FAITH DEPOSIT

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Deposit Agent and will not become property of the Debtors' bankruptcy estates unless released to the Debtors from escrow pursuant to the terms of the applicable escrow agreement or pursuant to

---

[4] This date remains subject to Bankruptcy Court approval.

further order of the Bankruptcy Court.  The Deposit Agent will retain the Good Faith Deposits of the Successful Bidder(s) and the Alternate Bidder(s) until the consummation of the transaction(s) contemplated by the Successful Bid(s) or the Alternate Bid(s), as applicable, in accordance with Section 6 above, except as otherwise ordered by the Bankruptcy Court.  The Good Faith Deposits (and all interest accrued thereon) of the other Qualified Bidders will be returned within four business days after the entry of the applicable Sale Order, or as soon as reasonably practicable thereafter.  At the closing of the transaction contemplated by the Successful Bid(s), the Successful Bidder(s) will receive a credit in the amount of its Good Faith Deposit (plus all interest accrued thereon).  All remaining Good Faith Deposits of the Alternate Bidders (and all interest accrued thereon) held by the Deposit Agent will be released by the Deposit Agent four business days after the consummation of the transaction(s) contemplated by the Successful Bid(s), or as soon as reasonably practicable thereafter; *provided* that the Deposit Agent will retain the Good Faith Deposit of a Breaching Bidder pending a ruling by the Bankruptcy Court as to the amount of damages owed, if any, by such Breaching Bidder to the Debtors.

## 9.     AS IS, WHERE IS

The sale of the Bid Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or their estates, except, solely with respect to the Debtors and their estates, as provided in a purchase agreement, as approved by the Bankruptcy Court.

## 10.    FREE AND CLEAR OF ANY AND ALL INTERESTS

Except as otherwise provided in a Successful Bidder(s)'s purchase agreement, and other than as contemplated by a Chapter 11 Plan Transaction, all of the Debtors' right, title, and interest in and to the Bid Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon (collectively, the "**Interests**") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Bid Assets with the same validity and priority as such Interests applied against the Bid Assets.

## 11.    RESERVATION OF RIGHTS

Except as otherwise provided in these Bidding Procedures or the Bidding Procedures Order, the Debtors reserve the right in their discretion (in consultation with the Consultation Parties) to:

- determine which Interested Parties are Potential Bidders;

- determine which bidders are Qualified Bidders;

- determine which bids are Qualified Bids;

- determine which Qualified Bid is the Starting Bid;

- determine which Qualified Bid is the highest or otherwise best offer for the Bid Assets and which is the next highest or

otherwise best offer;

- reject any bid that the Debtors deem to be (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, or (c) contrary to the best interests of the Debtors and their estates;

- impose additional terms and conditions with respect to all Potential Bidders;

- designate a Stalking Horse Bidder;

- cancel the Auction;

- waive the terms and conditions set forth herein with respect to Potential Bidders;

- extend the deadlines set forth herein; and

- modify these Bidding Procedures and implement additional procedural rules that the Debtors determine, in their discretion and in consultation with the Consultation Parties, will better promote the goals of the Bidding Process and discharge the Debtors' fiduciary duties.

Nothing in these Bidding Procedures shall require the Debtors' board of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent that the Debtors' board of directors determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary duties under applicable law. Accordingly, at any time prior to the Bankruptcy Court's entry of a Sale Order, the Debtors may terminate the sale process and pursue an alternative transaction, including a Plan.

All Consultation Parties will be permitted to seek relief from the Bankruptcy Court on an expedited basis if they disagree with any actions or decision made by the Debtors as part of these Bidding Procedures. The rights of all Consultation Parties with respect to all issues are expressly reserved and not modified, waived, or impaired in any way by these Bidding Procedures.

## 12.  **DIP ORDERS**

Notwithstanding anything to the contrary contained in these Bidding Procedures or otherwise, (a) any right of the DIP Agents to consent to the sale of any portion of DIP Collateral as set forth in the DIP Credit Agreements are hereby expressly reserved and not modified, waived, or impaired in any way by these Bidding Procedures, (b) all cash proceeds generated from the sale of any DIP Collateral shall be applied in accordance with the terms and conditions of the DIP

Order, the DIP Documents, and any other order of the Bankruptcy Court, as applicable, and (c) nothing in these Bidding Procedures shall amend, modify, or impair any provision of the DIP Order or the rights of the Debtors, the DIP Agents, or the DIP Lenders thereunder or under any of the DIP Documents, including with respect to allocation of the sale proceeds of any DIP Collateral.

