**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| Instant Brands Acquisition Holdings Inc., *et al.*,[1] | ) ) | Case No. 23-90716 (DRJ) |
| Debtors. | ) ) ) | (Jointly Administered) |

**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF BERKELEY RESEARCH GROUP, LLC AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS EFFECTIVE AS OF JUNE 29, 2023**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY, AT HTTPS://ECF.TXSB.USCOURTS.GOV, WITHIN TWENTY-ONE (21) DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE (21) DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

The Official Committee of Unsecured Creditors (the "Committee" or "UCC") of Instant Brands Acquisition Holdings Inc., *et al.*, as debtors and debtors in possession (collectively, the "Debtors" or "Instant Brands"), submits this application (the "Application") for an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, pursuant to sections 328(a), 330 and 1103 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a)

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers or registration numbers in the applicable jurisdictions, are as follows: Instant Brands (Texas) Inc. (2526); Instant Brands Acquisition Holdings Inc. (9089); Instant Brands Acquisition Intermediate Holdings Inc. (3303); Instant Brands Holdings Inc. (3318); URS-1 (Charleroi) LLC (7347); Instant Brands LLC (0566); URS-2 (Corning) LLC (8085); Corelle Brands (Latin America) LLC (8862); EKCO Group, LLC (7167); EKCO Housewares, Inc. (0216); EKCO Manufacturing of Ohio, Inc. (7300); Corelle Brands (Canada) Inc. (5817); Instant Brands (Canada) Holding Inc. (4481); Instant Brands Inc. (8272); and Corelle Brands (GHC) LLC (9722). The address of the debtors' corporate headquarters is 3025 Highland Parkway, Suite 700, Downers Grove, IL 60515.

and 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), authorizing the Committee to retain and employ Berkeley Research Group, LLC ("BRG") as its financial advisor, effective as of June 29, 2023. In support of this Application, the Committee submits the *Declaration of Christopher J. Kearns in Support of the Application for Entry of an Order Authorizing the Retention and Employment of Berkeley Research Group, LLC as Financial Advisor to the Official Committee of Unsecured Creditors Effective as of June 29, 2023* (the "Kearns Declaration"), which is attached hereto as **Exhibit B**, and which is incorporated herein by reference. In further support of this Application, the Committee respectfully represents as follows:

## JURISDICTION, VENUE, AND STATUTORY AND LEGAL PREDICATES

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.). The Committee confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 328(a), 330 and 1103(a), Bankruptcy Rules 2014 and 2016(a), and Local Rules 2014-1 and 2016-1.

**BACKGROUND**

3.  On June 12, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Cases"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Cases.

4.  These Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the Court's *Order Directing Joint Administration of Chapter 11 Cases* entered on June 13, 2023 [Docket No. 40].

5.  On June 27, 2023, (the "Formation Date"), the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the Committee [Docket No. 177]. The Committee is currently comprised of the following members: (i) Midea Electric Trading (Singapore) Co Pte Ltd; (ii) Pension Benefit Guaranty Corporation; (iii) United Steelworkers International Union; (iv) Topim Intelligent Manufacturing; (v) Criteo Corp.; (vi) Ravago Americas, LLC dba Muehlstein; and (vii) Brandon Thomas.

6.  On June 29, 2023, the Committee selected BRG to serve as its financial advisor. The Committee has also selected DLA Piper LLP ("Counsel") to serve as its legal counsel.

**RELIEF REQUESTED AND REASONS THEREFOR**

7.  By this Application, the Committee requests entry of the Proposed Order (i) authorizing the Committee to retain and employ BRG as its financial advisor effective as of June 29, 2023, pursuant to the terms set forth herein and (ii) granting related relief. The Debtors are a large, complex enterprise, and the Committee requires the services of an experienced financial advisor to enable the Committee to fulfill its fiduciary duties.

8.  The Committee determined that the services of BRG are necessary to enable the

Committee to assess and monitor the efforts of the Debtors and their professionals, to ensure that the Debtors are able to successfully reorganize (through a standalone reorganization and/or asset sale(s)), and to maximize the value of the Debtors' estates for the benefit of the unsecured creditors. Additionally, BRG is well-qualified and able to represent the Committee in a cost-effective, efficient and timely manner.

