UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| INSTANT BRANDS ACQUISITION HOLDINGS, INC.., *et al.,*[1] | Case No.: 23-90716 (MI) |
| Debtors. | (Jointly Administered) |

**ZHEJIANG TIANXI KITCHEN APPLIANCE CO., LTD.'S OBJECTION AND RESERVATION OF RIGHTS REGARDING DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING THE DISCLOSURE STATEMENT ON A CONDITIONAL BASIS, (B) APPROVING THE SOLICITATION AND TABULATION PROCEDURES, (C) APPROVING THE FORMS OF BALLOTS, SOLICITATION PACKAGE, AND NOTICES, (D) ESTABLISHING CERTAIN DATES AND DEADLINES IN CONNECTION WITH THE SOLICITATION AND CONFIRMATION OF THE PLAN, (E) SCHEDULING A COMBINED HEARING FOR FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN, AND (F) GRANTING RELATED RELIEF AND (II) APPROVING THE DISCLOSURE STATEMENT ON A FINAL BASIS**[2]

Zhejiang Tianxi Kitchen Appliance Co., Ltd, ("Tianxi"), by and through its undersigned counsel, hereby objects to Debtors' Motion seeking conditional approval of the *Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization of Instant Brands Acquisition Holdings Inc. and Its Debtor Affiliates* [Docket No. 845] (the "Disclosure Statement") [Docket No. 846], joins as applicable to objections not otherwise inconsistent herewith, and reserves rights as set forth more fully herein.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers or registration numbers in the applicable jurisdictions, are as follows: Instant Brands (Texas) Inc. (2526); Instant Brands Acquisition Holdings Inc. (9089); Instant Brands Acquisition Intermediate Holdings Inc. (3303); Instant Brands Holdings Inc. (3318); URS-1 (Charleroi) LLC (7347); Instant Brands LLC (0566); URS-2 (Corning) LLC (8085); Corelle Brands (Latin America) LLC (8862); EKCO Group, LLC (7167); EKCO Housewares, Inc. (0216); EKCO Manufacturing of Ohio, Inc. (7300); Corelle Brands (Canada) Inc. (5817); Instant Brands (Canada) Holding Inc. (4481); Instant Brands Inc. (8272); and Corelle Brands (GHC) LLC (9722). The address of the debtors' corporate headquarters is 3025 Highland Parkway, Suite 700, Downers Grove, IL 60515.

[2] Hereinafter referred to as "Debtors' Motion".

At the outset, Tianxi highlights to the Court that, subsequent to this Court's entry of its Sale Order approving the Appliances sale, Debtors made material modifications to the Sale Order's approved Master Assignment Agreement—which have yet to be filed in this Court or formally noticed to parties in interest—to, among other things, (albeit creatively) improperly attempt to retroactively allow the Debtors to retain contractual indemnification rights that were already assigned to the Buyer, in contravention of Section 365 of the Bankruptcy Code and Fifth Circuit precedent.  In turn, the currently proposed Plan also impermissibly seeks to assign Debtors' purportedly retained contractual indemnification rights to third party creditors—without contractually required consent to such assignment—and (again) in contravention of this Court's Sale Order and Fifth Circuit authority.  The Disclosure Statement, premised on contractual indemnification rights no longer held by the Debtors, is a house of cards that falls; it should not be conditionally approved.

Specifically, the Disclosure Statement misleads creditors by contending that "[a]ll of the Debtors' rights to indemnification by third parties … shall vest in the Reorganized Debtors on the Effective Date" (*Disclosure Statement* at X-G(2)).  In fact, Debtors already assigned to Buyer[3] all contractual indemnification rights[4] through assumption and assignment of executory contracts to Buyer under Section 365 of the Bankruptcy Code; Debtors have no contractual indemnification rights to assign (and certainly have no consent by Tianxi to do so as contractually required in any event).  *See In re Thornhill Bros. Fitness, L.L.C.*, 85 F. 4th 321 (5th Cir. 2023) ("a debtor assuming an executory contract cannot separate the wheat from the chaff … when a trustee relies on § 365(f) to assign an executory contract in bankruptcy, it must assign the contract in whole, not in part").  As discussed below, the Disclosure Statement should not be approved by the Court so long as it

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in Debtors' Disclosure Statement or the meanings ascribed to them in the Order (A) Approving the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing the Debtors to Enter into and Perform Their Obligations Under the Asset Purchase Agreements and Related Documents, (C) Authorizing the Assumption and Assignment of Certain Contracts and Leases, and (D) Granting Related Relief [Docket No. 636] (the "Sale Order").

