IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INSTANT BRANDS ACQUISITION HOLDINGS INC., | ) ) | Case No. 23-90716 (MI) |
| *et al.*,[1] | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) ) | RE: Docket Nos. 845 & 846 |

**MIDEA'S (I) PRELIMINARY OBJECTION
AND RESERVATION OF RIGHTS TO COMBINED DISCLOSURE
STATEMENT AND JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF INSTANT BRANDS ACQUISITION HOLDINGS INC. AND ITS DEBTOR
AFFILIATES; AND (II) OBJECTION TO DEBTORS' EMERGENCY MOTION
FOR ENTRY OF ORDERS (i)(A) APPROVING THE DISCLOSURE STATEMENT
ON A CONDITIONAL BASIS, (B) APPROVING THE SOLICITATION AND
TABULATION PROCEDURES, (C) APPROVING THE FORMS OF BALLOTS,
SOLICITATION PACKAGE, AND NOTICES, (D) ESTABLISHING CERTAIN
DATES AND DEADLINES IN CONNECTION WITH THE SOLICITATION
AND CONFIRMATION OF THE PLAN, (E) SCHEDULING A COMBINED
HEARING FOR FINAL APPROVAL OF THE DISCLOSURE STATEMENT
AND CONFIRMATION OF THE PLAN, AND (F) GRANTING RELATED RELIEF
AND (ii) APPROVING THE DISCLOSURE STATEMENT ON A FINAL BASIS**

GuangDong Midea Consumer Electric Manufacturing Company Limited; FoShan ShunDe Midea Electrical Heating Appliances Manufacturing Company Limited; Midea Electric Trading (Singapore) Co. Pte Ltd.) (collectively, "Midea"), by and through its undersigned counsel, hereby files this (I) Preliminary Objection and Reservation of Rights to the *Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization of Instant Brands Acquisition*

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers or registration numbers in the applicable jurisdictions, are as follows: Instant Brands (Texas) Inc. (2526); Instant Brands Acquisition Holdings Inc. (9089); Instant Brands Acquisition Intermediate Holdings Inc. (3303); Instant Brands Holdings Inc. (3318); URS-1 (Charleroi) LLC (7347); Instant Brands LLC (0566); URS-2 (Corning) LLC (8085); Corelle Brands (Latin America) LLC (8862); EKCO Group, LLC (7167); EKCO Housewares, Inc. (0216); EKCO Manufacturing of Ohio, Inc. (7300); Corelle Brands (Canada) Inc. (5817); Instant Brands (Canada) Holding Inc. (4481); Instant Brands Inc. (8272); and Corelle Brands (GHC) LLC (9722). The address of the debtors' corporate headquarters is 3025 Highland Parkway, Suite 700, Downers Grove, IL 60515.

*Holdings Inc. and Its Debtor Affiliates* [Docket No. 845] (the "Combined DS and Plan," the "Disclosure Statement," or the "Plan," as applicable);[2] and (II) Objection to the *Debtors' Emergency Motion for Entry of Orders (I)(A) Approving the Disclosure Statement on a Conditional Basis, (B) Approving the Solicitation and Tabulation Procedures, (C) Approving the Forms of Ballots, Solicitation Package, and Notices, (D) Establishing Certain Dates and Deadlines in Connection with the Solicitation Package, and Notices, (D) Establishing Certain Dates and Deadlines In Connection with the Solicitation and Confirmation of the Plan, (E) Scheduling a Combined Hearing for Final Approval of the Disclosure Statement and Confirmation of the Plan, and (F) Granting Related Relief and (II) Approving the Disclosure Statement on a Final Basis* [Docket No. 846] (the "Solicitation Procedures Motion"), and in support thereof respectfully states as follows:

## PRELIMINARY STATEMENT

1.  Midea is counterparty to an executory contract that was assumed and assigned by the Debtors pursuant to the Sale Order. Midea recently learned of a confidential arrangement[3] reached after entry of the Sale Order that improperly attempts to retroactively modify the Court authorized contract assignment from a full assignment (as required by the Sale Order and Fifth Circuit precedent) into a partial assignment.

2.  The improper partial assignment is evidenced in a document that was originally provided to Midea in redacted form. On December 28, 2023, the confidential terms were disclosed to Midea. The previously undisclosed provisions authorize sharing of indemnification

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Combined DS and Plan.

