IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INSTANT BRANDS ACQUISITION HOLDINGS INC., | ) ) | Case No. 23-90716 (MI) |
| *et al.*,[1] | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | RE: Docket No. |
| | ) | |

## MIDEA AND TIANXI'S SUPPLEMENTAL OBJECTION TO COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF REORGANIZATION OF INSTANT BRANDS ACQUISITION HOLDINGS INC. AND ITS DEBTOR AFFILIATES

GuangDong Midea Consumer Electric Manufacturing Company Limited; FoShan ShunDe Midea Electrical Heating Appliances Manufacturing Company Limited; Midea Electric Trading (Singapore) Co. Pte Ltd.) (collectively, "Midea"), and Zhejing Tianxi Kitchen Appliance Co., Ltd ("Tianxi" and collectively with Midea, the "Objecting Suppliers") by and through their undersigned counsel, hereby file this *Supplemental Objection to Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization of Instant Brands Acquisition Holdings Inc. and its Debtor Affiliates* [Docket No. 926-1] (as the same may be amended, supplemented, or modified, the "Combined DS and Plan," the "Disclosure Statement," or the "Plan," as applicable);[2] and in support thereof respectfully state as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers or registration numbers in the applicable jurisdictions, are as follows: Instant Brands (Texas) Inc. (2526); Instant Brands Acquisition Holdings Inc. (9089); Instant Brands Acquisition Intermediate Holdings Inc. (3303); Instant Brands Holdings Inc. (3318); URS-1 (Charleroi) LLC (7347); Instant Brands LLC (0566); URS-2 (Corning) LLC (8085); Corelle Brands (Latin America) LLC (8862); EKCO Group, LLC (7167); EKCO Housewares, Inc. (0216); EKCO Manufacturing of Ohio, Inc. (7300); Corelle Brands (Canada) Inc. (5817); Instant Brands (Canada) Holding Inc. (4481); Instant Brands Inc. (8272); and Corelle Brands (GHC) LLC (9722). The address of the debtors' corporate headquarters is 3025 Highland Parkway, Suite 700, Downers Grove, IL 60515.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Combined DS and Plan.

**PRELIMINARY STATEMENT**

1. The Combined DS and Plan attempts to impose substantial and undefined potential liabilities on the Objecting Suppliers instead of taking the necessary steps to discharge them through Section 1141(d)(1) of the Bankruptcy Code and applicable Fifth Circuit law. Rather than make use of the tools specifically provided by the Bankruptcy Code to address these potential liabilities, the Debtors have chosen to move forward with a Plan that hinges entirely on their alleged retention of nebulous "rights" to indemnity from the Objecting Suppliers, and the ability to assert those purported "rights" as and when necessary following confirmation of their Plan in order to insulate the Reorganized Debtors for any claims they had agreed to remain liable for.[3] Accordingly, the Combined DS and Plan represents a bad-faith misuse of the Bankruptcy Code and cannot be confirmed under Section 1129(a)(1) and (a)(3) unless it is amended to provide that the Debtors and/or the Reorganized Debtors, as applicable, retain no indemnification rights against the Objecting Suppliers.

2. Moreover, because the alleged "rights" upon which the Combined DS and Plan relies do not exist under Section 541 as a matter of bankruptcy law, the Plan is both patently unconfirmable as currently drafted and not feasible. It is patently unconfirmable because it currently relies on the partial assignment of executory contracts and the administration of property outside of the property of the Debtors' estates, in contravention of the terms of Sections 365 and 541, respectively. In turn, the Plan therefore does not satisfy Section 1123(a)(1) and (a)(3). The

---

[3] The existence and enforceability of these "rights" is currently the subject of an active dispute as a "Phase One Topic," to be heard by the Court on February 9, 2024. Because the deadline to object to the Combined DS and Plan is February 8, the Objecting Suppliers must file this Supplemental Objection without knowing how the Court may rule on the Phase One Topics, which will have significant ramifications on the Combined DS and Plan and may affect the issues raised in this Supplemental Objection. Nothing contained herein is or should be construed as any admission or position with respect to the Phase One Topics and/or the Phase One Brief, which are being adjudicated separately pursuant to the Joint Stipulation, and the Objecting Suppliers reserve all rights with respect thereto.

