IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: <br><br> INSTANT BRANDS ACQUISITION HOLDINGS INC., *et al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No. 23-90716 (MI) <br><br> (Jointly Administered) |

**OBJECTING SUPPLIERS' EMERGENCY MOTION TO PRECLUDE USE OF EXHIBITS IN DEBTORS' AMENDED WITNESS AND EXHIBIT LIST**

> **Emergency relief has been requested. Relief is requested not later than 8:00 a.m. (prevailing central time) on February 9, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

GuangDong Midea Consumer Electric Manufacturing Company Limited, FoShan ShunDe Midea Electrical Heating Appliances Manufacturing Company Limited, Midea Electric Trading (Singapore) Co. Pte Ltd.) (collectively, "Midea"), and Zhejing Tianxi Kitchen Appliance Co., Ltd. ("Tianxi" and collectively with Midea, the "Objecting Suppliers") move to preclude the Debtors from using Exhibits 4, 6, 7, 8, and 9 (the "Disputed Exhibits") on their Amended Witness and Exhibit List [Dkt. No. 1018] (the "Amended Exhibit List") at the February 9, 2024 hearing on the Objecting Suppliers' Plan objections.

**PRELIMINARY STATEMENT**

1. The Objecting Suppliers' Plan objections center on the fact that the Debtors assigned away their contractual rights to indemnification under their respective supply contracts with the Objecting Suppliers. Unable to dispute that fact, the Debtors now attempt to manufacture

new contractual rights pursuant to alleged purchase orders with the Objecting Suppliers. They do this by attempting to piece together, on the one hand, so-called standard terms and conditions to purchase orders, without any corresponding purchase orders or evidence that the Objecting Suppliers agreed to those terms and conditions, and, on the other hand, purchase orders sent to the Objecting Suppliers referencing but not attaching any terms and conditions.

2. The Disputed Exhibits that the Debtors are now attempting to rely on were never produced to the Objecting Suppliers in discovery. Rather, they were belatedly introduced in a way that effectively prevented the Objecting Suppliers from being able to vet and challenge them in any meaningful manner. Because the Disputed Exhibits are unproduced, untimely disclosed, and inadmissible, the Court should preclude the Debtors from using them at the February 9 hearing on the Objecting Suppliers' Plan objections.

## BACKGROUND

3. The Objecting Suppliers are parties to pre-petition supply contracts (the "Supply Agreements") with the Debtors.

4. The Supply Agreements were assigned to the Appliances Buyers pursuant to a Master Assignment, Bill of Sale, Deed and Conveyance ("MAA 2.0") that materially differs from the Form of Master Assignment, Bill of Sale, Deed and Conveyance (the "Form MAA") that the Court approved pursuant to its Sale Order.

5. Because MAA 2.0 purports to carve out the Debtors' so-called pre-assignment indemnification rights and claims (as the Debtors call them, the "Retained Supply Agreement Claims") in violation of the Bankruptcy Code and Fifth Circuit precedent, and because the Debtors seek to assign the Retained Supply Agreement Claims to the Litigation Trust under their Combined

2

DS and Plan, the Objecting Suppliers filed Plan objections as well as a separate adversary proceeding to declare the Debtors' actions were unlawful and invalid.

6. The Objecting Suppliers propounded discovery to the Debtors on January 10, 2024. That discovery requested, in relevant part, the following:

- **Document Request No. 10**: Documents concerning the Debtors' 'matured pre-assignment property rights' arising from third-party indemnification obligations.

- **Document Request No. 13**: Documents, including communications, underlying and/or concerning the Debtors' statement in Article X.G.2 of the Combined Plan and DS that "[a]ll of the Debtors' rights to indemnification by third parties (including, for the avoidance of doubt, any right to indemnification by the Appliances Buyers or any other third party arising out of or relating to the Debtors' historic appliances business or any assets sold in the Appliances Sale Transaction) shall vest in the Reorganized Debtors on the Effective Date[,]" including but not limited to any documents in support of the Debtors' asserted retention of any indemnity rights against Objecting Suppliers.

- **Document Request No. 15**: Documents, including communications, underlying and or concerning any alleged continuing pre-sale attachment of indemnity rights against any Objecting Supplier, as asserted in the Debtors' response [Dkt. No. 881] to the Objecting Suppliers' preliminary objections, including but not limited to any documents in support of the existence and/or manner of any asserted retention of indemnity rights by Debtors against Objecting Suppliers.

- **Interrogatory No. 22**: Explain the Debtors' assertion of any alleged continuing pre-sale attachment of indemnity rights against any Objecting Supplier, as asserted in the Debtors' Response [Dkt. No. 881] to the Objecting Suppliers' preliminary objections, including but not limited to the existence and/or manner of any asserted retention of indemnity rights by the Debtors against the Objecting Suppliers.