## 13.   **RELEVANT DATES**

| | |
|---|---|
| **July 12, 2023 at 3:30 p.m. (prevailing Central Time)** | Hearing to consider approval of the Bidding Procedures and for entry of the Bidding Procedures Order |
| **July 21, 2023 at 3:00 p.m. (prevailing Central Time)** | Indication of Interest Deadline |
| **July 24, 2023** | Target date for the Debtors to file Potential Assumed Contracts Schedule |
| **August 25, 2023 at 4:00 p.m. (prevailing Central Time)** | Cure Objection Deadline |
| **September 7, 2023 at 3:00 p.m. (prevailing Central Time)** | Bid Deadline |
| **September 11, 2023 at 10:00 a.m. (prevailing Eastern Time)** | Auction (if any) to be held at the New York offices of Davis Polk & Wardwell LLP |
| **September 12, 2023** | Target date for the Debtors to file with the Court the Notice of Auction Results |
| **September 13, 2023 at 4:00 p.m. (prevailing Central Time)** | Deadline to object to the Sale Transaction to the Successful Bidder; and the Assumption and Assignment Objection Deadline |
| **September [14], 2023 at [●].m. (prevailing Central Time)[5]** | Hearing to consider approval of the Sale Transaction(s) and for entry of the Sale Order(s) |

---

[5]  This date remains subject to Bankruptcy Court approval.

**<u>Exhibit 2</u>**

**Form of Sale Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **INSTANT BRANDS ACQUISITION** | § | Case No. 23-90716 (DRJ) |
| **HOLDINGS INC.,** *et al.*, | § | |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") on June 12, 2023.

**PLEASE TAKE FURTHER NOTICE** that, on June 30, 2023, the Debtors filed a motion (the "**Motion**") with the Court seeking entry of orders, among other things, approving (a) procedures for the solicitation of bids in connection with the Sale Transaction and the Auction (the "**Bidding Procedures**"),[2] (b) the form and manner of notice related to the Sale Transaction, and (c) procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2023, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction and the Auction.  The Bidding Procedures also provide that the Debtors may consider competing bids in the form of Chapter 11 Plan Bids that contemplate Chapter 11 Plan Transactions.  All parties interested in bidding should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

---

[1]  The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers or registration numbers in the applicable jurisdictions, are as follows: Instant Brands (Texas) Inc. (2526); Instant Brands Acquisition Holdings Inc. (9089); Instant Brands Acquisition Intermediate Holdings Inc. (3303); Instant Brands Holdings Inc. (3318); URS-1 (Charleroi) LLC (7347); Instant Brands LLC (0566); URS-2 (Corning) LLC (8085); Corelle Brands (Latin America) LLC (8862); EKCO Group, LLC (7167); EKCO Housewares, Inc. (0216); EKCO Manufacturing of Ohio, Inc. (7300); Corelle Brands (Canada) Inc. (5817); Instant Brands (Canada) Holding Inc. (4481); Instant Brands Inc. (8272); and Corelle Brands (GHC) LLC (9722).  The address of the debtors' corporate headquarters is 3025 Highland Parkway, Suite 700, Downers Grove, IL 60515.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

[3]  To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

## Contact Persons for Parties Interested in Submitting a Bid

The Bidding Procedures set forth the requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase the Bid Assets (or any lot thereof) must comply strictly with the Bidding Procedures.  Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

**Any interested bidder should contact, as soon as practicable:**

**GUGGENHEIM SECURITIES, LLC[4]**
330 Madison Avenue
New York, New York 10017
Attn: Jonathan Wober (jonathan.wober@guggenheimpartners.com; (tel.) + 1 (212) 823-6780
Robert Ramirez (robert.ramirez@guggenheimpartners.com; (tel.) + 1 (212) 823-6688)
Drew Heimlich (drew.heimlich@guggenheimpartners.com; (tel.) + 1 (212) 699-2078)
Denys Levin (denys.levin@guggenheimpartners.com; (tel.) + 1 (212) 823-6792)
Andrew Herrera (andrew.p.herrera@guggenheimpartners.com; (tel.) + 1 (212) 801-8960)

## Obtaining Additional Information

Copies of the Motion and the Bidding Procedures Order, as well as all related exhibits (including the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website located at *https://dm.epiq11.com/InstantBrands* or can be requested by email at InstantBrandsInfo@epiqglobal.com.