9. Immediately upon its selection, BRG commenced work on several time-sensitive matters and promptly devoted substantial resources to these Cases pending submission and approval of this Application. In order to allow BRG to be compensated for work performed prior to and after the submission of this Application, the Committee seeks to retain and employ BRG as its financial advisor effective as of June 29, 2023.

A.   **Qualifications of Professionals**

10. BRG has significant qualifications and experience in providing the services contemplated herein. BRG's Corporate Finance practice consists of senior financial, management consulting, accounting, and other professionals who specialize in, among other things, providing restructuring, transaction advisory, litigation support, solvency and valuation assistance and providing a focus on viable solutions that maximize value for companies and creditors, typically in distressed business settings. BRG has acted as financial advisor, crisis manager, and corporate officer in middle market to large multinational restructurings across a wide array of industries. Moreover, the BRG Corporate Finance professionals have assisted and advised debtors, independent boards, creditors, creditors' committees, bondholders, investors, and others in numerous bankruptcy cases, including: SVB Financial Group; Genesis Global Holdco, LLC; Sorrento Therapeutics, Inc.; Endo International, plc.; Brazos Electric Power Cooperative, Inc.; Centric Brands Inc.; Aralez Pharmaceuticals; Astria Health; Southern Foods Group, LLC (a.k.a

Dean Foods); Verity Health System of California; GNC Holdings, Inc.; The Hertz Corporation; Neiman Marcus Group Ltd LLC; Speedcast International Limited; FB Debt Financing Guarantor, LLC (a.k.a. Forma Brands, LLC); California Pizza Kitchen Inc.; General Wireless Operations, Inc (a.k.a RadioShack Inc.); Borden Dairy Company; Bumble Bee Foods; Molycorp, Inc.; Bouchard Transportation, Co., Inc.; Aluminum Shapes, L.L.C.; Nine West Holdings, Inc.; Fred's Inc.; Town Sports International, LLC; The McClatchy Company; Peabody Energy Corporation M & G USA Corporation; and Briggs & Stratton Corporation.[2]

11. The Committee chose BRG to act as its financial advisor in these Cases based in large part on the experience outlined above. The Committee believes that BRG's services are necessary to enable the Committee to assess and monitor the Debtors' restructuring efforts in furtherance of the Committee's obligations to protect the interests of and maximize value for all unsecured creditors. Moreover, based on the experience of BRG's professionals in large, complex chapter 11 cases, the Committee believes that BRG is well-qualified to provide such services in a cost-effective, efficient, and timely manner.

**B.   Services to be Rendered**

12. BRG will provide such financial advisory services to the Committee as the Committee deems appropriate and necessary in order to advise the Committee during the course of these Cases. The services to be rendered by BRG, which services may be subject to modification at the Committee's request, are necessary to enable the Committee to execute faithfully its statutory duties to the Debtors' unsecured creditors.

13. Subject to further order of this Court, the Committee has requested that BRG render financial advisory services with respect to the following areas:

---

[2] The professionals were employed in certain of these engagements prior to joining BRG.

a) Develop strategies to maximize recoveries from the Debtors' assets and advise and assist the Committee with such strategies, including development of recovery models for use by the unsecured creditors;

b) Monitor liquidity and cash flows throughout the Cases and scrutinize cash disbursements and capital requirements, including, but not limited to, critical vendor payments and other payments permitted pursuant to first day motions;

c) Develop and issue periodic monitoring reports to enable the Committee to evaluate effectively the Debtors' performance relative to projections and any relevant operational issues, including liquidity, any 363-sale processes, any sales of equity or debt securities / capital raise and subsequent wind-down activities on an ongoing basis;

d) Advise and assist the Committee in its analysis and monitoring of the historical, current and projected financial affairs of the Debtors, including, schedules of assets and liabilities, statement of financial affairs, and monthly operating reports;

e) Advise and assist the Committee with respect to any debtor-in-possession financing arrangements and/or use of cash collateral including evaluation of asserted liens thereon;

f) Analyze both historical and ongoing intercompany and/or related party transactions and or material unusual transactions of the Debtors and non-Debtor affiliates. Such analysis to include developing an oversight protocol with the Debtors' advisors to closely monitor such transactions to prevent value leakage;