[4] This includes, but is not limited to, all indemnification obligations as contained in Debtors' 2021 Supply Agreement between Instant Brands, Inc. and Tianxi (the "Supply Agreement"), which Debtors assumed and assigned to Appliances Buyer pursuant to the Sale Order.

contains any language inaccurately stating that any indemnification right arising from an assumed and assigned executory contract shall vest to the Reorganized Debtors, as such language misleads creditors in contravention of Section 1125 of the Bankruptcy Code.

## BACKGROUND

1. On June 12, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors claim to remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11Cases* [Docket No. 40] entered by the Court on June 13, 2023 in each of the Chapter 11 Cases.

3. On October 3, 2023, the Court entered the Sale Order approving the sales of substantially all of the Debtors' assets.

4. The Sale Order included as Exhibit B thereto the Asset Purchase Agreement dated as of September 27, 2023 by and among Instant Bands Acquisition Holdings Inc., IB Appliances US Holdings, LLC, and IB Appliances Canada Holdings, Inc. (the "Appliances APA"). The Appliances APA attached as Exhibit B thereto a "Form of Master Assignment" (the "Form of Master Assignment").

5. *After* entry of the Sale Order—and without notice to this Court or any party in interest and in contravention of this Court's Sale order—Debtors materially amended the Form of Master Assignment (the "Amended Form of Master Assignment") to purport to permit the Debtors to retain contractual indemnification rights from executory contracts that had been assumed and assigned pursuant to the Sale Order and Section 365 of the Bankruptcy Code. To date, the

Amended Form of Master Assignment has not been filed with this Court nor formally noticed to parties in interest.[5]

## ARGUMENT

### A. THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION ABOUT THE INDEMNIFICATION RIGHTS TRANSFERRED TO BUYER PURSUANT TO THE SALE ORDER

6. A disclosure statement must contain "adequate information," that is sufficient for claimants or those with interests in the debtor "to make an informed judgment about the plan." 11 U.S.C. §§ 1125(a)(1) and (b). As Debtors state in Debtors' Motion, this Circuit has articulated this requirement by holding that a disclosure statement must contain "'adequate information' about the assets, liabilities, and financial affairs of the debtor sufficient to enable creditors to make an 'informed judgment' about the plan." *See* Debtors' Motion, ¶ 17 (citing *In re Woerner*, 783 F.3d 266, 271 (5th Cir. 2015)).

7. Disclosure statements "which are misleading, or which contain unexplained inconsistencies, should not be approved." *See, e.g., In re Applegate Property, Ltd.*, 133 B.R. 827, 829 (Bankr. W.D. Tex. 1991); *see also In re Placid Oil Co.*, 92 B.R. 183, 187 (Bankr. N.D. Tex. 1988) (holding that Disclosure Statement meets requirements of Section 1125 of the Bankruptcy Code because "the Proponents have filed the Disclosure Statement in good faith with reasonable care and diligence, *and have not knowingly or negligently included in such Disclosure Statement any materially misleading or erroneous statements or representations*.") (emphasis added). Debtors that do not revise misleading or inconsistent disclosure statements can be subject

---

[5] The Amended Form of Master Agreement has not been filed with this Court, and was first provided to Tianxi in a "professional eyes only" capacity on January 5, 2024. Tianxi understands that the Amended Form of Master Agreement exists in *both* redacted and unredacted form, and that such amendment materially alters the form Master Agreement approved by this Court in its Sale Order.

4

to "de jure" denial of plan confirmation and inapplicability of the Bankruptcy Code's Section 1125(e)'s "safe harbor" provision that typically protects Debtors and their professionals from liability during plan solicitation. *See In re Applegate*, 133 B.R. at 827 (warning Debtor that "absent some modification to the Disclosure Statement", Debtor faces *de jure* denial of plan confirmation); *see also in re ReoStar Energy Corp.*, 2012 Bankr. LEXIS 2418, at *4-6 (Bankr. N.D. Tex. May 30, 2012) (ordering revisions to Disclosure Statement in response to party allegation that Disclosure Statement contained inaccurate or incomplete information, and further noting that Bankruptcy Code Section 1125(e) safe harbor provision does <u>not</u> protect Debtors or their professionals who knowingly withhold information from disclosure statement that falls within definition of "adequate information").

8. Here, the Disclosure Statement misleads creditors and parties in interest by stating that the Debtors have somehow retained all contractual indemnification rights under executory contracts assigned to Buyer pursuant to the Sale Order, including, but not limited to, the Supply Agreement, in direct odds with *Thornhill*. *See Disclosure Statement* at X-G(2)); *see also in re Thornhill*, 85 F. 4th at 323 ("the question presented is whether 11 U.S.C. § 365(f), or any other portion of Title 11, authorizes a bankruptcy court's approval of a debtor's partial assignment of an executory contract. It does not.").