[3] See infra. paragraphs 18 and 19, the "Master Assignment 2.0". In addition to filing a seal motion, Midea reserves its right to seek declaratory relief for a determination that Master Assignment 2.0 is void and unenforceable.

rights that had been assigned to the Buyer upon entry of the Sale Order. Midea is prohibited from publishing those offensive terms.

3. The purpose of this unauthorized sharing arrangement is to recapture indemnification rights that were assigned under the Sale Order and transferred under the Appliances APA (*See* Section 2.01(b)) to Appliances Buyer. The Debtors' unauthorized and impermissible recapture of partial indemnification rights is the cornerstone of intricate Plan provisions designed to mimic a channeling injunction. In exchange for votes in favor of the Plan, the Debtors promise that general unsecured litigation claimants will recover their alleged economic damages directly from Midea, and other foreign vendors or suppliers like Midea.

4. The promise to litigation claimants is also illusory because the alleged assignment of indemnification rights to litigation claimants contemplated under the Plan is contrary to the terms of the Bankruptcy Code, Fifth Circuit precedent[4], the Bankruptcy Court's Sale Order, and the provisions of the Appliances APA, and materially inconsistent with the Form MAA that this Court approved and Midea (and the public) was given notice of. All such indemnification rights have already been assigned and transferred by the Debtors to the Appliances Buyer.

5. The Debtors propose to now obtain the Court's approval of this improper reshuffling of rights as a central feature of the Debtors' Plan following a rushed 31-day solicitation and confirmation process. In light of the Debtors' aggressive proposed confirmation timeline, Midea files this (i) preliminary objection to the Combined DS and Plan and reservation of rights, and (ii) objection to the Solicitation Procedures Motion ("<u>Midea's Preliminary Objection</u>").

---

[4] In re: *Matter of Thornhill Brothers Fitness, L.L.C.*, a decision rendered on October 27, 2023, by the United States Court of Appeals for the Fifth Circuit holds that executory contracts must be assumed and assigned in their entirety. This decision was issued before the Appliances sale closed and prior to the effective date of the undisclosed partial assignment agreement, referred to herein as Master Assignment 2.0.

6.  The Plan as drafted is patently unconfirmable under Section 1129 of the Bankruptcy Code[5] and must be modified to clarify that the Debtors retain no indemnity rights against Midea, and thus omit any provisions purporting to grant third parties the ability to assert such rights pursuant to the Plan.

7.  The Disclosure Statement lacks sufficient information and disclosures as required by Section 1125 regarding the source of any alleged indemnification rights and how (if at all) third parties may assert them.

8.  Contrary to paragraph 46 of the Emergency Motion, an expeditious process will neither promote judicial economy nor reduce costs because the Disclosure Statement lacks adequate information and is patently non-confirmable. The Debtors' request for a 35-day solicitation process is inappropriate under the circumstances and should be elongated to provide adequate notice to affected parties and more time for briefing than the 31-day period the Debtors imprudently ask this Court to approve.

9.  Midea requests that the Court expand the proposed solicitation and confirmation timeline by an additional 35 days for objections, briefing and other steps that may be necessary.

## RELEVANT BACKGROUND

10.  Midea is party to that certain pre-petition Supply Agreement dated as of July 28, 2016 by and between Midea and Double Insight Inc. (the "Supply Agreement"). The Supply Agreement was assigned by Double Insight Inc. (now known as Instant Brands Inc.) to Instant Brands LLC (formerly known as Corelle Brands LLC) as of January 2, 2022.

11.  On June 12, 2023, the Debtors (including Instant Brands LLC) filed their voluntary petitions and commenced the Chapter 11 Cases.

---

[5] Unless otherwise indicated, all section references are to the Bankruptcy Code.

12. On June 30, 2023, the Debtors filed their *Emergency Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Authorizing Potential Selection of Stalking Horse Bidder(s), (C) Approving Bid Protections, (D) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (E) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (F) Approving Assumption and Assignment Procedures, (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 199].