Plan is not feasible under Section 1129(a)(11) because the Debtors fail to disclose, much less value, classify, explain, or otherwise provide for, potential claims for product liability or other related regulatory liabilities that they may incur in the near future. Without the alleged "rights" to indemnity against the Objecting Suppliers, the Debtors and Reorganized Debtors do not have any apparent means of accounting or providing for these liabilities now that they have chosen to forego the proper path of seeking an injunction and discharge. The Debtors cannot show that confirmation of the Combined DS and Plan will not be followed by a subsequent need to reorganize in the event that they have no alleged "rights" to indemnity and are forced to confront these liabilities after the Effective Date, as required by Section 1129(a)(11). The Combined DS and Plan therefore does not meet the requirements of Section 1129 and confirmation must be denied.

## RELEVANT BACKGROUND

3.  Midea is party to that certain pre-petition Supply Agreement dated as of July 28, 2016 by and between Midea and Double Insight Inc. (the "Midea Supply Agreement"). The Supply Agreement was assigned by Double Insight Inc. (now known as Instant Brands Inc.) to Instant Brands LLC (formerly known as Corelle Brands LLC) as of January 2, 2022.

4.  Tianxi is party to that certain Supply Agreement by and between Tianxi and Instant Brands Inc. as amended by that certain letter agreement dated August 4, 2023 (the "Tianxi Supply Agreement", together with the Midea Supply Agreement, the "Supply Agreements" and each a "Supply Agreement").

5.  On June 12, 2023, the Debtors (including Instant Brands LLC) filed their voluntary petitions and commenced the Chapter 11 Cases.

6.  On October 3, 2023, the Bankruptcy Court entered the Sale Order [Docket No. 636], approving the sale of substantially all of Debtors' assets, including, but not limited to, the

assumption and assignment of the Supply Agreements pursuant to section 365 of the Bankruptcy Code.

7. According to Article IV.E of the Combined DS and Plan, the Appliances Sale Transaction closed on November 8, 2023.

8. On December 22, 2023, the Debtors filed (a) the first version of the Combined DS and Plan [Docket No. 845] and (b) the *Debtors' Emergency Motion For Entry of Orders (I)(A) Approving the Disclosure Statement on a Conditional Basis, (B) Approving the Solicitation and Tabulation Procedures, (C) Approving the Forms of Ballots, Solicitation Package, and Notices, (D) Establishing Certain Dates and Deadlines in Connection with the Solicitation and Confirmation of the Plan, (E) Scheduling a Combined Hearing For Final Approval of the Disclosure Statement and Confirmation of the Plan, and (F) Granting Related Relief and (II) Approving the Disclosure Statement on a Final Basis* [Docket No. 846] (the "Solicitation Motion").

9. On January 6, 2024, Midea and Tianxi each filed an objection and reservation of rights to the Combined DS and Plan and Solicitation Motion [Docket Nos. 870, 876] (the "Suppliers' Preliminary Objections").

10. On January 11, 2024, the Court entered an *Order (I) Approving the Disclosure Statement on a Conditional Basis, (II) Approving the Solicitation and Tabulation Procedures, (III) Approving the Forms of Ballots, Solicitation Package, And Notices, (Iv) Establishing Certain Dates and Deadlines in Connection With the Solicitation and Confirmation of The Plan, (V) Scheduling a Combined Hearing for Final Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 924] (the "January 11 Order").

SHDOCS:220651770.1

11. The Combined Hearing, as defined in the January 11 Order, to consider final approval of the Disclosure Statement and confirmation of the Plan, is currently scheduled to be held on February 15, 2024 ("Combined Hearing").  The January 11 Order also provided that the deadline to object to final approval of the Disclosure Statement and/or confirmation of the Plan is 4:00 p.m. central time on February 8, 2024.