7. The Debtors objected to this discovery, and while they made a partial production of documents on January 17, 2024, none of the Disputed Exhibits was included in that production.

8. On January 27, 2024, the Debtors filed their opposition to the Objecting Suppliers' Plan objections [Dkt. No. 966] and the supporting Declaration of Elliot Moskowitz [Dkt. No. 968]. Footnote 2 in their opposition raised, for the first time, the issue of alleged purchase orders subject

3

to the Debtors' "standard terms and conditions" that might include indemnification rights.[1]  While the terms and conditions were attached as an exhibit to the supporting declaration, no purchase orders were attached.

9. On February 5, 2024, the Objecting Suppliers filed their reply in support of their Plan objections [Dkt. No. 994] and objected to the Debtors' attempt to raise new factual issues relating to purchase orders not in evidence.

10. On February 7, 2024, the Debtors filed their sur-reply in opposition to the Objecting Debtors' Plan objections [Dkt. No. 1005].  That sur-reply contained no argument based on or reference to any purchase orders.

11. Also on February 7, 2024—the deadline to file the exhibit lists prior to the hearing scheduled for February 9, 2024—the Debtors filed their original witness and exhibit list [Dkt. No. 1003].  That list included the Debtors' "standard terms and conditions" but did not reference or attach any purchase order.

12. On February 8, 2024, the Debtors filed the Amended Exhibit List, which contained new exhibits not previously disclosed.  The new exhibits include supposed purchase orders that make no reference to the "standard" terms previously referenced by the Debtors and attached to the Moskowitz Declaration.  These purchase orders state that "Vendor acknowledges and agrees the attached Instant Brands Inc Purchase Terms and Conditions are an integral part hereof, and govern the purchase from Vendor of those products and/or services by Instant Brands Inc reflected under 'Material Description' in this Purchase Order'" but attach no such terms or conditions.

## ARGUMENT

---

[1] The "standard terms and conditions" appear to be pulled from the Debtors' website from 2023 and there is no evidence the Objecting Suppliers agreed to them.

13. The Debtors' Disputed Exhibits violate the Court's deadline to submit exhibits, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence. Accordingly, the Debtors should not be permitted to use those exhibits at the February 9 hearing. Anything less will result in extreme and unfair prejudice to the Objecting Suppliers, who will be forced to respond to unreliable and previously unproduced evidence with no opportunity to develop counter-arguments or contrary evidence.

### A.   The Disputed Exhibits Were Not Previously Produced.

14. "Federal Rule of Civil Procedure 37(c)(1) provides that if a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *United States v. Grigsby*, 86 F.4th 602, 615 (5th Cir. 2023) (citations and quotations omitted); *see also* Fed. R. Bankr. P. 7037 (applying Rule 37 in adversary proceedings); Fed. R. Bankr. P. 9014 (applying Bankruptcy Rule 7037 to contested matters). "To evaluate whether a Rule 26 violation was harmless . . . this Court weighs four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation of the party's failure to disclose." *Id.* (affirming exclusion of arguments and evidence relating to theory raised for the first time in summary judgment briefing after not being raised during discovery because it violated Rule 37 and would cause substantial prejudice because "it provided Appellants with a wholly new basis" that "effectively asserted a new defense that was neither disclosed nor explored during discovery.").

15. Here, the Disputed Exhibits that the Debtors seek to use are undoubtedly responsive to the Objecting Suppliers' discovery requests, but were never previously produced. This evidence

is important insofar as the Debtors attempt to use it as a factual support for a backup argument regarding their supposed retention of contractual indemnification rights. There is no justification for the Debtors' belated attempt to utilize these documents but not produce them to the Objecting Suppliers in discovery. A continuance would not seem to be viable option given the tight timelines surrounding Plan confirmation. Nor would allowing the Debtors to use the Disputed Exhibits be harmless given that the Debtors are attempting to create new arguments to prejudice the Objecting Suppliers based on an inadequately developed factual record. As a result, the Debtors should not be allowed to use and rely on those documents at all.

### B. The Disputed Exhibits Are Untimely.

16. The deadline to file witness and exhibit lists for the February 9 hearing was February 7, 2024 at noon Central. *See* L.R. 9013-2. Only one of the Disputed Exhibits was timely filed as part of the Debtors' original witness and exhibit list. The remainder were submitted with the Debtors' Amended Exhibit List on February 8, 2024. They are thus untimely and should not be considered. *See Boudreaux v. Doe*, 68 F.3d 465, (5th Cir. 1995) ("The district court has discretion in enforcing scheduling order and time deadlines.").

### C. The Disputed Exhibits Are Not Relevant.

17. The Disputed Exhibits are irrelevant to the Debtors' Plan objections. *See* Fed. R. Evid. 401. The issues raised and briefed concern whether the Debtors retained any claims or rights to indemnity under the Objecting Suppliers' Supply Agreements, not any purchase orders. Indeed, as pointed out in the Objecting Suppliers' reply, any factual assertion that the purchase orders govern the Debtors' rights would require discovery and briefing on whether any contract was formed outside of the Supply Agreements and which sets of terms control. None of this discovery or briefing has occurred.