## Important Dates and Deadlines[5]

1. **Indication of Interest Deadline**.  The deadline for Potential Bidders to submit non-binding indications of interest to Guggenheim Securities is **July 21, 2023 at 3:00 p.m. (prevailing Central Time)**.

2. **Bid Deadline.**  The deadline to submit a Qualified Bid is **September 7, 2023 at 3:00 p.m. (prevailing Central Time).**

3. **Auction.**  In the event that the Debtors timely receive more than one Qualified Bid for the Bid Assets, and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction for the Bid Assets.  The Auction, if one is held, will commence on **September 11, 2023 at 10:00 a.m. (prevailing Eastern**

---

[4]  Guggenheim Securities, LLC, in its capacity as the Debtors' proposed investment banker, is referred to herein as "**Guggenheim Securities**."

[5]  The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

**Time)** at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017.

4. **Auction and Sale Objections Deadline**.  The deadline to file an objection with the Court to the Sale Order, the conduct of the Auction, or the Sale Transaction (collectively, the "**Sale Objections**") is **September 13, 2023 at 4:00 p.m. (prevailing Central Time)** (the "**Sale Objection Deadline**").

5. **Sale Hearing**.  A hearing (the "**Sale Hearing**") to consider the proposed Sale Transaction will be held before the Court on **September [14], 2023 at [●].m. (prevailing Central Time)[6]** or such other date as determined by the Court.

### Filing Objections

Sale Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and Complex Procedures, (d) be filed with the Court no later than the Sale Objection Deadline, and (e) no later than the Sale Objection deadline, be served on (i) proposed counsel to the Debtors, (y) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Brian M. Resnick, Steven Z. Szanzer, and Joanna McDonald and (z) Haynes & Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, Texas 77010, Attn: Charles A. Beckham, Jr., Arsalan Muhammad, and David A. Trausch, (ii) counsel to the Term DIP Secured Parties, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Attn: Ryan Preston Dahl, Matthew M. Roose, Daniel Gwen, Lindsay C. Barca, and Eric P. Schriesheim, (iii) counsel to the ABL DIP Agent, Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, Illinois 60606, Attn: James J. Mazza, Jr. and Robert E. Fitzgerald, (iv) counsel to the Committee, DLA Piper LLP (US), 1251 Avenue of the Americas, 27th Floor, New York, New York 10020, Attn: Dennis O'Donnell and Oksana Lashko, and (v) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Vianey Garza.

### CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any party or entity who fails to timely make an objection to the Sale Transaction on or before the Sale Objection Deadline in accordance with the Bidding Procedures Order and this Notice shall be forever barred from asserting any objection to the Sale Transaction, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances, and other interests.*

### NO SUCCESSOR LIABILITY

*Instant Brands is a company that designs, manufactures, and markets a global portfolio of innovative and iconic consumer lifestyle brands, including Instant®, Pyrex®, Corelle®, Corningware®, Snapware®, Chicago Cutlery®, and Visions®.  With people-first and purpose-driven solutions in mind, Instant Brands is reimagining how people live, eat, connect, and play inside the home—and in the spaces where people gather.  Headquartered in Downers Grove,*

---

[6]  This date remains subject to Court approval.

*Illinois, Instant Brands sells its products worldwide, employs more than 2,000 people, and operates in several countries outside the United States, including Canada, Singapore, England, South Korea, Australia, Taiwan, and China.  For more information on the Debtors' businesses or their products, refer to the Declaration of Adam Hollerbach as Chief Restructuring Officer of the Debtors in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings [Docket No. 39].  The assets sold in the Sale Transaction will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale Transaction, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale Transaction.  Accordingly, as a result of the Sale Transaction, the Successful Bidder will not be a successor to any of the Debtors by reason of any theory of law or equity, and the Successful Bidder will have no liability, except as expressly provided in a definitive agreement reached between the Debtors and the Successful Bidder, for any liens, claims, encumbrances, and other interests against or in any of the Debtors under any theory of law, including successor liability theories.*