g) Advise and assist the Committee in its assessment of the Debtors' employee needs and related costs, including any recent (including prepetition) employee bonuses or retention payments and any proposed employee bonuses such as any proposed Key Employee Incentive Plan or Key Employee Retention Plan for the Debtors' insiders and employees, and providing expert testimony related thereto;

h) Evaluate the Debtors' and non-Debtors' business plan/operational restructuring and product forecasts, including the impact of industry trends, customer programs, and their impact to actual and forecasted financial results as well as monitoring the implementation of related strategic initiatives;

i) Prepare valuations of the Debtors' assets, including the value of equity of any consolidated and/or publicly traded subsidiary;

j) Identify and develop strategies related to the Debtors' intellectual property;

ACTIVE\1601864849.1

k) Advise and assist the Committee in reviewing and evaluating any court motions (including any assumption or rejection motions or objections thereto), applications, or other forms of relief filed or to be filed by the Debtors, or any other parties-in-interest;

l) Advise and assist the Committee and Counsel in their review of any potential prepetition liens of secured parties;

m) Advise the Committee with respect to any potential preference payments, fraudulent conveyances, and other potential causes of action that the Debtors' estates may hold against insiders and/or third parties and assist with any investigations related to such matters as required;

n) Identify and assess the value of unencumbered assets;

o) As appropriate and in concert with the Committee's other professionals, analyze and monitor any sale processes and transactions and assess the reasonableness of the process and the consideration received;

p) Assist with the development and review of a cost/benefit analysis with respect to the assumption or rejection of various executory contracts and leases;

q) Monitor the Debtors' claims management process, including by analyzing guarantees and claims by entity, and preparing related summaries;

r) Review and provide analysis of any bankruptcy plan and disclosure statement relating to the Debtors including, if applicable, the development and analysis of any bankruptcy plans proposed by the Committee to assess their achievability;

s) Attend Committee meetings, court hearings, and auctions as may be required;

t) Work with the Debtors' tax advisors to ensure that any restructuring or sale transaction is structured to minimize tax liabilities to the estates as well as assist with the review of any tax issues associated with, for example, claims/stock trading, preservation of net operating losses, and refunds from any plan of reorganization and/or asset sales;

u) Work with the Debtors' financial advisor and investment banker on matters outlined above, as necessary;

      v)    Provide other services as may be requested from time to time by the Committee and its counsel, consistent with the role of a financial advisor, including rendering expert testimony, issuing expert reports and/or preparing for litigation, conducting valuation and/or forensic analyses that have not yet been identified but as may be requested from time to time by the Committee and its Counsel.

14.    In addition to services related to these areas, BRG understands that it may be requested to participate, at the Committee's request and to the extent appropriate, in meetings and discussions with the Committee, the Debtors, and the other parties-in-interest and with their respective professionals.

    **C.**    **No Duplication of Services**

15.    BRG intends to communicate regularly with the Committee and its Counsel to ensure that the actual financial advisory services performed are appropriate based on the status of these Cases and the needs of the Committee. BRG will coordinate all tasks with Counsel to achieve case efficiencies and avoid duplication of efforts. The Committee believes it is necessary to employ BRG as its financial advisor to render the foregoing professional services. In light of BRG's substantial experience and expertise and the complex nature of the Debtors' business and financial affairs, the Committee believes that BRG is well qualified to advise it in these Cases.

    **D.**    **Use of Contractors**

16.    Notwithstanding anything in this Application to the contrary, BRG shall, to the extent that, with prior consent of the Committee, it uses the services of independent contractors or subcontractors (the "Contractors") in these Cases, pass through the cost of Contractors to the Debtors at the same rate that BRG pays such Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks as required for BRG; and (iv) file with the Court such disclosures required by the Bankruptcy Code, Bankruptcy Rules, Local Rules, orders of the Court, and applicable law.

### E.     Indemnification and Limitation of Liability

17. The Committee understands that BRG's decision to accept this engagement is contingent upon its ability to be retained in accordance with the terms and conditions set forth below (the "Indemnity Provisions").