9. In *Thornhill*, the Fifth Circuit Court of Appeals makes clear that a debtor must assign the *entirety* of an executory contract to a third party if debtor chooses to assign the contract. "If a debtor could strategically divide up its executory contracts via partial § 365(f) assignments, then the debtor could both change the nature of the contracts' obligations and evade our requirement that it take any retained executory contracts "cum onere," with all their benefits and burdens." *Id.* at 326; *see also Helix Elec. of Nev. v. Apco Constr.*, 2023 Nev. Unpub. LEXIS 238

5

at *8 (Nev. Apr. 17, 2023) (noting in general commercial contracting context that "[f]ollowing an assignment of a contract the assignee stands in the shoes of the assignor and the assignor retains no rights to enforce the contract at all.") (citing 6A C.J.S. *Assignments* § 105); *Price v. RLI Ins. Co.,* 914 So. 2d 1010, 1013-1014 (Fla. Dist. Ct. App. 2005) ("Because an assignment vests in the assignee the right to enforce the contract, an assignor retains no rights to enforce the contract after it has been assigned"); *Semente v. Empire Healthchoice Assur., Inc.*, 523 F. Supp. 3d 269, 277 (E.D.N.Y. 2021) (holding that an assignment of contractual benefits inherently assigns the litigation rights arising from those benefits). Because Debtors assigned various executory contracts (including the Supply Agreement) to Buyer pursuant to the Sale Order, the Buyer exclusively holds all indemnification rights arising from those contracts. Any statement contained in Debtors' Disclosure Statement to the contrary is inaccurate, materially misleading, and inappropriate for this Court's approval.

10. Even if this Court were to hold that Debtors currently hold contractual indemnification rights stemming from the Supply Agreement (which Tianxi disputes) despite Debtors' assignment of the Supply Agreement and in direct contravention of *Thornhill*, the currently proposed Plan improperly seeks to assign such indemnification rights to all holders of product liability claims in direct violation of the Supply Agreement's anti-assignment provision, which requires consent for a contractual party to assign any of its rights or obligations deriving therefrom. *See* Disclosure Statement at I-A(226), VII-L (permitting "[a]ll Holders of Product Liability Claims … to pursue their Claims against Insurers and Third-Party Indemnitors under all available and applicable Insurance Contracts and Third-Party Indemnifications", and further defining "Third-Party Indemnification" as "all rights of indemnification on account of or relating to any Product Liability Claims" deriving from "all agreements"). Tianxi has not provided such

consent.  Therefore, the Plan's proposed effective assignment of the Supply Agreement's indemnification rights is prohibited by the Supply Agreement's anti-assignment provision. *See Semente*, 523 F. Supp. at 279 (anti-assignment provisions need only prohibit assignments of "benefits generally", and need not "explicitly include a preclusion against assigning causes of action" to prohibit such assignments).

11. In view of the foregoing, the Disclosure Statement should not be conditionally approved.  At minimum, the Disclosure Statement must be revised to accurately advise parties in interest that contractual indemnification rights under executory contracts assumed and assigned to the Buyer do *not* constitute rights of the Debtors and cannot be assigned to creditors.

### B. JOINDER ON OTHER OBJECTIONS TO DISCLOSURE STATEMENT AND RELATED RESERVATION OF RIGHTS

12. Tianxi reserves all of its rights to raise any objections to the Disclosure Statement or to the confirmation of the Debtors' proposed Chapter 11 Plan of Reorganization. Tianxi also joins in the objections to and reservation of rights concerning the Disclosure Statement not inconsistent herewith.

### CONCLUSION

WHEREFORE, for the foregoing reasons, Tianxi respectfully requests that the Court deny Debtors' Motion and grant such other and further relief as the Court deems just and proper.

Dated: January 6, 2024                  VORYS, SATER, SEYMOUR AND PEASE LLP

*/s/ Steven R. Rech*
Steven R. Rech, Esq. (TX Bar. No. 16649200)
909 Fannin Street, Suite 2700
Houston, TX 77010
Telephone: (713) 588-7000
E-mail: srech@vorys.com

*-and-*

Tiffany Strelow Cobb (*admitted pro hac vice*)
Thomas J. Loeb *(pro hac vice to be filed)*
52 East Gay Street
Columbus, OH 43215
Telephone: (614) 464-6400
e-mail: tscobb@vorys.com
        tjloeb@vorys.com

*-and-*

Kari B. Coniglio *(pro hac vice to be filed)*
200 Public Square, Suite 1400
Cleveland, OH 44114
Telephone: (216) 479-6100
e-mail: kbconiglio@vorys.com

*Counsel for Zhejiang Tianxi Kitchen Appliance Co., LTD*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2024, the foregoing document was e-filed and served on all counsel of record via the CM/ECF system for the United States Bankruptcy Court for the Southern District of Texas.

>*/s/ Steven R. Rech*
>Steven R. Rech