13. On August 31, 2023, the Debtors filed their Assumption Notice, which provided notice to executory contract counterparties of the Debtors' intent to assume and assign their contracts in connection with their Sale Transactions. The Supply Agreement was listed on Exhibit 1 to the Assumption Notice, indicating the Debtors' intent to assume and assign the Supply Agreement as a "Proposed Assumed Appliances Contract" (as defined in the Sale Order) in connection with the Sale Transactions. No Proposed Cure Cost was ascribed to the Supply Agreement in the Assumption Notice, as the parties had previously agreed to payment through the critical vendor program.

14. On October 3, 2023, the Bankruptcy Court entered the Sale Order, which approved the Sale Transactions. Attached to the Sale Order at Exhibit B was the Appliances APA, and attached to the Appliances APA as Exhibit B was a Form of Master Assignment, Bill of Sale, Deed, and Conveyance (the "Form MAA"). A copy of the Form MAA is attached hereto as **Exhibit A**.

15. Paragraph 29 of the Sale Order provided that "[t]he Debtors are hereby authorized and . . . are directed . . . to (a) assume and assign . . . (ii) to the Appliances Buyer, effective upon

5

the payment of the Appliances Cure Costs and the closing of the Appliances Sale or any later applicable effective date, the Proposed Assumed Appliances Contracts . . . ."

16.     Section 2.01(b)(ix) of the Appliances APA provided that "Assets" sold included "…all rights of indemnity, rights of contribution, rights to refunds, rights of reimbursement and other rights of recovery,…..possessed by any Selling Entity (regardless of whether such rights are currently exercisable) associated with the Assets. . . ."

17.     Section 2.01(b)(xi) of the Appliances APA provided that "Assets" sold also included "all warranty or indemnity claims that may be made against any Person, other than Seller or any Affiliate thereof, under any Assigned Contract, in each case, Related to the Business, or any products or services provided in connection therewith."

18.     According to Article IV.E of the Combined DS and Plan, the Appliances Sale Transaction closed on November 8, 2023.

19.     On November 27, 2023, Midea was for the first time provided with a revised and partially **redacted** Master Assignment, Bill of Sale, Deed, and Conveyance dated as of November 8, 2023 (the "Master Assignment 2.0").  A copy of the **redacted version** of Master Assignment 2.0 as it was first provided to Midea by the Debtors is attached hereto as **Exhibit B**.  The redactions in this version of Master Assignment 2.0 were not made by Midea, nor is Midea party to the Master Assignment 2.0, nor has Midea agreed to any confidentiality agreements or provisions regarding Master Assignment 2.0.  Master Assignment 2.0 included the following language that did not appear in the Form MAA (*See* supra. paragraph 11, the version that was filed publicly on the docket).  (Note in the interest of saving space, the darkened redacted areas **do not** accurately reflect the actual number of words or lines that were redacted by the Debtors when the document was provided to Midea.):

6

Notwithstanding anything to the contrary in this Agreement or the Purchase Agreement, solely with respect to those supply or manufacturing agreements described on Exhibit A hereto (each a "Supply Agreement" and collectively, the "Supply Agreements"), such assignment shall not apply with respect to the Selling Entities' rights, claims and causes of action under each Supply Agreement based on facts and circumstances arising, or the extent attributable to any Excluded Liabilities, ████████████████████ (each, "Retained Supply Agreement Claim"), ████████████████████ The Selling Entities acknowledge that, as a result of the assignment of the Supply Agreements hereunder, from and after the Closing, Buyer will be the contracting party under the Supply Agreements, and as such, the Selling Entities agree prior to making any Retained Supply Agreement Claim to consult in good faith with Buyer and consider Buyer's views in good faith, and to the extent feasible and commercially practicable, reasonably cooperate with Buyer to minimize any disruption to the Business as a result of any such Retained Supply Agreement Claim. In addition, should the Selling Entities make any Retained Supply Agreement Claim, the Selling Entities shall keep Buyer reasonably informed on a periodic basis of the status of such claim, including at Buyer's request, having periodic update calls on such matters, and the Selling Entities shall reasonably consider any suggestions made by Buyer in good faith. For the avoidance of doubt, the Retained Supply Agreement Claims shall be deemed to be Excluded Assets for all purposes under the Purchase Agreement and this Agreement, and Buyer shall reasonably cooperate with the Selling Entities, at the Selling Entities' sole cost and expense, in exercising and enforcing any Retained Supply Agreement Claim, including, to the extent applicable, by using commercially reasonable efforts to exercise and enforce such Retained Supply Agreement Claim on behalf of, for the benefit of and at the direction of the Selling Entities.