12. On January 31 2024, this Court entered the *Joint Stipulation and Agreed Order Regarding Discovery and Plan Objection Briefing*, [Docket No. 976] (the "Joint Stipulation"), which provided a briefing schedule for this Court as to whether (i) the Debtors assumed and assigned the Supply Agreements *in toto*; (ii) whether the Debtors can retain, assert, and/or assign any indemnity rights and/or causes of action under the Supply Agreements, including, but not limited to, any "Retained Supply Agreement Claim;" (iii) whether any claims Debtors may have held against the Objecting Suppliers are no longer enforceable and now cannot be liquidated; and (iv) whether the Master Assignment 2.0 (as defined in the Suppliers' Adversary Complaint) violated the Bankruptcy Code and/or Court's Sale Order as a matter of law (collectively, the "Phase One Topics").

13. On January 27, 2024, the Debtors filed their *Opposition to Zhejiang Tianxi Kitchen Appliance Co., Ltd.'s, GuangDong Midea Consumer Electric Manufacturing Company Limited's, Foshan Shunde Midea Electrical Heating Appliances Company Limited's, and Midea Electric Trading Co. Pte Ltd.'s Plan Objection* [Docket No. 966] (the "Debtors' Phase One Brief").

14. On February 5, 2024, the Objecting Suppliers filed their *Reply (I) In Support of Their Objections to the Debtors' Combined Disclosure Statement and Plan and (II) In Response to the Debtors' Opposition to the Suppliers' Plan Objection* [Docket No. 994] (the "Suppliers' Phase One Brief").

15. The Joint Stipulation provided that the parties would brief the Phase One Topics separately, with a hearing on the Phase One Topics to be held by the Court on February 9, 2024 at 8:00 a.m. central time.

16. The Joint Stipulation further provided that nothing therein "shall stay or waive any discovery between the Parties with respect to any other issues concerning the Plan, including but not limited to any subsequent or further objection of the Suppliers on additional grounds not set forth in the Suppliers' Plan Objection and/or the Suppliers' Adversary Complaint . . . ." Joint Stipulation at FN 5.

17. Because the deadline to object to the Combined DS and Plan occurs before the hearing on the Phase One Topics, the Objecting Suppliers file this Supplemental Objection to highlight the additional reasons that the Combined DS and Plan cannot be confirmed as drafted (aside from the Phase One Topics).

## OBJECTION

18. As Plan proponents, the Debtors bear the burden of proving their Plan complies with applicable law and is thus confirmable. *See In re J T Thorpe Co.*, 308 B.R. 782, 785 (S.D. Tex. 2003). The Debtors cannot meet their burden with respect to the Combined DS and Plan, and therefore confirmation must be denied.

    **a. The Plan Is Proposed In Bad Faith Because It Seeks to Allocate Dischargeable Liabilities To the Objecting Suppliers and Therefore Cannot Be Confirmed As Drafted**

19. The Combined DS and Plan cannot be confirmed as currently drafted because instead of making use of the procedural and substantive tools provided by the Bankruptcy Code to address their liabilities, the Debtors have instead opted to attempt to pass an entire universe of undefined, unvalued, known and unknown claims on to the Objecting Suppliers through their

theory of alleged retained "rights." In fact, the Debtors cannot even define the purported "rights" and causes of action they seek to have vest in the Reorganized Debtors on the Effective Date, and instead shift loosely and vaguely from characterizing them as "matured property rights" in the Plan to an unlimited number of claims in perpetuity (by improperly applying the broad definition of "claim" under section 101(5) of the Bankruptcy Code to property of the Debtors and their estates).[4] This is not a legitimate attempt to reorganize as required under the good faith component of Section 1129(a)(3), and furthermore is expressly against other provisions of the Bankruptcy Code and thus in violation of Section 1129(a)(1).

20. Section 1129(a)(1) provides that "[t]he court shall confirm a plan only if . . . the plan complies with the applicable provisions of this title." Similarly, Section 1129(a)(3) requires that "[t]he plan has been proposed in good faith and not by any means forbidden by law." The Fifth Circuit Court of Appeals has provided that "[t]he requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a Chapter 11 plan," *Matter of T-H New Orleans Ltd. Partnership*, 116 F.3d 790, 802 (5th Cir. 1997), and that "[w]here the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement . . . is satisfied." *Id.* (quoting *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985).