18. Nor are the Disputed Exhibits even relevant to the Debtors' argument that they had contractual indemnification rights under their purchase orders with the Objecting Suppliers. The Debtors have not produced any evidence of a purchase order that was accepted by any of the Objecting Suppliers, which purchase order attaches terms and conditions that include a right of indemnification. Rather, the Debtors have tried to jury-rig such a contract by providing (1) standard terms and conditions supposedly applicable to purchase orders, without any accompanying purchase orders and (2) purchase orders referencing terms and conditions without attaching those terms and conditions. Because these disparate documents do not form a complete contract, they have no relevance to whether the Debtors have a contractual right of indemnficaition separate and apart from the assigned Supply Agreements. Other New Exhibits comprise emails purportedly showing Midea personnel responding "confirmed" to emails from Debtors' personnel have never been referenced anywhere in any party's papers, nor has any argument ever been advanced about any alleged process of acceptance and/or course of dealing. None has any apparent relevance to the issues that have actually been briefed by the parties.

### D. The Disputed Exhibits Are Unreliable.

19. The Disputed Exhibits are also patently unreliable. For starters, the Debtors have not even submitted a declaration authenticating the new exhibits included in their Amended Exhibit List. *See* Fed. R. Evid. 901(a); *see also* Fed. R. Bankr. P. 9017 (federal evidence rules apply in bankruptcy cases). There is no foundation for claiming that these disparate documents comprise an integrated contract obligating the Objecting Suppliers to indemnify the Debtors. Nor

are a handful of emails between employees of the Debtors and employees of Midea attaching incomplete purchase orders evidence of any course of dealing or understanding.[2]

20.     The Disputed Exhibits also violate the rule of completeness and best evidence rule because they contain either terms and conditions not attached to purchase orders or purchase orders referencing but not attaching terms and conditions.  *See* Fed. R. Evid. 106, 1002.  If the Debtors are suggesting there was any contractual right to indemnification based on the purchase orders, they need to supply a complete agreed upon purchase order with attached terms and conditions to support that argument.  The Disputed Exhibits do not suffice.  To the extent the Debtors argue that these exhibits can be cobbled together the suggest what the parties conceivably agreed to, these exhibits are not the best evidence of the parties' agreement.

## CONCLUSION

For these reasons, the Court should not permit the Debtors to use any of the Disputed Exhibits and should grant the Objecting Suppliers such other and further relief as it deems appropriate.

Dated: February 8, 2024                                    Respectfully submitted,

**ARENTFOX SCHIFF LLP**                               **VORYS, SATER, SEYMOUR AND PEASE LLP**

By:   */s/ Brett D. Goodman*                          By:   */s/ Tiffany Strelow Cobb*
      Brett D. Goodman (*Pro Hac Vice*)                        Tiffany Strelow Cobb (*Pro Hac Vice*)
      1301 Avenue of the Americas                              Thomas J. Loeb (P*ro Hac Vice*)
      42nd Floor                                               52 East Gay Street
      New York, NY 10019                                       Columbus, OH 43215
      Telephone: (212) 484-3900                                Telephone:  (614) 464-6400
      Facsimile: (212) 484-3990                                tscobb@vorys.com
      brett.goodman@afslaw.com                                 tjloeb@vorys.com

---

[2] The only statements in these emails are from the Debtors' employee saying "Please review and confirm," and Midea's employee responding "confirmed."  No other information or context for those statements is given.

- and -

Matthew F. Prewitt (*Pro Hac Vice*)
233 S. Wacker Dr., Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5583
matthew.prewitt@afslaw.com

- and -

James E. Britton (*Pro Hac Vice*)
800 Boylston Street
32nd Floor
Boston, MA 02199
Telephone: (617) 973-6100
Facsimile: (617) 367-2315
james.britton@afslaw.com

- and -

**HOWLEY LAW PLLC**

  Tom A. Howley
  Texas Bar No. 24010115
  Eric Terry
  Texas Bar No. 00794729
  Pennzoil Place – South Tower
  711 Louisiana St., Suite 1850
  Houston, TX 77002
  Telephone: (713) 333-9125
  tom@howley-law.com
  eric@howley-law.com

*Counsel for Midea*

- and -

Kari B. Coniglio  (*Pro Hac Vice*)
200 Public Square, Suite 1400
Cleveland, OH 44114-2327
Telephone: (216) 479-6100
kbconiglio@vorys.com

*Counsel for Tianxi*

9

## CERTIFICATE OF SERVICE

I certify that on February 8, 2024, a copy of this document was served via electronic mail on all counsel of record via the Court's CM/ECF system.

*/s/ Brett D. Goodman*
Brett D. Goodman