[*Remainder of page intentionally left blank*]

Dated:   [●], 2023
       Houston, Texas

                HAYNES AND BOONE, LLP

                */s/ [Draft]*
                Charles A. Beckham, Jr. (TX Bar No. 02016600)
                Arsalan Muhammad (TX Bar No. 24074771)
                David A. Trausch (TX Bar No. 24113513)
                1221 McKinney Street, Suite 4000
                Houston, Texas 77010
                Tel.:   (713) 547-2000
                Email: charles.beckham@haynesboone.com
                      arsalan.muhammad@haynesboone.com
                      david.trausch@haynesboone.com

                *-and-*

                DAVIS POLK & WARDWELL LLP

                Brian M. Resnick (admitted *pro hac vice*)
                Steven Z. Szanzer (admitted *pro hac vice*)
                Joanna McDonald (admitted *pro hac vice*)
                450 Lexington Avenue
                New York, New York 10017
                Tel.:   (212) 450-4000
                Email: brian.resnick@davispolk.com
                      steven.szanzer@davispolk.com
                      joanna.mcdonald@davispolk.com

                *Proposed Counsel to the Debtors and Debtors in Possession*

## <u>Exhibit 3</u>

**Form of Potential Assumption and Assignment Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **INSTANT BRANDS ACQUISITION** | § | **Case No. 23-90716 (DRJ)** |
| **HOLDINGS INC.**, *et al.*, | § | |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") on June 12, 2023.

**PLEASE TAKE FURTHER NOTICE** that, on June 30, 2023, the Debtors filed a motion (the "**Motion**")[2] with the Court seeking entry of orders, among other things, approving (a) procedures for the solicitation of bids in connection with the Sale Transaction and the Auction (the "**Bidding Procedures**"), (b) the form and manner of notice related to the Sale Transaction, and (c) procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction (the "**Assumption and Assignment Procedures**").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2023, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction, the Auction, and the Assumption and Assignment Procedures.  The Bidding Procedures also provide that the Debtors may consider competing bids in the form of Chapter 11 Plan Bids that contemplate Chapter 11 Plan Transactions.

---

[1]  The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers or registration numbers in the applicable jurisdictions, are as follows: Instant Brands (Texas) Inc. (2526); Instant Brands Acquisition Holdings Inc. (9089); Instant Brands Acquisition Intermediate Holdings Inc. (3303); Instant Brands Holdings Inc. (3318); URS-1 (Charleroi) LLC (7347); Instant Brands LLC (0566); URS-2 (Corning) LLC (8085); Corelle Brands (Latin America) LLC (8862); EKCO Group, LLC (7167); EKCO Housewares, Inc. (0216); EKCO Manufacturing of Ohio, Inc. (7300); Corelle Brands (Canada) Inc. (5817); Instant Brands (Canada) Holding Inc. (4481); Instant Brands Inc. (8272); and Corelle Brands (GHC) LLC (9722).  The address of the debtors' corporate headquarters is 3025 Highland Parkway, Suite 700, Downers Grove, IL 60515.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

PLEASE TAKE FURTHER NOTICE that, upon the closing of the Sale Transaction, the Debtors intend to assume and assign to the Successful Bidder(s) (whether or not a Stalking Horse Bidder) the Potential Assumed Contracts. A schedule listing the Potential Assumed Contracts (the "**Potential Assumed Contracts Schedule**") is attached hereto and may also be accessed free of charge on the Debtors' case information website located at *https://dm.epiq11.com/InstantBrands* or can be requested by email at InstantBrandsInfo@epiqglobal.com. In addition, the "**Cure Costs**," if any, necessary for the assumption and assignment of the Potential Assumed Contracts are set forth on the Potential Assumed Contracts Schedule. *Each Cure Cost listed on the Potential Assumed Contracts Schedule represents all liabilities of any nature of the Debtors arising under an Assumed Contract or Assumed Lease prior to the closing of the Sale Transaction, or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.*