18. In connection with BRG's engagement to provide financial advisory services to the Committee, BRG seeks to be indemnified and held harmless by the Debtors against any and all losses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses and disbursements including, without limitation, defending any action, suit, proceedings or investigation (whether or not in connection with proceedings or litigation in which BRG is a party), directly or indirectly, caused by, relating to, based upon, arising out of or in connection with the engagement of BRG hereunder or any services rendered pursuant to such engagement or any claim, litigation, investigation or proceeding relating to the foregoing, whether based on contract, tort or any other theory, whether brought by a third party or by the Debtors or its affiliates, and regardless of whether BRG is a party thereto, unless there is a final non-appealable order of a court of competent jurisdiction finding BRG directly liable for bad faith, fraud, gross negligence or willful misconduct. The foregoing indemnification obligations of the Debtors shall survive any termination of this engagement. These indemnification provisions extend to the principals, employees, representatives, agents, independent contractors, counsel and affiliates of BRG. All requests for payment of indemnity provided herein shall be made by means of an application and review of the Bankruptcy Court in accordance with an order of the Bankruptcy Court approving the Committee's engagement of BRG. BRG acknowledges that neither the Committee nor any of its individual members shall have any liability hereunder for the indemnification in favor of BRG by the Debtors.

9

19. Except in the case of conduct by BRG or its agents found, in a final non-appealable order of a court of competent jurisdiction, to be gross negligence, willful misconduct, bad faith, and/or fraud, the Committee has agreed that the parties shall not be liable to each other for any consequential, incidental, special, or punitive damages, nor shall BRG be liable for direct compensatory damages in excess of the fees actually received by BRG for the performance of services hereunder. The terms of this paragraph shall survive the termination of this retention and such commitments shall extend upon the terms set forth in this paragraph to any controlling person, director, officer, employee, or affiliate of BRG.

20. The Committee has agreed that BRG shall not be liable for any delays resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

21. The Committee submits that the Indemnity Provisions outlined above, which include qualifications and limitations on the indemnifications and limitation on liability provisions that are customary in chapter 11 cases in Texas, as may be modified by Court order, are customary and reasonable terms of engagement for financial advisors for engagements of this type in cases in this and other districts and thus should be approved.

    F.    **<u>Disinterestedness of Professionals</u>**

22. To the best of the Committee's knowledge and based upon and subject to the disclosures made in the Kearns Declaration filed contemporaneously herewith, BRG (inclusive of its affiliates, subsidiaries, and parent entities) is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14) and the Committee is satisfied that: (i) BRG represents no interest adverse to the Committee, the Debtors, their estates, or any other party in interest in the

matters upon which it is to be engaged and that its employment is in the best interests of the estates; (ii) BRG, together with its Managing Directors and Directors, do not have any financial interests or business with the Debtors; (iii) BRG has no connection with the U.S. Trustee or any other person employed in the office of the U.S. Trustee; and (iv) BRG has no connection with the bankruptcy judge approving the employment of BRG as the Committee's financial advisor. BRG has not provided, and will not provide, any professional services to the Debtors, any other creditors, other parties in interest, or their respective attorneys and accountants with regard to any matter related to these Cases.

### G.  Professional Compensation

23.  BRG has advised the Committee that it intends to charge its standard hourly rates for professional services rendered plus reimbursement of actual and necessary expenses incurred by BRG. The professional fees shall be calculated by multiplying the hours worked by the hourly billing rates in effect for the specific personnel involved. The hourly rates charged by BRG for the services provided by its personnel differ based upon, among other things, each professional's level of experience, geographic differentials, and types of services being provided. In the ordinary course of business, BRG periodically revises its hourly rates to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business.

24.  BRG has advised the Committee that its fees will be commensurate with the fees charged to its other clients and in other cases of this size (provided such clients are billed hourly). BRG has also advised the Committee that it intends to make application to the Court for allowance of its compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the terms of any order

establishing procedures for interim compensation that may be entered in these Cases. BRG's compensation for services rendered on behalf of the Committee shall be fixed by the Court after due application.