20. On December 28, 2023, counsel to Midea was provided with an unredacted copy of the Master Assignment 2.0. While Debtors' counsel declined to permit Midea to attach the unredacted version of Master Assignment 2.0 to this Preliminary Objection, the redacted

7

language makes clear that claims against Midea under the Supply Agreement are intended to be "Retained Supply Agreement Claims" retained by the Debtors.[6]

21. On December 29, 2023, the Debtors filed a Joint Status Report at Docket No. 103 in Case No. 21-00754 pending in the United States District Court for the Western District of Pennsylvania, a case brought by a products liability plaintiff against certain of the Debtors alleging injuries caused by products sold by the Debtors. The Joint Status Report described the Combined DS and Plan, saying:

> The proposed plan, among other things, provides that holders of product liability claims, including Plaintiffs in this matter, may resume their litigation against insurers and third-party indemnitors of the Debtors following the Plan Effective Date. . . . Thus, the Parties expect that litigation may resume against the Debtors (solely to allow Plaintiffs to pursue recoveries against insurers and third-party indemnitors), insurers and third-party indemnitors in this matter after February 25, 2024."

A copy of the Joint Status Report is attached hereto as **Exhibit C**.

## PRELIMINARY OBJECTION

### a. The Plan Violates the Bankruptcy Code and Cannot be Confirmed

22. The Plan is patently unconfirmable in light of *Matter of Thornhill Brothers Fitness, L.L.C.*, 85 F.4th 321 (5th Cir. 2023). The *Thornhill Bros.* case held that "when a [debtor] relies on § 365(f) to assign an executory contract in bankruptcy, it must assign the contract in whole, not in part." *Id*. at 326. Pursuant to the Sale Order, the Supply Agreement (and any indemnification rights from Midea pursuant thereto) was assigned to the Appliances Buyer. Any language in the Master Assignment 2.0 purporting to carve out, recapture, partially

---

[6] Midea will move to file the unredacted Master Assignment 2.0 with the Court under seal if the Court so requests. However, if doing so would mean that the Court cannot review the unredacted copy prior to the hearing scheduled on conditional approval for January 8, then that hearing should not go forward as scheduled or should instead be a treated only as a status conference. Midea reiterates that it did not redact the Master Assignment 2.0, and the version attached hereto contained the redactions as they appear therein when it was sent to Midea.

assign, or reserve indemnity rights to the Debtors is contrary to *Thornhill Bros.*, which requires assignment of a contract *in toto*.

23.  The *Thornhill Bros*. decision involved a debtor who attempted to assume and assign only the indemnity portions of a franchise agreement to a tort plaintiff as part of a settlement, while leaving the remainder of the franchise agreement with the debtor to either be rejected or sold elsewhere.  *Id*. at 324, 327.  The underlying bankruptcy court decision allowed this arrangement on the basis that the settlement only purported to assign whatever rights the debtor had, if any—if the debtor's indemnity rights couldn't be transferred, the bankruptcy court found that to just be a risk borne by the parties through the agreement.  *Id.* at 327.  The United States Court of Appeals for the Fifth Circuit reversed, saying that "[t]he job of discerning what if anything can be assigned under § 365(f) decidedly belongs to the bankruptcy judge . . . . The bankruptcy court applied § 365(f) to authorize something the Code forbids—the partial assignment of an executory contract."  *Id.*

24.  Article VII.L of the Plan provides that "Holders of Products Liability Claims will be permitted to pursue their Claims against Insurers and Third-Party Indemnitors under all available and applicable Insurance Contracts and Third-Party Indemnifications, respectively."  As outlined in the Joint Status Report, the Debtors clearly intend to have products liability claimants substitute alleged indemnifying parties for Debtor defendants in their several products liability suits, even though products liability plaintiffs typically allege claims in tort rather than contract, and even though the alleged indemnifying parties may have defenses conferred by contract that supersede any purported right to pursue indemnity against them.  In other words, the Debtors appear to believe that they can negotiate a better contract for themselves through their bankruptcy than the one they originally signed outside of it.