21. The Debtors' Combined DS and Plan fails to consider, value or estimate any liabilities for product liability claims or related regulatory liabilities not commenced prior to the Effective Date. Indeed, the Combined DS and Plan says nothing about any such claims and in

---

[4] *Compare* Combined DS and Plan at Art. II.D ("While Section 365 of the Bankruptcy Code prohibits partial assignment of a contract, it does not eviscerate a debtor's pre-assignment, matured property rights arising out of such contracts.") *with* Debtors' Phase One Brief at ¶¶ 56–57 ("Similarly, section 101(5)(A) of the Bankruptcy Code broadly defines "claim" as "any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. These definitions plainly encompass contingent indemnification claims or causes of action that arose prior to the assignment of the underlying contract.").

effect treats them as if they do not exist. The Combined DS and Plan similarly acknowledges the existence of "more than 200 Product Liability Claims . . . asserted against certain of the Debtors," but provides no valuation or estimation of those claims either. Combined DS and Plan at Art. II.D. However, had the Debtors followed the proper procedures through Sections 105, 523, 524, and 1141 of the Bankruptcy Code by providing notice to unknown potential claimants and setting up a tort channeling trust, these claims could have been provided for and discharged as has been done in countless other cases. *See, e.g.*, *In re Placid Oil Co.*, 450 Fed. App'x 323 (5th Cir. 2011) (prepetition claim of unknown claimant discharged through constructive publication notice even though injury was not discovered until post-confirmation); *United Refining Company v. Dorrion*, -- F.Supp.3d –, 2023 WL 5473803 (S.D. Tex. 2023) ("How much notice is required under the Due Process Clause depends on whether a creditor is known or unknown. Actual notice is required for known creditors; constructive notice is sufficient for unknown ones."); *In re Dow Corning Corp.*, 255 B.R. 445 (E.D. Mich. 2000) (affirming confirmation of plan with channeling trust and discharge for Dalkon Shield personal injury claimants).

22.     Instead of addressing their liabilities through the correct bankruptcy procedures, the Debtors instead rely upon their retention of alleged "rights" to indemnity against the Objecting Suppliers to protect the Reorganized Debtors post-Effective Date. Curiously, the Debtors do treat actions commenced prior to the Effective Date as general unsecured claims, but only to the extent that such claimants are not satisfied from alleged Third-Party Indemnitors (such as the Objecting Suppliers). The Debtors offer no reason or explanation as for why *all* such claims are not treated as general unsecured claims with the opportunity to share Pro Rata in the Litigation Trust Interests or else otherwise be discharged. The Reorganized Debtors apparently intend to attempt to pass

any such liabilities on to the Objecting Suppliers, and do not have any "plan B" if that does not work.

23.     This is not a good faith attempt to reorganize within the meaning of Section 1129(a)(3). *See, e.g.*, *In re Multiut Corp.*, 449 B.R. 323, 342–43 (Bankr. N.D. Ill. 2011) (finding that plan was not proposed in good faith as required under Section 1129(a)(3) because of its "failure to adequately reserve claims and causes of action the Debtor may have against third parties, the failure to accurately state the value of unsecured claims, and the substantially inaccurate calculation of the Plan's minimum percentage distribution to unsecured creditors"); *In re American Capital Equipment, LLC*, 688 F.3d 145, 158–59 (3d Cir. 2012) (plan not proposed in good faith under Section 1129(a)(3) and did not further the purposes of the Bankruptcy Code because it left creditors no source of recovery other than achieving settlements with the debtor without the protections of a court-overseen channeling injunction).

24.     The Combined DS and Plan's substantive provisions deal only with the conversion of the Prepetition Term Lenders and DIP Lenders' claims into one hundred percent (100%) of the equity of the Reorganized Debtors.  The Debtors have not attempted to address, and do not address, the substantial liabilities that they believe exist for pre-petition product liability claims and related regulatory liabilities that have yet to be commenced.  This is, however, a situation entirely of the Debtors' own making. They could have easily addressed these claims through a proper notice procedure and then proposing a plan with a channeling injunction and litigation trust for all unknown potential tort claimants, rather than attempt to retroactively cobble together arguments about the alleged retention of "rights" under the Supply Agreements after they had been assigned *in toto*, in violation of Section 541 and 365.  To try to push these liabilities off onto the Objecting Suppliers as a Hail Mary instead of addressing them through the proper bankruptcy channels which

SHDOCS:220651770.1

would result in their discharge is inequitable and not a good faith use of the Bankruptcy Code. Confirmation of the Combined DS and Plan must therefore be denied.