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A POTENTIAL ASSUMED CONTRACT. Under the terms of the Assumption and Assignment Procedures, (a) at or prior to the closing of the Sale Transaction, a Successful Bidder may elect, in its sole and absolute discretion, (i) to exclude any contract or lease on the Potential Assumed Contracts Schedule as an Assumed Contract or Assumed Lease, as applicable (in which case it shall become an Excluded Contract or Excluded Lease, as applicable), or (ii) to include on the Proposed Assumed Contracts Schedule any contract or lease listed on the Potential Assumed Contracts Schedule, by providing to the Debtors written notice of its election to exclude or include such contract or lease, as applicable, (b) if the Debtors or any Successful Bidder identify during the pendency of the Chapter 11 Cases (before or after the closing of the Sale Transaction) any contract or lease that is not listed on the Proposed Assumed Contracts Schedule, and such contract or lease has not been rejected by the Debtors, the Successful Bidder may in its sole and absolute discretion elect by written notice to the Debtors to treat such contract or lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures, and (c) following the Auction, the Debtors may, in accordance with the applicable purchase agreement, or as otherwise agreed by the Debtors and the Successful Bidder(s), at any time before the closing of the Sale Transaction, modify the previously stated Cure Costs associated with any Proposed Assumed Contract. The Assumption and Assignment Procedures further provide that any Counterparty whose previously-stated Cure Cost is modified will receive notice thereof and an opportunity to file a Supplemental Assumption and Assignment Objection. **The assumption and assignment of the Contracts and Leases on the Potential Assumed Contracts Schedule is not guaranteed and is subject to approval by the Court and the Debtors' or Successful Bidder's right to remove an Assumed Contract or Assumed Lease from the Potential Assumed Contracts Schedule and Proposed Assumed Contracts Schedule.**

2

## Obtaining Additional Information

Copies of the Motion and the Bidding Procedures Order, as well as all related exhibits (including the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website located at *https://dm.epiq11.com/InstantBrands* or can be requested by email at InstantBrandsInfo@epiqglobal.com.

## Filing Assumption and Assignment Objections

Pursuant to the Assumption and Assignment Procedures, objections to the potential assumption and assignment of an Assumed Contract or Assumed Lease (an "**Assumption and Assignment Objection**") with respect to the ability of a Successful Bidder to provide adequate assurance of future performance must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and Complex Procedures, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Cost that the Counterparty believes are required to cure defaults under the relevant Assumed Contract or Assumed Lease, (d) by no later than **September 13, 2023 at 4:00 p.m. (prevailing Central Time)** (the "**Assumption and Assignment Objection Deadline**"), (i) be filed with the Court and (ii) be served on (1) [proposed] counsel to the Debtors, (y) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Brian M. Resnick, Steven Z. Szanzer, and Joanna McDonald and (z) Haynes & Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, Texas 77010, Attn: Charles A. Beckham, Jr., Arsalan Muhammad, and David A. Trausch, (2) counsel to the Term DIP Secured Parties, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Attn: Ryan Preston Dahl, Matthew M. Roose, Daniel Gwen, Lindsay C. Barca, and Eric P. Schriesheim, (3) counsel to the ABL DIP Agent, Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, Illinois 60606, Attn: James J. Mazza, Jr. and Robert E. Fitzgerald, (4) counsel to the Committee, DLA Piper LLP (US), 1251 Avenue of the Americas, 27th Floor, New York, New York 10020, Attn: Dennis O'Donnell and Oksana Lashko, and (5) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Vianey Garza (collectively, the "**Objection Notice Parties**").

Pursuant to the Assumption and Assignment Procedures, an Assumption and Assignment Objection relating to a proposed Cure Cost (a "**Cure Objection**") must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and Complex Procedures, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Cost that the Counterparty believes are required to cure defaults under the relevant Assumed Contract or Assumed Lease, and (d) by no later than **August 25, 2023 at 4:00 p.m.** (the "**Cure Objection Deadline**"), (i) be filed with the Court and (ii) be served on the Objection Notice Parties.

Pursuant to the Assumption and Assignment Procedures, objections to the potential assumption and assignment of an Assumed Contract or Assumed Lease by a party whose contract or lease is listed on a Supplemental Assumed Contracts Schedule (a "**Supplemental Assumption and Assignment Objection**") with respect to the ability of a Successful Bidder to provide adequate assurance of future performance or relating to the Cure Costs (to the extent modified form the previously-stated amount) must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and Complex Procedures, (c) state, with specificity, the legal and

factual bases thereof, and (d) by no later than **14 days from the date of service of such Supplemental Assumption and Assignment Notice,** (i) be filed with the Court and (ii) be served on the Objection Notice Parties.