25. For professional services, fees are usually based on BRG's standard hourly rates. The proposed rates of compensation, subject to final Court approval, are the customary hourly rates in effect when services are performed by the professionals and paraprofessionals who provide services to the Committee. The current standard hourly rates for BRG personnel that are expected to work on this engagement are as follows:[3]

| Position | Hourly Rate |
|---|---|
| Managing Directors | $1,050 - $1,250 |
| Associate Directors & Directors | $810 – 990 |
| Professional Staff | $395 - $795 |
| Support Staff | $175 - $350 |

26. These standard hourly rates are subject to periodic adjustment, which shall be noted on the invoices for the first time period in which the revised rates become effective. The standard hourly rates for the BRG experts anticipated to be assigned to this engagement are as follows: Christopher Kearns ($1,250), Mark Laber ($1,250), Will Russo ($1,050), and Michael Bohne ($900) (together with the assigned professional staff, the "BRG Personnel"). The Committee believes that those hourly rates are at or below those of national firms of similar stature to BRG.

27. To the extent BRG requires services of personnel from specialized practices or its international divisions, the standard hourly rates for that specialized practice or international

---

[3] The below ranges are for BRG professionals in the Corporate Finance practice group who may practice in bankruptcy and non-bankruptcy related matters. They exclude BRG professionals in other industry practice groups, such as healthcare, who may also provide specialized services in these Cases. To the extent such other professionals provide services, they will charge their standard hourly rates as they would in non-bankruptcy matters and in no event do their standard hourly rates exceed the ranges set forth below for the Corporate Finance practice group.

division will apply.

28. Consistent with BRG's policy with respect to its other clients, BRG will charge for all other services provided and for other charges and disbursements incurred in rendering services to the Committee. These customary items include, among other things, travel and lodging expenses, business meals, costs of reproduction, research, communications, BRG's legal counsel, any applicable sales or excise taxes and other direct expenses. Internal costs or overhead costs and document production services (including regular secretarial and word processing time) will not be charged for separately.

29. BRG will also request compensation for any time and expenses (including, without limitation, reasonable legal fees and expenses, except in the case of legal fees pertaining to any fee defense) that may be incurred in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings, including, without limitation, those other than the instant matter, as a result of BRG's performance of these services.

30. BRG acknowledges that neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to Counsel) shall be liable for the fees, expenses, or other amounts payable to BRG.

31. Regardless of the time and manner of interim compensation, BRG understands that, subject to this Court's orders, BRG will be required to follow the procedures for final allowance of fees at the end of the Cases.

32. No promises have been made or received by BRG, nor any employee thereof, as to payment or compensation in connection with these Cases other than in accordance with the provisions of the Bankruptcy Code. Except for internal agreements among the employees of BRG

regarding the sharing of revenue or compensation, neither BRG, nor any of its employees, has entered into an agreement or understanding to share compensation with any other entity as described in Bankruptcy Rule 2016.

## **NO PRIOR REQUEST**

33. No prior application has been made in this or any other court.

## **NOTICE**

34. Notice of this Application is being given to the following parties: (i) the Debtors; (ii) proposed counsel to the Debtors; (iii) the Office of the United States Trustee; (iv) those creditors holding the 30 largest unsecured claims against the Debtors' estates (on a consolidated basis); (v) the Securities and Exchange Commission; (vi) the Internal Revenue Service; (vii) the Office of the United States Attorney for the Southern District of Texas; (viii) the state attorneys general for states in which the Debtors conduct business; (ix) counsel to the agent under, and an ad hoc group of lenders of, the Debtors' prepetition term loan; (x) counsel to the administrative agent under the Debtors' prepetition asset-based lending facility; (xi) counsel to Cornell Capital; and (xii) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). In light of the nature of the relief requested, no other or further notice is required or needed under the circumstances.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Committee respectfully requests that the Court: (a) enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and (b) grant such other and further relief as the Court may deem just, proper and equitable.

Dated: July 28, 2023

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF INSTANT BRANDS ACQUISITION HOLDINGS, INC., *ET AL.*

By:  */s/ Cynthia M. Wong*
Name: Cynthia M. Wong
Pension Benefit Guaranty Corporation
Chairperson of the Official Committee of Unsecured Creditors solely in their capacity as Authorized Signatory, as a member of the Official Committee of Unsecured Creditors of Instant Brands Acquisition Holdings*, et al.,* and not in their individual capacity