25. Pursuant to the Sale Order, the Supply Agreement was assumed and assigned to the Appliances Buyer. Under Section 365 and the *Thornhill Bros.* decision, the Supply Agreement was necessarily assigned in whole, with no portion or provision being carved out and left behind for the Debtors to subsequently assert and/or assign themselves. *See, e.g.*, *In re Old CarCo LLC*, 529 B.R. 42 (Bankr. S.D.N.Y. 2015) (supply agreements assumed and assigned as part of a sale under Section 365 were assigned in whole, meaning that debtors could not carve out and subsequently assign indemnity rights or claims against supply agreement manufacturers to third party tort plaintiffs); *Verde v. Stoneridge, Inc.*, 14-cv-225, 2016 WL 749389 (E.D. Tex. Jan. 26, 2016) (same).

26. The Debtors no longer have any indemnity rights or claims under the Supply Agreement, notwithstanding the language of Master Assignment 2.0 (which was never filed publicly and was only provided to Midea months after entry of the Sale Order and nearly a month after the closing of the Appliances Sale). The provisions of the Plan purporting to allow assertion of any indemnity rights or claims by third parties are therefore ineffective and contrary to the Bankruptcy Code, which requires that *all* indemnity rights and claims under the Supply Agreement be assigned when the Supply Agreement was assigned to Appliances Buyer. Section 1129(a) provides that a plan of reorganization may only be confirmed if "the plan complies with the applicable provisions of the [Bankruptcy Code]." The Plan here does not comply with Section 365, as outlined in the *Thornhill Bros.* decision, because it relies upon rights that the Debtors no longer possess. Accordingly, the Plan cannot be confirmed unless its language is amended to clarify that nothing therein grants any party any right to assert any indemnity rights or claims under any agreement previously assumed and assigned by the Debtors, including the Supply Agreement.

27. The Plan is patently unconfirmable and there is no basis on which to solicit it as drafted. *See In re American Capital Equipment, LLC*, 688 F.3d 145 (3d Cir. 2012) (holding that a court could deny confirmation of a plan when considering approval of a disclosure statement if the plan was patently unconfirmable). The Court should therefore deny conditional approval of the Combined DS and Plan.[7]

28. However, if solicitation of the Combined DS and Plan is authorized, then (i) substantial revisions to the Disclosure Statement are needed and (ii) an enlargement of the confirmation timeline so these issues can be litigated on a fair timeline.

### b. The Disclosure Statement Does Not Provide Adequate Information

29. The Disclosure Statement does not provide adequate information as required under Section 1125, and therefore conditional approval should be denied on that basis as well. The omission of the material terms of any alleged assignment of indemnity rights to third party plaintiffs, and the cloak-and-dagger circumstances thereof, renders the Disclosure Statement materially incomplete.

30. A disclosure statement must provide information "adequate to enable a reasonable creditor to make an informed decision about the Plan." *In re Divine Ripe, LLC*, 554 B.R. 395, 401 (Bankr. S.D. Tex. 2016) (quoting *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988). When a plan provides inadequate information about terms on which it relies, it does not meet the standard of "adequate information." *See Divine Ripe*, 554 B.R. at 405 (denying approval of disclosure statement because "the Disclosure Statement squarely pins the success of Debtor's bankruptcy upon the shoulders of Jimenez. Thus, there is a certain responsibility

---

[7] It is an expensive gamble to solicit a combined disclosure statement and plan with such basic legal deficiencies. Nonetheless, if these documents are solicited and objections preserved for the confirmation hearing, the cost, risks and delay of re-solicitation may be substantial, a decision Debtors and the Committee appear committed to pursuing notwithstanding discussions leading up to this filing.

placed on the Debtor's shoulders to disclose sufficiently adequate information about Jimenez in the Disclosure Statement so that creditors can make an informed judgment about the plan.").

31. The success of the Plan clearly relies on the success of the Debtors' gambit with its alleged indemnification rights. The liabilities associated with any pre-closing products liability claims were left with the Debtors through the Appliances Sale and not assumed by the Appliances Buyer. This may fundamentally change claims reserve requirements for general unsecured claims.

32. Despite the importance of these provisions to the Plan's success, the Disclosure Statement provides no information about the alleged mechanism allowing for any claimant's assertion of Debtor indemnity rights or claims against third parties. It simply relies upon the *ipse dixit* of saying that they will be permitted to. In light of Midea's objection, the Disclosure Statement must also now inform creditors of Midea's arguments, the Debtors basis for disputing Midea's arguments, and the impact on feasibility.