### b. The Plan Violates Sections 365 and 541 of Bankruptcy Code and Therefore Cannot Be Confirmed As Drafted

25. The Plan is patently unconfirmable as drafted in light of *Matter of Thornhill Brothers Fitness, L.L.C.*, 85 F.4th 321 (5th Cir. 2023) and as set forth in the Suppliers' Phase One Brief. Section 1129(a)(1) of the Bankruptcy Code provides that a plan of reorganization may only be confirmed if "the plan complies with the applicable provisions of the [Bankruptcy Code]." The Plan here does not comply with Sections 365 and 541, as outlined in the *Thornhill Bros.* decision and the Suppliers' Phase One Brief, because it relies upon rights that the Debtors no longer possess.[5]

26. As set forth above, Section 1129(a)(1) provides that "[t]he court shall confirm a plan only if . . . the plan complies with the applicable provisions of this title" and § 1129(a)(3) requires that "[t]he plan has been proposed in good faith and not by any means forbidden by law." Accordingly, a plan whose provisions do not comply with applicable law, including the terms of the Bankruptcy Code, is not confirmable. *See, e.g., Matter of Cajun Elec. Power Co-Op, Inc.*, 150 F.3d 503, 512 n. 3 (5th Cir. 1998) ("In order to confirm a plan the court must find that the plan and its proponent have complied with the applicable provisions of Title 11.") (quoting *Mickey's Enters., Inc. v. Saturday Sales, Inc.*, 165 B.R. 188, 193 (Bankr. W.D. Tex. 1994).

27. In the present case, as set forth at more length in the Suppliers' Phase One Brief, the Debtors' contention that they retain any property rights following the assignment of their

---

[5] The Objecting Suppliers refer to the Suppliers' Phase One Brief for their full argument in connection with the Phase One Topics. In accordance with the Joint Stipulation, this Supplemental Objection does not seek to adjudicate the Phase One Topics, but instead raises the issue that the Combined DS and Plan is patently unconfirmable, proposed in bad faith, and not feasible because of, among other things, the absence of the alleged "rights" at issue in the Phase One Topics.

Supply Agreements (as defined therein) violates Section 365 of the Bankruptcy Code as enunciated by the *Thornhill* court. *See Thornhill*, 85 F.4th at 326 ("[W]e make clear that, when a trustee relies on § 365(f) to assign an executory contract in bankruptcy, it must assign the contract in whole, not in part."). Furthermore, the fact that the Combined DS and Plan relies upon administration and assignment to the Reorganized Debtors of alleged "rights" to indemnity that have yet to accrue and do not, as a matter of law, constitute property of the Debtors' estates under Section 541 (or, for that matter, exist) renders the Plan in violation of Section 541 as well.

28. Accordingly, the Combined DS and Plan cannot be approved or confirmed unless its language is amended to clarify that: (i) nothing therein grants any party any right to assert any indemnity rights or claims under any agreement previously assumed and assigned by the Debtors, including the Supply Agreements; (ii) neither Midea nor Tianxi are "Third-Party Indemnitors" as defined in the Plan; and (iii) Debtors do not retain any cause of action as to the Objecting Suppliers arising from the contractual indemnification provisions of the Supply Agreements as a matter of federal bankruptcy law. The Debtors' current language in the Combined DS and Plan providing that these alleged "rights" *may* be adjudicated against the Debtors is insufficient; the Combined DS and Plan must instead omit any reference to the existence of, or reliance upon, these alleged "rights," as they do not exist as a matter of law under Sections 365 and 541 of the Bankruptcy Code.

    **c. The Plan is Not Feasible Under Section 1129(a)(11) and Cannot be Confirmed As Drafted**

29. The Combined DS and Plan is also not feasible as required for confirmation under Section 1129(a)(11) because of the aforementioned total lack of information concerning the amount and/or extent of potential product liability claims or related regulatory liabilities against

the Debtors, and the Combined DS and Plan's lack of any discussion of classification and/or treatment of any such claims.