Objections to the Sale Order, the conduct of the Auction, or the Sale Transaction (collectively, the "**Sale Objections**") must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and Complex Procedures, and (d) by no later than **September 13, 2023 at 4:00 p.m. (prevailing Central Time)** (the "**Sale Objection Deadline**") be (i) filed with the Court and (ii) served on the Objection Notice Parties.

If a Successful Bid is a Chapter 11 Plan Bid, the Plan may contain a set of assumption and assignment procedures that have been amended to reflect the chapter 11 plan context and timeline.

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

***Any Counterparty to a contract or lease who fails to timely make an objection to the potential assumption and assignment of such contract or lease on or before the Assumption and Assignment Objection Deadline in accordance with the Assumption and Assignment Procedures, the Bidding Procedures Order, and this Notice (or in the case of a Supplemental Assumption and Assignment Objection, by 14 days from the date of service of such Supplemental Assumption and Assignment Notice) shall be deemed to have consented to the assumption and assignment of such contract or lease, including the Cure Costs (if any), set forth on a Potential Assumed Contracts Schedule or a Supplemental Assumed Contracts Schedule, and shall be forever barred from asserting any objection or claims against the Debtors, the Successful Bidder, or the property of any such parties relating to the assumption and assignment of such contract or lease, including asserting additional Cure Costs with respect to such contract or lease. Notwithstanding anything to the contrary in such contract or lease, or any other document, the Cure Costs set forth on a Potential Assumed Contracts Schedule or a Supplemental Assumed Contracts Schedule shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.***

## Other Important Dates and Deadlines[3]

In addition to the dates and deadlines described above with respect to filing Assumption and Assignment Objections, Cure Objections, and Supplemental Assumption and Assignment Objections, note the following important dates and deadlines:

---

[3] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

1. **Auction.**  In the event that the Debtors timely receive more than one Qualified Bid for Bid Assets, and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction for the Bid Assets.  The Auction, if one is held, will commence on **September 11, 2023 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017.

2. **Sale Hearing**.  A hearing (the "**Sale Hearing**") to consider the proposed Sale Transaction will be held before the Court on **September [14], 2023 at [●].m. (prevailing Central Time)[4]** or such other date as determined by the Court.

*[Remainder of page intentionally left blank]*

---

[4] This date remains subject to Court approval.

Dated:   [●], 2023
        Houston, Texas

HAYNES AND BOONE, LLP

*/s/ [Draft]*
Charles A. Beckham, Jr. (TX Bar No. 02016600)
Arsalan Muhammad (TX Bar No. 24074771)
David A. Trausch (TX Bar No. 24113513)
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Tel.:   (713) 547-2000
Email: charles.beckham@haynesboone.com
        arsalan.muhammad@haynesboone.com
        david.trausch@haynesboone.com

*-and-*

DAVIS POLK & WARDWELL LLP

Brian M. Resnick (admitted *pro hac vice*)
Steven Z. Szanzer (admitted *pro hac vice*)
Joanna McDonald (admitted *pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Tel.:   (212) 450-4000
Email: brian.resnick@davispolk.com
        steven.szanzer@davispolk.com
        joanna.mcdonald@davispolk.com

[*Proposed*] *Counsel to the Debtors and Debtors in Possession*

## <u>Exhibit 4</u>

**Form of Proposed Assumption and Assignment Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | **Chapter 11** |
| **INSTANT BRANDS ACQUISITION HOLDINGS INC.,** *et al.*, | § § § | **Case No. 23-90716 (DRJ)** |
| Debtors.[1] | § § § § | **(Jointly Administered)** |

### NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") on June 12, 2023.

**PLEASE TAKE FURTHER NOTICE** that, on June 30, 2023, the Debtors filed a motion (the "**Motion**")[2] with the Court seeking entry of orders, among other things, approving (a) procedures for the solicitation of bids in connection with the Sale Transaction and the Auction (the "**Bidding Procedures**"), (b) the form and manner of notice related to the Sale Transaction, and (c) procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction (the "**Assumption and Assignment Procedures**").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2023, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction, the Auction, and the Assumption and Assignment Procedures.