33. The Disclosure Statement must similarly include the circumstances of the Form MAA and the change to the Master Assignment 2.0, including the fact that these changes were made after entry of the Sale Order, with no public disclosure, and were not provided to Midea until well after the sale closing. The timeline and circumstances of the changes from the Form MAA to the Master Assignment 2.0 strongly imply that these changes were meant to be clandestine and pushed through with as little resistance as possible, before affected parties would have had notice, an opportunity to examine them, and could possibly object. Just as with the legal portion, a reasonable creditor would wish to be apprised of the factual circumstances surrounding the alleged effectuation of a central plan provision—especially when those

circumstances may call into question the propriety and enforceability of that provision, such as here.

34. The Disclosure Statement must be amended to include information outlining the Debtors' *sub rosa* revisions to their sale documents, what indemnity claims the Debtors believe third parties specifically can assert, against whom, the quantum of claims that could be asserted for indemnification, authority for the arrangement, and language clarifying Midea's position that any such assertion of indemnity claims against Midea is contrary to the Bankruptcy Code and applicable law and renders the Plan unconfirmable.[8]

35. Accordingly, the Solicitation Procedures Motion and conditional approval of the Disclosure Statement must be denied unless and until the Debtors revise the Combined DS and Plan to provide the information outlined above about the legal and factual bases for any assertion of alleged indemnity claims by plaintiffs against third party indemnitors through the Plan.

36. However, even if conditional approval and solicitation is authorized, an appropriate briefing and discovery timeline with respect to Midea's objections is needed instead of the 31-day period proposed by the Debtors.

### c. If the Court Will Not Deny Conditional Approval of the Disclosure Statement, It Should Set an Appropriate Briefing Schedule for Midea's Objection

37. It is essential the Court permit Midea with sufficient time to respond to the Plan and its numerous extraordinary and unwarranted terms. Midea requests that the Court deny the timeline contemplated by the Solicitation Procedures Motion and instead set an appropriate briefing schedule on Midea's objection.

---

[8] The Debtors, Committee and Midea have had preliminary discussions about adding language to the Disclosure Statement concerning these issues. Inclusion of language in the Disclosure Statement evidencing reservation of these issues must itself be accurate and evidence a good faith legal basis.

38. The Debtors' current schedule contemplates objections to the Combined DS and Plan being filed on or before February 8, 2024, with a proposed combined hearing on final approval and confirmation on February 15, 2024. Given that the Debtors filed the Combined DS and Plan on December 22, 2023, in the midst of the holiday season, and intend only a 31-day solicitation period, this timeline is plainly inadequate for fully briefing and resolving the legal issues raised by Midea with respect to the Disclosure Statement and confirmation of the Plan. Instead, the Court must adjourn the Debtors' proposed confirmation objection and hearing dates and set a briefing schedule on Midea's objection to allow both Midea and the Debtors time to fully set forth their positions and respond to each others' papers in advance of any hearing.

39. Midea would ask that the Court enlarge the period by approximately 35 additional days beyond what has been requested by the Debtors. Thus, a confirmation and solicitation timeline that schedules a confirmation hearing 70 days or no earlier than March 18, 2024 with adequate time for discovery, as set forth below:

| EVENT | DEBTORS' PROPOSED DATE | MIDEA'S PROPOSED DATE |
|---|---|---|
| Serve Initial Written Document Discovery Demands | | 4:00 p.m. (prevailing Central Time) on January 12, 2024 |
| Initial Document Production Deadline | | 4:00 p.m. (prevailing Central Time) on January 22, 2024 |
| Combined DS and Plan Objection Deadline | 4:00 p.m. (prevailing Central Time) on February 8, 2024 | 4:00 p.m. (prevailing Central Time) on February 8, 2024 |
| Deadline to Respond to Combined DS and Plan Objections | | 4:00 p.m. (prevailing Central Time) on February 29, 2024 |
| Rule 3018 Motions Deadline | 4:00 p.m. (prevailing Central Time) on the later of (a) January 22, 2024 and (b) if such Rule 3018 Motion relates to a Disputed Claim, the fifth day after such Claim became a Disputed Claim (each as defined in the | 4:00 p.m. (prevailing Central Time) on the later of (a) February 26, 2024 and (b) if such Rule 3018 Motion relates to a Disputed Claim, the fifth day after such Claim became a Disputed Claim (each as defined in the Solicitation |