30. To "obtain confirmation of its plan of reorganization, a debtor must show by a preponderance of the evidence that its plan is feasible, which means that it is not likely to be followed by … liquidation, or the need for further financial reorganization." *See Save Our Springs Alliance, Inc., v. WSI (II)-COS, L.L.C.*, 632 F.3d 168, 172 (5th Cir. 2011) (citing 11 U.S.C. §1129(a)(11)). To assess plan feasibility, courts typically consider "(1) the adequacy of the debtor's capital structure; (2) the earning power of the debtor's business; (3) economic conditions; (4) the ability of the debtor's management; (5) the probability of the continuation of the same management; and (6) and any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan." *See id.* at 173, n. 6 (internal citation omitted). However, courts need not consider all six factors, and can use these factors as appropriate to evaluate the "reasonable assurance" of a proposed Plan's success. *See id.* at 172-73.

31. Here, the Debtors' total omission of these potential claims against their estates relating entirely to liabilities that were expressly excluded from the Appliances Sale and retained by the Debtors in and of itself renders the Plan unfeasible, because the Debtors have not explained the amount or extent of any of these liabilities (or any estimate thereof), and have not explained how they would be treated under the Combined DS and Plan. For example, if an unknown claimant with a pre-petition product liability claim asserts such claim against the Debtors' estates, is it treated as a general unsecured claim or does it pass through? Do claims arising post-petition but prior to the Debtors' sale of their appliances business constitute administrative claims for post-petition conduct? Do these claims get channeled to the Litigation Trust that currently only

expressly provides for "Product Liability Claims" that have already been commenced prior to the Effective Date? Will the Debtors take the position that they are discharged, despite the Debtors' apparent lack of any publication notice? The Combined DS and Plan provides no answers, and it is impossible for them to know how these amounts will affect the recoveries to unsecured creditors and therefore impossible for to know whether the Combined DS and Plan is financially feasible or not. *See, e.g.*, *Multiut Corp.*, 449 B.R. at 347–51. For the same reason, it is impossible for unsecured creditors to make an informed decision on whether to vote to accept or reject the Combined DS and Plan without this information, and therefore final approval of the Disclosure Statement must be denied as well due to the lack of adequate information. *See In re Divine Ripe, L.L.C.*, 554 B.R. 395, 404–08 (Bankr. S.D. Tex. 2016).

32. The Combined DS and Plan is also not feasible under Section 1129(a)(11) because the Debtors' decision to forego seeking an injunction and discharge of these potential liabilities, rather than apparently resting their entire reorganized future upon indemnity "rights" that do not exist, means that there is a substantial likelihood that the Reorganized Debtors will have to liquidate or reorganize in the near future. *See, e.g., In re Patriot Place, Ltd.*, 486 B.R. 773, 807–08 (Bankr. W.D. Tex. 2013) (plan that failed to explain how debtor would continue in operation post-effective date if its major tenant did not itself successfully reorganize was not feasible under section 1129(a)(11); *In re Frascella Enter., Inc.*, 360 B.R. 435, 453–56 (Bankr. E.D. Pa. 2007) (finding that plan failed to satisfy Section 1129(a)(11) when debtor's post-confirmation business plan was not realistic and supported by credible evidence such that it would not become insolvent again within the next five years). Accordingly, confirmation of the Combined Plan and DS must be denied.

    **d. The Plan Violates Section 1123(b)(3) and Therefore Cannot be Confirmed As Drafted**

33. The Combined DS and Plan's attempt to broadly retain "all rights and Causes of Action" without otherwise identifying those causes of action is insufficient to retain *any* cause of action, constituting a separate reason why the Combined DS and Plan is unconfirmable in its current state. Section 1123(b)(3) permits a debtor, after confirmation of a plan, to "enforce a claim once held by the estate", but only for those claims that have "been retained in the bankruptcy plan." *See In re Tex. Wyo. Drilling, Inc.*, 647 F.3d 547, 550 (5th Cir. 2011) (citing *In re United Operating, L.L.C.*, 540 F.3d 351, 355 (5th Cir. 2008) *and* 11 U.S.C. §1123(b)(3)).