---

[1]  The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers or registration numbers in the applicable jurisdictions, are as follows: Instant Brands (Texas) Inc. (2526); Instant Brands Acquisition Holdings Inc. (9089); Instant Brands Acquisition Intermediate Holdings Inc. (3303); Instant Brands Holdings Inc. (3318); URS-1 (Charleroi) LLC (7347); Instant Brands LLC (0566); URS-2 (Corning) LLC (8085); Corelle Brands (Latin America) LLC (8862); EKCO Group, LLC (7167); EKCO Housewares, Inc. (0216); EKCO Manufacturing of Ohio, Inc. (7300); Corelle Brands (Canada) Inc. (5817); Instant Brands (Canada) Holding Inc. (4481); Instant Brands Inc. (8272); and Corelle Brands (GHC) LLC (9722). The address of the debtors' corporate headquarters is 3025 Highland Parkway, Suite 700, Downers Grove, IL 60515.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**PLEASE TAKE FURTHER NOTICE** that, on **September 11, 2023 at 10:00 a.m. (prevailing Eastern Time),** the Debtors held an Auction at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017.

**PLEASE TAKE FURTHER NOTICE** that, upon the closing of the Sale Transaction, the Debtors intend to assume and assign to the Successful Bidder(s) (whether or not a Stalking Horse Bidder) the Proposed Assumed Contracts.  A schedule listing the Proposed Assumed Contracts (the "**Proposed Assumed Contracts Schedule**") is attached hereto and may also be accessed free of charge on the Debtors' case information website located at *https://dm.epiq11.com/InstantBrands* or can be requested by e-mail at InstantBrandsInfo@epiqglobal.com.  In addition, the "**Cure Costs,**" if any, necessary for the assumption and assignment of the Proposed Assumed Contracts are set forth on the Proposed Assumed Contracts Schedule.  *Each Cure Cost listed on the Proposed Assumed Contracts Schedule represents all liabilities of any nature of the Debtors arising under an Assumed Contract or Assumed Lease prior to the closing of the Sale Transaction, or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.*

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A PROPOSED ASSUMED CONTRACT**. Under the terms of the Assumption and Assignment Procedures, (a) at or prior to the closing of the Sale Transaction, the Successful Bidder(s) may elect, in its sole and absolute discretion, (i) to exclude any contract or lease on the Proposed Assumed Contracts Schedule as an Assumed Contract or Assumed Lease, as applicable (in which case it shall become an Excluded Contract or Excluded Lease, as applicable), or (ii) to include on the Proposed Assumed Contracts Schedule any contract or lease listed on the Potential Assumed Contracts Schedule by providing to the Debtors written notice of its election to exclude or include such contract or lease, as applicable, (b) if the Debtors or any Successful Bidder identify during the pendency of the Chapter 11 Cases (before or after the closing of the Sale Transaction) any contract or lease that is not listed on the Proposed Assumed Contracts Schedule, and such contract or lease has not been rejected by the Debtors, the Successful Bidder may in its sole and absolute discretion elect by written notice to the Debtors to treat such contract or lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures, and (c) following the Auction, the Debtors may, in accordance with the applicable purchase agreement, or as otherwise agreed by the Debtors and the Successful Bidder(s), at any time before the closing of the Sale Transaction, modify the previously-stated Cure Costs associated with any Proposed Assumed Contract.  The Assumption and Assignment Procedures further provide that any Counterparty whose previously-stated Cure Cost is modified will receive notice thereof and an opportunity to file a Supplemental Assumption and Assignment Objection. **The assumption and assignment of the Contracts and Leases on the Proposed Assumed Contracts Schedule is not guaranteed and is subject to approval by the Court and the Debtors' or Successful Bidder's right to remove an Assumed Contract or Assumed Lease from the Proposed Assumed Contracts Schedule.**

### Obtaining Additional Information

Copies of the Motion and the Bidding Procedures Order, as well as all related exhibits (including the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website located at *https://dm.epiq11.com/InstantBrands* or can be requested by e-mail at InstantBrandsInfo@epiqglobal.com.