14

|  | Solicitation Procedures Motion) | Procedures Motion) |
|---|---|---|
| Close of Discovery |  | March 7, 2024 |
| Targeted date for filing Plan Supplement | February 1, 2024 | March 7, 2024 |
| Targeted date for filing form of proposed Confirmation Order | February 6, 2024 | March 12, 2024 |
| Voting Deadline | 4:00 p.m. (prevailing Central Time) on February 8, 2024 | 4:00 p.m. (prevailing Central Time) on March 14, 2024 |
| Targeted date for filing voting report | February 13, 2024 | March 19, 2024 |
| Objectors' Reply Deadline |  | 4:00 p.m. (prevailing Central Time) on March 19, 2024 |
| Combined Hearing | 8:00 a.m. (prevailing Central Time) on February 15, 2024 | March 21, 2024 |

## RESERVATION OF RIGHTS

40.     Nothing herein should be construed as an admission or waiver of any rights, claims, arguments or defenses.  Midea does not waive any claim for breach of contract claims related to apparent violations of the Supply Agreement.[9]  Midea reserves its rights to supplement or amend this Preliminary Objection, or further address the Plan, the Disclosure Statement, the Solicitation Procedures Motion, or any related matter and to respond to any response or objection either by further submissions to the Bankruptcy Court, at oral argument, or by testimony to be presented at any hearing.  Midea further reserves all of its rights with respect to confirmation of the Plan, including the right to seek declaratory relief, assert any and all objections to confirmation at the appropriate time, including at any hearing to consider conditional approval of the Disclosure Statement, final approval of the Disclosure Statement, or confirmation of any Plan), whether or not such objections are set forth herein, and the right to seek appropriate relief

---

[9] Midea submits this Preliminary Objection and Reservation of Rights solely out of necessity and compulsion of the deadline to object to conditional approval of the Combined DS and Plan.  By filing this Preliminary Objection and Reservation of Rights, Midea expressly preserves and does not waive any defenses afforded to it under Federal Rule

in connection with any Plan confirmation proceedings or otherwise. Midea does not waive any other alternative rights, remedies, including those enumerated under the Supply Agreement, or any its rights to object to assertion of jurisdiction over its corporate person, as appropriate.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Midea respectfully requests that this Court enter an order (i) (a) denying conditional approval of the disclosure statement provisions of the Plan, or (b) denying the Debtors' Solicitation Procedures Motion and proposed confirmation schedule and instead setting a briefing schedule on Midea's objection to confirmation of the Plan as set forth above, and (ii) granting such other and further relief as the Court deems proper.

Dated: January 6, 2024              Respectfully submitted,

/s/ Tom A. Howley
**Tom A. Howley**
Texas Bar No. 24010115
**Eric Terry**
Texas Bar No. 00794729
HOWLEY LAW PLLC
Pennzoil Place – South Tower
711 Louisiana St., Suite 1850
Houston, Texas 77002
Telephone: 713-333-9125
Email: tom@howley-law.com
Email: eric@howley-law.com

**George P. Angelich**
New York Bar No. 4322236
**Brett D. Goodman**
New York Bar No. 4496964
*(Motion for Pro Hac Vice Admissions Pending)*
1301 Avenue of the Americas - 42nd Floor

---

of Civil Procedure 12(b) or Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, including, without limitation, lack of personal jurisdiction over Midea by the Bankruptcy Court or any other court.

New York, New York 10019
Telephone: (212) 484-3900
George.Angelich@afslaw.com
Brett.Goodman@afslaw.com

-and-

**James E. Britton**
Massachusetts Bar No. 704755
*(Motion for Pro Hac Vice Admission Pending)*
800 Boylston Street - 32nd Floor
Boston, MA 02199
Telephone: (617) 973-6100
Email:  James.Britton@afslaw.com

*Counsel to Midea*

## CERTIFICATE OF SERVICE

I certify that on January 6, 2024, I caused a copy of the foregoing document to be served by electronic transmission to all registered ECF users appearing in this case.

 */s/ Tom A. Howley*
Tom A. Howley

17