34. However, for a debtor to preserve a claim under Section 1123(b)(3), "the plan must expressly retain the right to pursue such actions [and] [t]he reservation must be specific and unequivocal." *See id.* (internal citation omitted). Absent such "specific and unequivocal" language retaining specific claims, the debtor "has no standing to pursue a claim that the estate owned before it was dissolved." *See id.*

35. Here, the Combined DS and Plan states that Debtors are to retain "all rights and Causes of Action that they may have or choose to assert on behalf of their Estates … whether arising before or after the Petition Date … including … rights or Causes of Action that the Debtors had immediately prior to the Petition Date or the Effective Date against or regarding any Claim left Unimpaired by the Plan[.]" *See* Plan at XI(I). The Plan Supplement is similarly broad and lacking in any specificity as to exactly which claims Debtors are attempting to retain, leaving creditors and other parties in interest only to guess how the Plan will impact their benefits and potential liabilities. *See* Notice of Filing Plan Supplement To the Debtors' Combined Disclosure Statement and Joint Chapter 11 Plan [Docket No. 983] at Ex. A. Therefore, the Combined DS and Plan fails to comply with Section 1123 and for this independent reason, the Plan is patently

unconfirmable unless amended to identify any alleged Retained Causes of Action with the necessary specificity. *See In re Tex. Wyo. Drilling, Inc.*, 540 F.3d at 550; 11 U.S.C. §1129(a)(1).[6]

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Objecting Suppliers respectfully request that this Court enter an order (i) denying final approval of Debtors' Disclosure Statement, (ii) denying confirmation of the Debtors' Plan unless it is amended as set forth herein, and (iii) granting such other and further relief as the Court deems proper.

Dated: February 8, 2024

| **ARENTFOX SCHIFF LLP** | **VORYS, SATER, SEYMOUR AND PEASE LLP** |
|---|---|
| By: /s/ *Brett D. Goodman* <br> Brett D. Goodman (*Pro Hac Vice*) <br> 1301 Avenue of the Americas <br> 42nd Floor <br> New York, New York 10019 <br> Telephone: (212) 484-3900 <br> Facsimile: (212) 484-3990 <br> George.Angelich@afslaw.com <br><br> and <br><br> Matthew F. Prewitt (*Pro Hac Vice*) <br> 233 S. Wacker Dr., Suite 7100 <br> Chicago, IL 60606 <br> Telephone: (312) 258-5583 <br> matthew.prewitt@afslaw.com <br><br> and <br><br> James E. Britton (*Pro Hac Vice*) <br> 800 Boylston Street <br> 32nd Floor <br> Boston, MA 02199 <br> Telephone: (617) 973-6100 | By: /s/ *Tiffany Strelow Cobb* <br> Tiffany Strelow Cobb (*Pro Hac Vice*) <br> Thomas J. Loeb (P*ro Hac Vice*) <br> 52 East Gay Street <br> Columbus, Ohio  43215 <br> Telephone:  (614) 464-6400 <br> Email:  tscobb@vorys.com <br> tjloeb@vorys.com <br><br> and <br><br> Kari B. Coniglio  (*Pro Hac Vice*) <br> 200 Public Square, Suite 1400 <br> Cleveland, Ohio 44114-2327 <br> Telephone:  (216) 479-6100 <br> Email:  kbconiglio@vorys.com <br><br> *Counsel for Tianxi* |

---

[6] For the avoidance of doubt, Midea opts out of granting any third-party release contemplated by Article XI (or any other provision) of the Combined DS and Plan.

SHDOCS:220651770.1

Facsimile: (617) 367-2315
James.Britton@afslaw.com

and

**HOWLEY LAW PLLC**

Tom A. Howley
Texas Bar No. 24010115
Eric Terry
Texas Bar No. 00794729
Pennzoil Place – South Tower
711 Louisiana St., Suite 1850
Houston, Texas 77002
Telephone: 713-333-9125
Email: tom@howley-law.com
Email: eric@howley-law.com

*Counsel for Midea*

SHDOCS:220651770.1

## CERTIFICATE OF SERVICE

I certify that on February 8, 2024, a copy of this document was served via electronic mail on all counsel of record via the Court's CM/ECF system.

*/s/ Brett D. Goodman*
Brett D. Goodman

SHDOCS:220651770.1