### Filing Assumption and Assignment Objections

Pursuant to the Assumption and Assignment Procedures, objections to the proposed assumption and assignment of an Assumed Contract or Assumed Lease (an "**Assumption and Assignment Objection**") with respect to the ability of the Successful Bidder to provide adequate assurance of future performance must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and Complex Procedures, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs that the Counterparty believes are required to cure defaults under the relevant Assumed Contract or Assumed Lease, (d) by no later than **September 13, 2023 at 4:00 p.m. (prevailing Central Time**) (the "**Assumption and Assignment Objection Deadline**"), (i) be filed with the Court and (ii) be served on (1) [proposed] counsel to the Debtors, (y) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Brian M. Resnick, Steven Z. Szanzer, and Joanna McDonald and (y) Haynes & Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, Texas 77010, Attn: Charles A. Beckham, Jr., Arsalan Muhammad, and David A. Trausch, (2) counsel to the Term DIP Secured Parties, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Attn: Ryan Preston Dahl, Matthew M. Roose, Daniel Gwen, Lindsay C. Barca, and Eric P. Schriesheim, (3) counsel to the ABL DIP Agent, Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, Illinois 60606, Attn: James J. Mazza, Jr. and Robert E. Fitzgerald, (4) counsel to the Committee, DLA Piper LLP (US), 1251 Avenue of the Americas, 27th Floor, New York, New York 10020, Attn: Dennis O'Donnell and Oksana Lashko, and (5) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff and Vianey Garza (collectively, the "**Objection Notice Parties**").

**Sale Objections** (as defined below), if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and Complex Procedures, and (d) by **September 13, 2023 at 4:00 p.m. (prevailing Central Time)** (the "**Sale Objection Deadline**") (i) be filed with the Court and (ii) be served on the Objection Notice Parties.

### CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any Counterparty to an Assumed Contract or Assumed Lease who fails to timely make an objection to the proposed assumption and assignment of such contract or lease on or before the Assumption and Assignment Objection Deadline in accordance with the Assumption and Assignment Procedures, the Bidding Procedures Order, and this Notice shall be deemed to have consented with respect to the ability of a Successful Bidder to provide adequate assurance of future performance (and the Debtors' proposed Cure Costs, to the extent modified from the*

*previously-stated amount) and shall be forever barred from asserting any objection or claims against the Debtors, the Successful Bidder, or the property of any such parties relating to the assumption and assignment of such contract or lease (including asserting additional Cure Costs with respect to such contract or lease).   Notwithstanding anything to the contrary in such contract or lease, or any other document, the Cure Costs set forth on a Potential Assumed Contracts Schedule, a Proposed Assumed Contracts Schedule, or a Supplemental Assumed Contracts Schedule (as applicable) shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.*

### Other Important Dates and Deadlines[3]

In addition to the dates and deadlines described above with respect to filing Assumption and Assignment Objections, note the following important dates and deadlines:

1. **Auction and Sale Objections Deadline**.  The deadline to file an objection with the Court to the Sale Order, the conduct of the Auction, or the Sale Transaction (including objections relating to the Proposed Assumed Contacts Schedule) (collectively, the "**Sale Objections**") is the **Sale Objection Deadline**.

2. **Sale Hearing**.  A hearing (the "**Sale Hearing**") to consider the proposed Sale Transaction will be held before the Court on **September [14], 2023 at [●].m. (prevailing Central Time)[4]** or such other date as determined by the Court.

*[Remainder of page intentionally left blank]*

---

[3]  The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

[4]  This date remains subject to Court approval.

Dated:    [●], 2023
          Houston, Texas

HAYNES AND BOONE, LLP

/s/ [Draft]
Charles A. Beckham, Jr. (TX Bar No. 02016600)
Arsalan Muhammad (TX Bar No. 24074771)
David A. Trausch (TX Bar No. 24113513)
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Tel.:    (713) 547-2000
Email: charles.beckham@haynesboone.com
         arsalan.muhammad@haynesboone.com
         david.trausch@haynesboone.com

-and-

DAVIS POLK & WARDWELL LLP

Brian M. Resnick (admitted *pro hac vice*)
Steven Z. Szanzer (admitted *pro hac vice*)
Joanna McDonald (admitted *pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Tel.:    (212) 450-4000
Email: brian.resnick@davispolk.com
         steven.szanzer@davispolk.com
         joanna.mcdonald@davispolk.com

[*Proposed*] *Counsel to the Debtors and Debtors in Possession*